**IT IS ORDERED as set forth below:**

**Date: March 12, 2021**

_____

**Barbara Ellis-Monro
U.S. Bankruptcy Court Judge**

_____

**UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| IN RE: | |
| Shirley Lett, | CASE NO. 10-61451-BEM |
| Debtor. | CHAPTER 7 |
| Shirley White-Lett, | |
| Plaintiff, | |
| v. | ADVERSARY PROCEEDING NO. 20-6278-BEM |
| The Bank of New York Mellon, Corp., BANK OF AMERICA, N.A., Federal National Mortgage Association a/k/a Fannie Mae, Federal Home Loan Mortgage Corp. a/k/a Freddie Mac, Mortgage Electronic Registration Systems Incorporated (MERS), RRA CP Opportunity Trust 1, Merscorp Holdings, Inc. d/b/a MERS, Shellpoint Mortgage Servicing, and The Bank of New York Mellon, | |
| Defendants. | |

## REPORT AND RECOMMENDATION ON RRA CP OPPORTUNITY TRUST 1'S MOTION TO DISMISS

Plaintiff commenced the above-captioned adversary proceeding by filing a complaint against Defendants Bank of New York Mellon, Corp. ("BONYMC"), Bank of America, N.A. ("BOA"), Federal National Mortgage Association a/k/a Fannie Mae ("FNMA"), Federal Home Loan Mortgage Corp. a/k/a Freddie Mac ("Freddie Mac"), Mortgage Electronic Registration Systems Incorporated a/k/a MERS ("MERS"), and RRA CP Opportunity Trust 1 ("RRA") on December 14, 2020. [Doc. 1].[1]

Plaintiff filed a certificate of service certifying that a summons and a copy of the first complaint were served on RRA on December 15, 2020. [Doc. 8].[2] On January 4, 2021, Plaintiff filed an amended complaint ("Complaint") [Doc. 9], adding defendants The Bank of New York Mellon ("BONY"), and Merscorp Holdings, Inc.[3] [Doc. 9]. A certificate of service certifying that a copy of the Complaint was served on RRA on January 4, 2021 was attached to the Complaint. [Doc. 9 at 53]. [4]

This matter comes before the Court on RRA's Motion to Dismiss (the "Motion to Dismiss") [Doc. 25], filed January 20, 2021[5] and Plaintiff's Response thereto [Doc. 33], filed

---

[1] Unless otherwise indicated, docket entries refer to this adversary proceeding, Adv. Pro. 20-6278.

[2] Other entities served with the first complaint were BONYMC [Doc. 3], BOA [Doc. 4], Freddie Mac [Doc. 5], FNMA [Doc. 6] and Merscorp Holdings, Inc. [Doc. 7]. It does not appear that MERS was served with the first complaint.

[3] The caption of the Complaint names BONYMC and BONY as defendants. It also names Mercorp Holdings, Inc. and MERS as defendants. However, in the first paragraph of the Complaint, in which Plaintiff identifies the defendants, she excludes BONYMC and lists Merscorp Holdings Inc., in its capacity as owner of MERS.

[4] Other entities served with the Complaint were MERS [Doc. 9 at 53, Doc. 12], BONY [Doc. 9 at 54, Doc. 13], FNMA [Doc. 9 at 53], Freddie Mac [Doc. 9 at 53], BOA [Doc. 9 at 54], and BONYMC [Doc. 9 at 54]. It does not appear that Merscorp Holdings, Inc. was served with the Complaint.

[5] On January 17, 2021, RRA and Plaintiff filed a joint motion seeking extra time for RRA to respond to the Complaint. [Doc. 17]. The Court granted the motion and the Motion to Dismiss was filed within the extended deadline. [Doc. 20].

2

February 1, 2021.[6] The Complaint seeks a declaratory judgment to invalidate a second lien on Plaintiff's real property held by RRA as void. In the alternative, Plaintiff seeks avoidance of the lien as wholly unsecured. In response, RRA argues that Plaintiff lacks standing to make these claims, and that even if she had such standing, the assignment to RRA was valid and therefore the claims against RRA must be dismissed for failure to state a claim for which relief can be granted.

### I.  JURISDICTION

Pursuant to 28 U.S.C. § 1334(b) "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." This provision creates jurisdiction in three categories of proceedings: those that "arise under title 11," those that "arise in cases under title 11," and those "related to cases under title 11." The jurisdiction of the bankruptcy court is derived from and dependent upon these three bases. *Celotex Corp. v. Edwards*, 514 U.S. 300, 307, 115 S. Ct. 1493, 1498 (1995).

Matters that "arise under" title 11 are matters which invoke a substantive right created by the Bankruptcy Code. *Toledo v. Sanchez (In re Toledo)*, 170 F.3d 1340, 1345 (11th Cir. 1999). Matters that "arise in a case under" title 11 generally are administrative type matters or "matters that could arise only in bankruptcy." *Id.* (citing *Wood v. Wood (In re Wood)*, 825 F.2d 90, 97 (5th Cir. 1987)). Matters that are "related to cases under" title 11 are matters where

> the outcome of the proceeding could conceivably have an effect on the estate being administered in bankruptcy. The proceeding need not necessarily be against the debtor or the debtor's property. An action is

---

[6] Plaintiff styled her Response "Plaintiff's Cross-Motion for Summary Judgment and Response to Motion to Dismiss of RRA CP Opportunity Trust 1" [Doc. 33]. The Court notes that the Response fails to adhere to the local rules governing form and content of a summary judgment motion, Bankr. L.R. N.D. Ga. 7056-1 and will only consider the Response as a response to the Motion to Dismiss. The deficiencies include, but are not limited to: failure to include a statement of material facts as required by Bankr. L.R. N.D. Ga. 7056-1(a)(1). See also Fed. R. Bankr. P. 7056 (making Fed. R. Civ. P. 56 applicable to motions for summary judgment in adversary proceedings) and Fed. R. Civ. P. 56(c)(1)(A) (requiring the movant for summary judgment to refer to factual support from the record, rather than relying on legal argument).

3

> related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate.

*Id.* (quoting *Miller v. Kemira, Inc. (In re Lemco Gypsum, Inc.)*, 910 F.2d 784, 788 (11th Cir. 1990)).

Here, Plaintiff seeks an order of the Court declaring that an assignment to RRA of the deed to secure debt on her residence was not valid. By way of background the Court takes judicial notice of the proceedings in Plaintiff's bankruptcy case. Plaintiff filed a chapter 7 bankruptcy case on January 19, 2010. [Case No. 10-61451]. She received a discharge on February 25, 2011, the trustee filed a report of no distribution on June 11, 2012, and the bankruptcy case was closed on July 20, 2012. The bankruptcy case was subsequently reopened on March 10, 2020, at Plaintiff's request so she could file a separate adversary proceeding, Adv. Pro. No. 20-6031. After the case was reopened, a trustee was reappointed to determine whether any assets were available for administration, a claims bar date was set, and RRA filed a proof of claim.

The assignment at issue was executed in 2017 well after Plaintiff's chapter 7 case was closed and the estate's interest in Plaintiff's real property was abandoned to her under 11 U.S.C. § 544(c) such that this proceeding is not one that arises under Title 11. Additionally, an action for declaration of the rights of Plaintiff as it relates to an assignment of the deed to secure debt on her residence could be litigated in state court such that this proceeding is not one that arises in a case under Title 11. Further, based upon the chapter 7 Trustee's reports to the Court filed on the docket in the main case and the status conference held on March 4, 2021, it is apparent that only if RRA has a claim in the case will there be a basis for the Trustee to seek recovery of the asset he is investigating. This is so because the only other claim filed in the case

4

is the claim of the (alleged) first lien holder against Plaintiff's residence. Therefore, because this proceeding can conceivably affect administration of the estate, the Court has "related-to" jurisdiction to determine this matter.

Pursuant to 28 U.S.C. § 157(b)(1), the Court may enter final orders in core proceedings. In non-core proceedings, the Court may enter final orders with the consent of the parties. *Id.* § 157(c)(2). As described above, the Court has determined the claims against RRA are non-core or "related-to". Plaintiff alleges that this Court has jurisdiction but does not go so far as to argue it is core. [Doc. 9 at 4 ¶ 8] (stating that the Court has jurisdiction pursuant to 28 U.S.C. § 157, among other statutes, but not identifying a subsection thereof). RRA has not expressly consented to entry of a final order and does not refer to any jurisdictional statute in the Motion to Dismiss.

Some courts imply a plaintiff's consent to entry of a final order by the bankruptcy court when the plaintiff alleges the proceeding is a core proceeding and the opposing party admits the allegation. *See Philadelphia Newspapers, LLC v. Review Pub'g, LP (In re Philadelphia Newspapers, LLC)*, No. 09-11204, AP No. 09-264, 2009 WL 5178333, at *5 (Bankr. E.D. Pa. Dec. 17, 2009) (collecting cases). Even if the Court were inclined to apply a rule of implied consent to Plaintiff, RRA has not consented to the entry of a final order by this Court. Therefore, the Court submits the following proposed findings of fact and conclusions of law to the District Court for de novo review pursuant to 28 U.S.C. § 157(c)(1) and Federal Rule of Bankruptcy Procedure 9033.

## II. STANDARD

Fed. R. Civ. P. 8(a)(2), made applicable in adversary proceedings by Fed. R. Bankr. P. 7008, requires the Complaint to contain a "short and plain statement of the claim

5

showing that the pleader is entitled to relief[.]" When deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), made applicable in adversary proceedings by Fed. R. Bank. P. 7012(b), the Court "must take the factual allegations of the complaint as true and make all reasonable inferences from those facts to determine whether the complaint states a claim that is plausible on its face." *Cline v. Tolliver*, 434 F. App'x 823, 825 (11th Cir. 2011) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949 (citations omitted). Although the Complaint "does not need detailed factual allegations" to survive a motion to dismiss, it "requires more than labels and conclusions[;] a formulaic recitation of the elements of a cause of action will not do[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964-65 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Id.*, 127 S. Ct. at 1965.

### III.   PROPOSED FINDINGS OF FACT

The facts in the Complaint which concern the claims against RRA, eliminating any legal conclusions and general statements of the law, are as follows:

The underlying chapter 7 bankruptcy case ("Chapter 7 Case") was originally categorized by the chapter 7 trustee ("Trustee") as a no asset case. [Doc. 9 at 3 ¶ 2]. The Trustee has since been conducting an investigation to determine the potential availability of assets for distribution. [*Id.*] Following his investigation, the Trustee has since filed a document noting that there appear to be funds available for distribution in the Chapter 7 Case. [*Id.*] The funds at issue were received by Plaintiff in a settlement of certain litigation that the Trustee argues should have been part of the bankruptcy estate, but which Plaintiff failed to schedule. [Doc. 9 at 3 ¶ 3].

6

A deadline for filing proofs of claim in the Chapter 7 Case was set for January 13, 2021. [Doc. 9 at 3 ¶ 4]. On November 17, 2020, a proof of claim (the "BONY Claim") was filed on behalf of a purported secured creditor, "THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWALT, INC. ALTERNATIVE LOAN TRUST 2005-27, MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2005-27" in the amount of $886,240.81. [Doc. 9 at 3 ¶ 5]. The BONY Claim states that it is secured by a lien on real property located at 456 North Saint Marys Lane Marietta, GA 30064 (the "Property"). [Case No. 10-61451, Claim No. 1]. A copy of a note is attached to the BONY Claim. [Doc. 9 at 5 ¶ 10]. The note attached to the BONY Claim was endorsed in blank by Countrywide Home Loans, Inc. [*Id.*]. Plaintiff alleges that her signature, also appearing on this note, is forged. [Doc. 9 at 25 ¶ 61]. Plaintiff has provided her own copy of the note, which she argues, shows signatures "easily distinguishable" from those on the note attached to the BONY Claim. [*Id.*] BONY is not in possession of the original note executed by Plaintiff. [*Id.*] It did not receive Plaintiff's original note from the originating lender, Aegis Wholesale Corporation ("AWC"). [Doc. 9 at 17 ¶ 37]. AWC filed for chapter 11 bankruptcy. [Doc. 9 at 24 ¶ 58].

If the BONY Claim were invalidated and no distribution to BONY permitted, this would leave some portion of the funds, if any, recovered by Trustee for distribution to Plaintiff. [Doc. 9 at 4 ¶ 6]. Plaintiff alleges, upon information and belief, that there are no other creditors who could file a valid and allowable claim against the bankruptcy estate that would encumber the funds to such degree that none remained for distribution to her. [*Id.*]

In a letter to Plaintiff dated June 7, 2017, Shellpoint Mortgage Servicing, acting as servicer for BONY, stated that a "foreclosure will be conducted in the name of THE BANK OF

NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWALT, INC. ALTERNATIVE LOAN TRUST 2005-27, MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2005-27." [Doc. 9 at 8 ¶ 16]. The letter further stated that "Noteholder is unable to find the original promissory note you signed and will seek to prove the promissory note using a lost note affidavit." [*Id.*]

On October 27, 2010, BAC Home Loans Servicing, BONY's former servicer, filed a motion for relief from stay in the Chapter 7 Case. [Doc. 9 at 33 ¶ 84]. In its averments attached to the motion for relief from stay, BONY refers to itself as "a secured creditor of Debtor pursuant to a Note and Security Deed". [Doc. 9 at 33 ¶ 84].

BAC Home Loans Servicing presented a 2010 version of its purported copy of the note as an attachment to the motion for relief from stay. [Doc. 9 at 10 ¶ 19]. This copy of the note appears to have been taken from a file folder binder, because there were shadow images of a hole punch at the top of each page of the copy. No allonge is included with the 2010 note copy. [Doc. 9 at 10 ¶ 20]. The 2010 note copy bears no endorsements. [*Id.*] The 2010 note copy contained a "Loan Number" at the top of the first page and certain following pages. [Doc. 9 at 10-11 ¶ 22]. The "Loan Number" had been redacted by blacking it out. [Doc. 9 at 11 ¶ 22]. On the top right of at least one page, there appeared the notation "MIN", an abbreviation for MERS Identification Number, indicating the registration number used by MERS, and the number "1000530000750188". [*Id.*] The current version of the note bears no loan number or MIN. [*Id.*] There is no black redaction bar, instead, the numbers are completely absent. [*Id.*]

Counsel for BONY, Chandler Thompson, filed an affidavit in Cobb County Superior Court attesting that he is in present possession of Plaintiff's original loan documents, and that these are being kept in his safe for litigation purposes. [Doc. 9 at 12 ¶ 24]. However,

8

when Plaintiff asked Thompson to inspect the documents, he sent an email refusing to allow her to do so. [Doc. 9 at 12 ¶ 25].

Plaintiff's note contains language allowing the "Note Holder" to give notice of acceleration and to enforce the acceleration clause therein. [Doc. 9 at 20 ¶¶ 52-53]. Plaintiff's security deed refers to "Lender" and "Borrower" in its clauses about acceleration and subsequent invocation of the power of sale. [Doc. 9 at 21 ¶ 54].

The Cobb County land records contain a purported Second Lien executed simultaneous to the first lien by Plaintiff to AWC in 2005 in the amount of $79,000, which references the Property. [Doc. 9 at 36 ¶ 92]. A copy of the second lien is attached to the Complaint as Exhibit J. [*Id.*]

MERS executed on May 25, 2017, an assignment (the "RRA Assignment") acting as "nominee" for AWC and its successors and assigns, purporting to transfer the second lien security deed (the "Security Deed") to RRA, a Delaware statutory trust. [Doc. 9 at 36 ¶ 93]. A copy of the RRA Assignment is attached to the Complaint as Exhibit K. [*Id.*]

According to BONY's motion for relief from stay, the fair market value of the Property was then $554,100.00. [Doc. 9 at 43 ¶ 112]. The total of BONY's liens and Plaintiff's exemption on the filing date of the Chapter 7 Case was $800,529.12. [Doc. 9 at 43 ¶ 13].

Plaintiff made her monthly mortgage payments to BOA each month after filing chapter 7 bankruptcy and remained current on her mortgage payments throughout the end of 2012 and into 2013. [Doc. 9 at 45 ¶¶ 122-23].

IV. **ANALYSIS AND PROPOSED CONCLUSIONS OF LAW**

RRA argues in the Motion to Dismiss that it is the holder of that certain Security Deed dated May 17, 2005 from Plaintiff to AWC, securing a promissory note in the original

9

principal amount of $79,500, recorded in Deed Book 14159, Page 3527, Cobb County, Georgia, Public Records. The Security Deed, it argues, was properly assigned to RRA via an assignment of Security Deed executed by MERS as nominee for AWC, dated May 25, 2017, and recorded June 7, 2017, in Deed Book 15449, Page 692, Cobb County, Georgia, Public Records.

### A. Standing Under the Bankruptcy Code

As a threshold matter, RRA argues, Plaintiff's claims against it relate to pre-petition conduct and are property of the chapter 7 bankruptcy estate[7]. Unless the Trustee abandons the cause or causes of action, it argues, only he has standing to pursue the pre-petition claims on behalf of the estate.

Plaintiff responds that although RRA's understanding of the law is partially correct, all unadministered property of the bankruptcy estate reverts back to the debtor as abandoned under 11 U.S.C. § 554(c). She argues that the reversion of this property to her was not automatically revoked when the Chapter 7 Case was reopened. *Frost v. Reilly (In re Reilly)*, No. BR 09-41356, 2013 WL 135179 (D.N.J. Jan. 8, 2013).

"Generally speaking, a pre-petition cause of action is the property of the Chapter 7 bankruptcy estate, and only the trustee in bankruptcy has standing to pursue it." *Parker v. Wendy's Int'l, Inc.*, 365 F.3d 1268, 1272 (11th Cir. 2004) (citing *Barger v. City of Cartersville*, 348 F.3d 1289, 1292 (11th Cir. 2003)); *In re Morgan,* 600 B.R. 725, 728 (Bankr. N.D. Ga. 2019) (Ritchey Craig, J.) (noting that "In a chapter 7 case, the Trustee steps into the debtor's shoes for the purpose of collecting property for the bankruptcy estate, and as such may only pursue claims that could be brought by the debtor himself.") (citations omitted). "Once an asset becomes part

---

[7] RRA cites *E.F. Hutton & Co., Inc. v. Hadley*, 901 F.2d 979, 983 (11th Cir. 1990) in support of this argument. *Hutton* addressed a different issue than the one here, that is, a chapter 7 trustee's ability to pursue claims of certain creditors rather than, as in this case, a trustee's general standing to pursue claims of the debtor that become property of the bankruptcy estate. *Hutton* also provides the two-step inquiry into standing conducted in each case—first, constitutional standing, and only then, the "prudential considerations" thereof. *Id.* at 984.

10

of the bankruptcy estate, all rights held by the debtor in the asset are extinguished unless the asset is abandoned back to the debtor pursuant to § 554 of the Bankruptcy Code. At the close of the bankruptcy case, property of the estate that is not abandoned under § 554 and that is not administered in the bankruptcy proceedings remains the property of the estate." *Id.* (citing 11 U.S.C. § 554(a-d).) But § 554(c) also provides that "[u]nless the court orders otherwise, any property scheduled under section 521(a)(1) of this title not otherwise administered at the time of the closing of a case is abandoned to the debtor." This is often referred to as abandonment by operation of law, or "technical abandonment." 5 Collier on Bankruptcy ¶ 554.02 (16th ed.); *see In re Cole*, 521 B.R. 410, 414 (Bankr. N.D. Ga. 2014) (Diehl, J.). "The reopening of a case 'does not undo any of the statutory consequences of closing.' Consequently, property that was deemed abandoned upon the closing of the case remains abandoned. . . ." Drake, J. and Visser, K, Bankr. Prac. for Gen. Practitioner § 8:16 (citing *In re Reilly*, 2013 WL 135179, among others).

   Here, however, the Assignment of the Security Deed did not occur until May 25, 2017, well after the petition date, and indeed after the Chapter 7 Case was closed. There are no applicable provisions of the Bankruptcy Code to bring Plaintiff's claims against RRA into the bankruptcy estate. The question of whether Plaintiff scheduled these claims is inapplicable, as the claims pertain to postpetition conduct. Furthermore, property of the estate was returned to Plaintiff upon the closing of the Chapter 7 Case. Thus, the Court does not agree that the Trustee would have standing to bring this action.

   Given that the Trustee does not have standing to challenge the RRA Assignment contrary to Plaintiff's assertions in the Complaint she cannot invoke 11 U.S.C. § 522(h) as a basis for standing. That subsection provides that "the debtor may avoid a transfer of property of the debtor or recover a setoff to the extent that the debtor could have exempted such property

11

under subsection (g)(1) of this section if the trustee had avoided such transfer, if— (1) such transfer is avoidable by the trustee under section 544, . . .; and (2) the trustee does not attempt to avoid such transfer." Because the transfer was not avoidable by the trustee, it is not avoidable by Plaintiff standing in his shoes. As will be explained further below, even if the Trustee or Plaintiff did have standing to seek to invalidate the RRA Assignment under bankruptcy law, the Court would still grant the Motion to Dismiss, as Plaintiff does not have standing under Georgia law to challenge the RRA Assignment, the RRA Assignment is otherwise valid, and the second position lien granted in the Security Deed is not avoidable.

## B. The RRA Assignment Is Valid

### i. AWC's bankruptcy does not affect the validity of any assignment.

The Security Deed was executed on May 17, 2005. AWC filed for Chapter 11 bankruptcy on August 13, 2007. AWC's second amended chapter 11 plan (the "AWC Plan") was confirmed on October 20, 2010.[8] The challenged assignment occurred May 17, 2017, after confirmation of the Plan.

The AWC Plan provides for the revesting of plan assets to the liquidating debtors. Specifically, it provides that "[u]pon the Effective Date, title to all property of the Estates of the Consolidated Debtors in their Chapter 11 Cases shall revest in the Liquidating Debtors." [Doc. 25-1 at 102].[9] The AWC Plan permits the liquidating debtors, after confirmation,

---

[8] Although Plaintiff does not provide these dates, she does refer to the confirmed plan in the Complaint. [Doc. 9 at 24] (". . . AWC ceased to exist in 2007 by virtue of a Chapter 11 Bankruptcy in a confirmed plan of liquidation. See, *In Re: Aegis Mortgage Corporation et. al.*, United States Bankruptcy Court for the District of Delaware, Case No. 07-11119)."). She also argues that there was no assignment prior to confirmation of the AWC Plan, stating "there is no record demonstrating that BONYM (or any other entity) obtained an assignment or transfer of Plaintiff['] s note from AWC prior to the filing of the AWC bankruptcy and the order confirming the liquidation plan in that case. . . . [Defendants] cannot demonstrate that the transfers or assignments **predated** the filing of the AWC petition." [*Id.* at 25] (emphasis in original).

[9] Plaintiff refers to the AWC bankruptcy in the Complaint [Doc. 1 at 26 ¶ 58], but did not include the AWC Plan in the exhibits to the Complaint. It was, however, attached to the Motion to Dismiss. Because of this, the Court must

12

to "transfer and dispose of their property free of any restrictions imposed by the Bankruptcy Code or the Bankruptcy Rules and without further approval of the Bankruptcy Court or notice to Creditors. . . ." There is no restriction on transfer of assets, such as the Security Deed, imposed by AWC's bankruptcy or confirmed plan when the RRA Assignment was made.[10]

Plaintiff mistakenly conflates the confirmation of a liquidating plan with a sale under 11 U.S.C. § 363. [Doc. 9 at ¶ 59 n.10]. She cites *In re Ditech Holding Corp.*, 606 B.R. 544 (Bankr. S.D.N.Y. 2019) for the proposition that § 363 applies to liquidating plans. *Ditech* stands for the exact opposite proposition. In a lengthy order, the New York court determined that § 363, and specifically 11 U.S.C. § 363(o) does not apply to liquidating plans of mortgage lenders in bankruptcy and would specifically not protect the borrower of a consumer mortgage such as Plaintiff. *Id.* Therefore, Plaintiff's argument that the AWC "bankruptcy record is devoid of any . . . sales or attempted sales," and "[n]or is there any reference to any such sale in the confirmed

---

decide whether the plan can be considered without converting the Motion to Dismiss to a motion for summary judgment. Fed. R. Civ. P. 12(d); Fed. R. Bankr. P. 7012(b). The Court "may consider a document attached to a motion to dismiss without converting the motion into one for summary judgment if the attached document is (1) central to the plaintiff's claim and (2) undisputed. In this context, 'undisputed' means that the authenticity of the document is not challenged." *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005). In *Horsley v. Feldt*, the court described this as the "incorporation by reference" doctrine. 304 F.3d 1125, 1134 (11th Cir. 2002). A document does not have to be attached to a complaint to be incorporated by reference "if the document's contents are alleged in a complaint and no party questions those contents." *Day*, 400 F.3d at 1276; *see Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322, 127 S. Ct. 2499, 2509 (2007) (noting that "when ruling on Rule 12(b)(6) motions to dismiss" courts ordinarily examine "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice"). Plaintiff does not dispute the authenticity of the plan filed by RRA at Doc. 25-1 and the Court will consider this document without converting the Motion to Dismiss to a motion for summary judgment. *See also* Doc. 33 at 2 ("Defendant's exhibit, a copy of the 'Second Amended Chapter 11 Plan' of [AWC] (the originator of Plaintiff's loan) is a document [that] . . . as to the truth of its contents, Plaintiff does not object.")

[10] Plaintiff also argues that AWC made the RRA Assignment without the consent of its bankruptcy trustee or that the Assignment was ineffective because the AWC Plan rejected AWC's executory contract with MERS. [Doc. 33 at 9]. Plaintiff lacks standing to raise these arguments as she is not a party to the AWC-MERS contract, and she does not have standing in the AWC bankruptcy case to challenge assignments on behalf of AWC's bankruptcy trustee. Like the plaintiffs in *Ames v. JP Morgan Chase Bank, N.A.*, 298 Ga. 732, 740, 783 S.E.2d 614, 620–21 (2016), if she "believe[s] that the assignment of the[] security deed . . . was invalid . . . then [she] should alert the [assignor] to that concern so that [it] may intercede to assert any rights it believes it has." Because "there is no evidence in this case that the [assignor] has any concern about the assignment . . . [Plaintiff] cannot manufacture standing for [her]sel[f] by asserting a claim that the party with standing has not asserted." *Id.*, *see infra* at 15.

plan of liquidation," is irrelevant. [Doc. 9 at ¶ 59 n.10]. Nothing in the Plan or the AWC bankruptcy case renders the Security Deed or any assignments thereof invalid.

### ii. The assignment is valid, regardless of who holds the note.

Plaintiff argues that discrepancies with her note relating to dates, allonges, wet ink signatures, and identification numbers, render the note secured by both the first security deed and the instant Security Deed unenforceable and would also render attempted assignments thereof invalid. On May 20, 2013, the Supreme Court of Georgia unequivocally disposed of this argument in answering a certified question, stating:

"Under current Georgia law, the holder of a deed to secure debt is authorized to exercise the power of sale in accordance with the terms of the deed even if it does not also hold the note or otherwise have any beneficial interest in the debt obligation underlying the deed."

*You v. JP Morgan Chase Bank, N.A.*, 293 Ga. 67, 74; 743 S.E.2d 428, 433 (2013). The Security Deed, which Plaintiff has attached to the Complaint, states:

> WITNESSETH, that Grantor, for and in consideration of the sum of TEN AND NO/100 DOLLARS ($10.00), in hand paid at and before the sealing and delivery of these presents, the receipt whereof is hereby acknowledged, has granted, bargained, sold, aliened, conveyed and confirmed, and by these presents does grant, bargain, sell alien, convey and confirm unto MERS (solely as nominee for Grantee and Grantee's successors and assigns), and its successors and assigns, the following described property . . . and all rights and interests which derive from the Grantor's ownership, use or possessions of the Property and all appurtenances thereto. . . .

[Doc. 9 at 195]. It further reads:

> Borrower understands and agrees that MERS holds only legal title to the interests granted by Grantor in this Deed to Secure Debt, but if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or canceling this Deed to Secure Debt.

[Doc. 9 at 196]. MERS was granted a security interest in the Property by virtue of the Security Deed, which grants it among other rights, the right to foreclose on the Property. *See Montgomery v. Bank of America*, 321 Ga. App. 343, 345, 740, S.E.2d 434, 437 (2013) (analyzing substantially similar language and determining that "the security deed expressly conveyed title to the interest in the security deed to MERS, gave MERS the right to invoke the power of sale, and authorized MERS to assign its rights and interests in the security deed to [the assignee].") The RRA Assignment states:

> FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC. AS NOMINEE FOR [AWC], ITS SUCCESSORS AND ASSIGNS, (ASSIGNOR). . . by these presents does convey, grant, assign, transfer and set over the described Security Deed with all interest secured thereby, all liens and any rights due or to become due thereon to RRA CP OPPORTUNITY TRUST 1 . . . ITS SUCCESSORS AND ASSIGNS, (ASSIGNEE). Said Security Deed is executed by SHIRLEY D. LETT to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR [AWC] and recorded in Deed Book 14159. Page 3527 and Doc # 2005-0089582 in the office of the Clerk of the Superior Court of COBB County, Georgia.. . .

[Doc. 9 at 206]. The RRA Assignment is signed by an assistant vice president of MERS, witnessed and notarized.

### iii. Plaintiff lacks standing to challenge the assignment to RRA.

RRA argues that, under Georgia law, Plaintiff does not have standing to challenge the assignment of the May 17, 2005 Security Deed from MERS to it. RRA argues further that the RRA Assignment was executed by MERS as nominee for AWC and was recorded in Deed Book 14159, Page 3527, Cobb County Georgia, Public Records. [Doc. 1, Ex. K].

RRA relies on the 2016 Georgia Supreme Court case of *Ames v. JP Morgan Chase Bank, N.A.*, 298 Ga. 732, 783 S.E.2d 614, in which the court applied the general rule that only a party to an assignment may challenge it, to the assignment of a Deed to Secure Debt that

the mortgagor argued was invalid because of an alleged expired power of attorney. *Id.* at 738. The *Ames* court addressed debtors' standing to challenge the assignment at issue there as was aptly stated in the case of *In re Morgan,* 600 B.R. 725 (Bankr. N.D. Ga. 2019) (Ritchey Craig, J.) as follows:

> First, a debtor would have standing if the assignment breached a contractual or statutory duty owed to the debtor. In *Ames*, the deed gave WaMu unilateral authority to assign the deed to a third party and the assignment was authorized under Georgia law. (citing O.C.G.A. § 44-14-64(c)). The second source of standing arises when the debtor is a party or third-party beneficiary to the assignment. (citing O.C.G.A. § 9-2-20). Regarding the standing of third-party beneficiaries, the court explained, challenging an assignment 'may normally be done only by the assignor, because the debtor is not a third-party beneficiary of the assignment as a whole and particularly is not intended to directly benefit from the transfer of the power of sale. Status as a third-party beneficiary does not imply standing to enforce every promise within a contract including those not made for that party's benefit. To the contrary, a third-party-beneficiary . . . can only enforce those promise made directly for his benefit'.

*Id.* at 729 (citations omitted).

Plaintiff responds that her position is fundamentally different than the plaintiff in *Ames* and that she is more like the plaintiff in *Minnifield v. Johnson & Freedman II, LLC*, 2012 WL 5463878 (N.D. Ga., Nov. 7, 2012) or the plaintiff in *Johnson v. Bank of America, N.A.*, 333 Ga. App. 539 (July 14, 2015).

In *Minnifield v. Johnson & Freedman II, LLC*, the district court declined to address the third-party standing issue, stating that the "[p]laintiff's claim is fundamentally different from one by a plaintiff who, faced with a record of the assignment and assignor's consent to transfer, argues that the assignment was invalid under, for example, the terms of a pooling agreement." No. 1:10-CV-9-TWT, 2012 WL 5463878, at *3 (N.D. Ga. Nov. 7, 2012), *aff'd*, 522 F. App'x 782 (11th Cir. 2013). The "fundamentally different" claim described in that case was that the plaintiff "entered into a loan agreement . . . for which she signed an assignable

16

promissory note and security deed, and that another entity . . . may have assigned the Note and Security Deed without any record of having received it from [the lender.]" *Id.* Ultimately, the Eleventh Circuit held on appeal in one of Ms. Minnifield's other cases that:

> [W]e see no plain error in the district court's holding that she lacked standing to challenge the assignment to which she was neither a party nor a beneficiary. Ms. Minnifield concedes that she lacks standing to challenge the assignment directly . . . and the thorough and well-reasoned report and recommendation [of the district court] disposes of Ms. Minnifield's argument that she can challenge the assignment indirectly under *Ames* or *Johnson*. On appeal, Ms. Minnifield does not point to any other cases—or statutes or rules—that would directly resolve the standing issue in her favor.

*Minnifield v. Wells Fargo Bank, N.A. as Tr. for Pooling & Servicing Agreement dated as of May 1, 2005 Asset Backed Pass-Through Certificates, Series 2005-WHQ3*, 786 F. App'x 979, 982 (11th Cir. 2019). This Court will follow the law set forth in *Ames*, which was decided after the cases relied upon by Plaintiff, and the Eleventh Circuit rather than rely on the district court's declining to decide the same issue with the same plaintiff as was resolved by *Minnifield*, 786 F. App'x 979.

      *Johnson* has been rejected by a higher court. The Supreme Court of Georgia held on appeal that the plaintiff failed to state a claim against his lender upon which relief can be granted. The Court left open the question of standing in "the situation where a plaintiff property owner alleges that she is no longer a debtor because the security deed has been cancelled, so legal title has reverted to the property owner and no one—not the original deed holder or any purported assignee—would have the power of sale," *Bank of Am., N.A. v. Johnson*, 299 Ga. 861, 863, 792 S.E.2d 704, 706 (2016). Plaintiff has not alleged that the Security Deed has been cancelled. Further, as was the case in *Johnson*, Plaintiff attached the Security Deed to the Complaint, does not allege the Security Deed is invalid and has not alleged that she paid the note at issue in this proceeding in full, rather she limits her allegations to having made payments in

17

2012 and 2013. *Id.* at 863. Therefore, Plaintiff does not fall within the exception reserved for later decision in *Ames* and *Johnson*.

As was the case in *Ames,* here, the Security Deed specifically provides that the conveyance is made to MERS its successors and assigns as nominee for Grantee and Grantee's successors and assigns, which establishes the holder's right to unilaterally assign the Security Deed. [Doc. 9 at 195, 196]. Further, the RRA Assignment does not contain any language conferring a benefit on Debtor. *See supra* at 12. As a result, Plaintiff does not have standing to challenge the assignment from MERS to RRA and the RRA Assignment is valid as it is not challenged herein by the parties to the agreement.

### iv. The equitable interest, to the extent one exists, was assigned.

Plaintiff's other argument, that AWC merely assigned its legal interest in the Property to MERS, but failed to assign its equitable interest, is equally unavailing. She does not clarify *what* equitable interest she believes AWC had, nor does she explain why failure to transfer that hypothetical equitable interest renders the lien void or voidable. Further, the language of the Security Deed and the RRA Assignment make clear that the interest MERS holds on behalf of the owner of the Security Deed and which is being transferred is a fee simple interest.

### C. The Lien Is Not Avoidable

Plaintiff seeks, in the alternative, avoidance of the second lien held by RRA as wholly unsecured based on the value of the Property. To date, no motion has been filed in the Chapter 7 Case seeking this relief. To file such a motion would be futile under current law. *Bank of Am., N.A. v. Caulkett*, 575 U.S. 790, 135 S. Ct. 1995, 2001 (2015) ("[A] debtor in a Chapter 7 bankruptcy proceeding may not void a junior mortgage lien under § 506(d) when the debt owed

18

on a senior mortgage lien exceeds the current value of the collateral.") (citing *Dewsnup v. Timm*, 502 U.S. 410, 112 S.Ct. 773 (1992)). To the extent Plaintiff relies on earlier Eleventh Circuit precedent allowing chapter 7 debtors to strip second mortgage liens, such as *In re McNeal*, 735 F.3d 1263, 1265 (11th Cir. 2012), or *In re Farmer*, 580 F. App'x 893 (11th Cir. 2014), *cert. granted, judgment vacated sub nom. Bank of Am., N.A. v. Farmer*, 576 U.S. 1002, 135 S. Ct. 2804 (2015), these have been overruled by *Caulkett* and its progeny. *See In re Waits*, 793 F.3d 1267 (11th Cir. 2015) (overruling *McNeal*, 735 F.3d 1263). As a result, there is no mechanism in the Chapter 7 Case to avoid RRA's lien on the grounds that it is wholly unsecured.

## V.    CONCLUSION

The Court finds that the Chapter 7 Trustee does not have standing to pursue Plaintiff's claims against RRA because the RRA Assignment was not executed until 2017, long after Plaintiff's chapter 7 case closed, such that her claim against RRA is a postpetition claim. Under the facts in this proceeding, the Court's jurisdiction is non-core such that the Court must enter a report and recommendation on the Motion to Dismiss.

The Court further concludes that under Georgia law, which controls the determination of RRA's interest in the Property, Plaintiff does not have standing to challenge the RRA Assignment and that the RRA Assignment is valid. Therefore, the Motion to Dismiss is well founded and the Court recommends that the Motion to Dismiss be granted and the claims in the Amended Complaint against RRA be dismissed.

**END OF ORDER**

**Distribution List**

Shirley White-Lett
456 North Saint Marys Lane
Marietta, GA 30064

Brian K. Jordan
Aldridge Pite, LLP
Suite 500 - Fifteen Piedmont Center
3575 Piedmont Road, NE
Atlanta, GA 30305

Chandler P. Thompson
Akerman LLP
Suite 725
170 South Main Street
Salt Lake City, UT 84101

Christine S. Kapur
McGuireWoods LLP
Suite 2100, Promenade
1230 Peachtree Street, N.E.
Atlanta, GA 30309

Jarrod S. Mendel
McGurire Woods, LLP
1230 Peachtree Street, NE
Suite 2100
Atlanta, GA 30309-3534

John D. Andrle
Cobb, Olson & Andrle, LLC
Suite 160-B
500 Sugar Mill Road
Atlanta, GA 30350

William Oxford Tate
McCalla Raymer, Pierce, LLC
1544 Old Alabama Road
Roswell, GA 30076

ALL PARTIES