**IT IS ORDERED as set forth below:**

**Date: October 22, 2021**

_____

**Barbara Ellis-Monro
U.S. Bankruptcy Court Judge**

_____

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| IN RE:<br><br>SHIRLEY LETT,<br><br>    Debtor. | CASE NO. 10-61451-BEM<br><br>CHAPTER 7 |
| SHIRLEY WHITE-LETT,<br><br>    Plaintiff,<br><br>v.<br><br>THE BANK OF NEW YORK MELLON, CORP.,<br>THE BANK OF NEW YORK MELLON,<br>BANK OF AMERICA, N.A., FEDERAL<br>NATIONAL MORTGAGE ASSOCIATION,<br>(a/k/a Fannie Mae), FEDERAL HOME LOAN<br>MORTGAGE CORP. (a/k/a Freddie Mac),<br>MERSCORP HOLDINGS, INC. (d/b/a MERS)<br>MORTGAGE ELECTRONIC REGISTRATION<br>SYSTEMS INCORPORATED (MERS),<br>and RRA CP OPPORTUNITY TRUST 1,<br><br>    Defendants. | ADVERSARY PROCEEDING<br>NO.  20-06278-BEM |

## **ORDER ON BANK OF AMERICA, N.A.'S MOTION TO DISMISS**

Defendant Bank of America, N.A. ("BANA") filed its *Motion to Dismiss Plaintiff's Complaint* (the "Motion") [Doc. 48][1] in response to Plaintiff Shirley White-Lett's ("Plaintiff") *Amended Rule 7001 and 3007(b) Adversary Proceeding* (the "Amended Complaint" or "AC") [Doc. 9]. Plaintiff filed her *Response to the Motion to Dismiss of Bank of America, N.A.* [Doc. 57]. The Motion is now ripe for determination.

In the Amended Complaint, Plaintiff seeks to recover damages from BANA for alleged discharge injunction violations and seeks a declaratory judgment that BANA has no right to enforce the security deed or note associated with her residence located at 465 North Saint Mary's Lane, Marietta, Georgia 30064 (the "Property").

BANA argues in the Motion that the declaratory judgment claims should be dismissed because there is no controversy – it is not seeking to enforce the security deed or note, it does not claim it has a right to, and Plaintiff has not alleged otherwise. BANA argues further that, even if there were a controversy, Plaintiff should be estopped from bringing these claims because she previously brought similar claims in the Cobb County Georgia Superior Court (the "Superior Court") and the Superior Court dismissed them. BANA also argues that Plaintiff's damages claim should be dismissed because Plaintiff has failed to state a claim upon which relief can be granted because she waited too long to bring her claim, warranting a dismissal under the doctrine of laches. As explained herein, the Court will grant the Motion in part and deny it in part.

---

[1] Unless otherwise specified, docket citations are to the docket in this adversary proceeding.

2

### I. Applicable Legal Standard

Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"), made applicable to proceedings in the bankruptcy court by Federal Rule of Bankruptcy Procedure ("F.R.B.P.") 7012(b), permits a court to dismiss a plaintiff's claims when the plaintiff fails to state a claim upon which relief can be granted. *Wells Fargo Bank, N.A. v. Farmery (In re Farmery)*, No. 13-71735, AP 13-5450, 2014 Bankr. LEXIS 2865, at *2 (Bankr. N.D. Ga. 2014) (Diehl, J.). When evaluating Rule 12(b)(6) motions, courts must take the facts plaintiffs allege in their complaints as true and must construe those facts in a light most favorable to the plaintiff. *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1321-22 (11th Cir. 2012).

To adequately state a claim for relief, plaintiffs must allege facts that, if taken as true, establish a facially plausible claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (citation omitted). Claims are facially plausible when they allow the court to reasonably infer that the defendant is liable. *Id*. This requires plaintiffs to allege more than just labels and conclusions and a formulaic recitation of the elements of the claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1965 (2007). Plaintiffs must allege facts that demonstrate the claim is more than mere speculation. *Claros v. Taylor Lee & Assocs. LLC*, No. 1:18-cv-2204, 2018 U.S. Dist. LEXIS 224591, at *4-5 (N.D. Ga. Sep. 18, 2018).

Although a plaintiff's *pro se* status entitles his or her complaint to be reviewed more liberally than an attorney's pleadings, a *pro se* party's pleadings must still satisfy the pleading requirements laid out in Rule 12(b)(6). *Beckwith v. Bellsouth Telecomms., Inc.*, 146 F. App'x 368, 371 (11th Cir. 2005) ("Although we construe them liberally, *pro se* complaints also must comply with the procedural rules that govern pleadings."). The Court may not serve as *de facto* counsel or

3

rewrite deficient pleadings to carry them past the motion to dismiss stage. *See Smith v. Ocwen Fin.*, 488 F. App'x 426, 427 (11th Cir. 2012) (citation omitted).

### II. Facts Alleged in the Complaint and Accompanying Attachments

#### a. Allegations relating to alleged discharge injunction violations.

On January 19, 2010, Plaintiff filed for relief under Chapter 7 of the Bankruptcy Code. [Case No. 10-61451 ("Main Case"), Doc. 1]. In her schedules, she listed BAC Home Loans[2] ("Servicing") as a secured creditor. [AC, ¶ 116]. Plaintiff also filed a statement of intention indicating an intent to reaffirm her mortgage debt. [AC, ¶ 117]. At the time of filing Plaintiff was not in default on her mortgage payments. [AC, ¶ 117]. After filing for bankruptcy, Plaintiff notified her mortgage servicer, Servicing, of her filing and her intent to reaffirm the loan. [AC, ¶ 118]. Plaintiff alleges that the person with whom she spoke could not confirm whether her loan would be reaffirmed but told her that she must continue to make payments otherwise Servicing would initiate a collection action. [AC, ¶ 118].

A month after filing bankruptcy, Plaintiff received a mortgage statement stating an amount due on her loan and a due date. [AC, ¶ 119]. She made the payment and asked Servicing if there were any updates on the reaffirmation of her loan. [AC, ¶ 119]. The person with whom Plaintiff spoke was not aware of any updates but told her to continue making payments. [AC, ¶

---

[2] Although BANA is the Defendant, the AC contains numerous references to an entity called BAC Home Loans, BAC Home Loan Servicing, or BAC in conjunction with allegations against BANA. [Compare ¶ 116, 118-120, 124-125 (referencing Servicing) with ¶ 122, 128-135 (referencing BANA) and ¶ 126, 136-137 (referencing BANA and Servicing)]. The references to Servicing appear to refer to BAC Home Loans Servicing L.P., which filed a motion for stay relief in Plaintiff's bankruptcy case on October 27, 2010, in which it identified itself as the servicer of the loan. [AC ¶ 19, 84, 124; Main Case, Doc. 14]. The AC does not allege any relationship between BANA and Servicing, and Plaintiff has not sought to make the merger part of the record. [Compare AP No. 20-6031 Doc. 72 at 18 and Doc. 87-9 in which Plaintiff requested the Court take judicial notice of the merger and BANA filed a copy of the certificate of merger]. At a status conference on October 4, 2021, the Court asked whether the parties could stipulate that BANA and Servicing had merged at some point. Counsel for BANA said she would have to look into it. However, based upon BANA's brief BANA has acknowledged that Servicing was merged into BANA at some point. [Doc. 48 at 2(stating that "BANA (and predecessor entities with which it merged) was . . . a former service of Plaintiff's mortgage loan")]. Therefore, the Court will assume the entities merged for purposes of this Order.

4

120]. Plaintiff continued making post-petition monthly payments to BANA upon receipt of the monthly loan statements as she was instructed and based upon the language in the statements. [AC, ¶ 122]. Plaintiff remained current on her mortgage payments throughout 2012 and into 2013. [AC, ¶ 123 and Ex. L].

On February 25, 2011, Plaintiff received her discharge. [AC, ¶ 125; Main Case, Doc. 23]. The discharge order was served on Servicing on February 27, 2011. [AC, ¶ 125; Main Case, Doc. 24].

After her discharge, Plaintiff continued receiving monthly mortgage statements from BANA and communicating via telephone with Servicing, both of which convinced her she was going to remain personally liable for the loan. [AC, ¶ 126]. Plaintiff received the November 2012 mortgage statement from BANA, warning her that her loan was past due and including the following language:

> If we do not hear from you immediately, we will have no alternative but to take appropriate action to protect the interest of the Noteholder in your property. This action may include returning payments that are less than the Total payments due to bring loan current.
>
> **Please give this matter your most urgent attention**. Please send the amount due with the coupon below immediately. Additional amounts may become past due. Bank of America, N.A. will proceed with collection action until your account is brought fully current, and you will be responsible for all costs incurred in this process to the full extent permitted by law.

[AC ¶ 126 and Ex. M (emphasis in exhibit)]. Mortgage statements with similar language followed through March of 2013. [AC, ¶ 127 and Ex. M]. Plaintiff made numerous payments to BANA due to fear of collection action from Servicing/BANA. [AC, ¶ 137]. From January 2010 through March 2013, the payments totaled $147,469.18. [AC, ¶ 137].

5

Although Plaintiff timely paid all her mortgage payments, BANA sent her a letter dated December 12, 2012 stating that it had received only $24.55 for the April 2012 payment. [AC, ¶ 128 and Ex. N]. However, BANA received and cashed Plaintiff's check in the amount of $3,951.54 for the April 2012 payment. [AC, ¶ 129 and Ex. O]. BANA and its successor servicers have not explained what happened to the April 2012 payment or why BANA waited eight months to bring the matter to Plaintiff's attention. [AC, ¶ 130]. Plaintiff received a similar letter dated January 15, 2013 for the May 2012 mortgage payment. [AC, ¶ 132]. Plaintiff timely made the May 2012 mortgage payment by check in the amount of $3,953.34, the check was cashed by BANA, but the January 15 letter stated that BANA had only received $33.01. [AC, ¶ 132 and Ex. Q, R]. At this point, Plaintiff began to perceive that BANA was attempting to create the existence of a default so it could initiate a foreclosure. [AC, ¶ 134]. Plaintiff thereafter received a letter dated May 1, 2013 with a Notice of Sale Under Power. [AC, ¶ 134 and Ex. T].

Plaintiff suffered substantial emotional distress upon learning that she was never required to make the foregoing payments. [AC, ¶ 138a[3]]. Plaintiff further suffered emotional distress in relation to BANA claiming she defaulted under the loan and threatening to initiate foreclosure on the basis of such claim of default. [AC, ¶ 138a]. Plaintiff suffered worry and anger in her belief that her money was being systematically stolen from her. [AC, ¶ 138b].

### b. Allegations relating to BANA's right to enforce the security deed.

During Plaintiff's 2010 bankruptcy case, Servicing filed a motion for relief from the automatic stay. [AC, ¶¶ 19, 124]. In the motion Servicing stated that it was formerly known as Countrywide Home Loans Servicing, LP and was the servicing agent for The Bank of New York Mellon, who was "a secured creditor of Debtor pursuant to a Note and Security Deed." [AC, ¶ 84].

---

[3] The Amended Complaint contains two consecutive paragraphs numbered 138, which the Court herein will refer to as paragraphs 138a and 138b.

6

A 2010 version of the purported note and security deed was attached to the motion. [AC, ¶ 19]. On November 17, 2020, The Bank of New York Mellon filed a proof of claim in Plaintiff's bankruptcy case. [AC ¶ 5]. A copy of the note attached to the proof of claim shows that it purportedly was last endorsed in blank by Countrywide Home Loans, Inc. [AC, ¶ 10].

In or around August 2014, BANA, as successor to Countrywide Home Loans, entered into a Settlement Agreement with the Department of Justice ("DOJ") to resolve claims alleging that Countrywide knowingly sold to Fannie Mae and Freddie Mac, mortgage-backed securitizations that were not of the quality that had been represented. [AC, ¶ 29].[4] The Settlement Agreement recited as follows: "From at least 2005 through mid-2008, Fannie Mae served as Countrywide's GSE 'alliance partner.' Under this arrangement, which Bank of America later continued, Countrywide sold most of its mortgage inventory to Fannie Mae." [AC, ¶ 32]. "By executing the Settlement Agreement, BANA acknowledged that Countrywide sold the loans contained in the CWALT, INC. ALTERNATIVE LOAN TRUST 2005-27, MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2005-27, to "Fannie Mae" or "Freddie Mac." [AC, ¶ 33, 34].

The Countrywide securitizations identified as being sold to Fannie Mae or Freddie Mac and subject to the DOJ Agreement show that the Trust purportedly containing Plaintiff's loan, CWALT 2005-27, was among such trusts. [AC, ¶ 35]. The mortgage loans contained in the CWALT 2005-27 Trust thus were owned by Fannie Mae or Freddie Mac. [AC, ¶ 36].

BANA did not receive possession of Plaintiff's original note and security deed from the originating lender Aegis Wholesale Corporation ("AWC"). [AC, ¶ 37]. BANA did not own

---

[4] Although Plaintiff references at least three Countrywide entities in the AC ("Countrywide Home Loans" in the AC, ¶ 29, "Countrywide" in AC ¶ 32-36, and "Countrywide/Bank of America" in AC ¶ 37-41) Plaintiff does not further identify which specific entity entered the Settlement Agreement. Exhibit F to the AC contains two pages of the Settlement Agreement, but does not identify the parties to the Settlement Agreement.

7

Plaintiff's loan and did not transfer possession of Plaintiff's original loan note and deed to Fannie Mae, Freddie Mac, or Bank of New York Mellon. [AC, ¶ 38- 40].

Countrywide may have assigned the note and deed without any record of having received it from the originator AWC. [AC, ¶ 81]. There is no record connecting Countrywide to a transfer of the deed from AWC despite the fact that Countrywide entities created the subject Trust in this case. [AC, ¶ 81]. Fannie Mae or Freddie Mac, as likely purchasers of the loans as evidenced in the DOJ Agreement, may have been assigned the deed and note either from AWC or Countrywide. [AC, ¶ 81].

### c. Attachments to the Complaint

Plaintiff attached a variety of documents to the Amended Complaint as follows:

Exhibit A: copy of The Bank of New York Mellon's proof of claim;

Exhibit B: copy of letter from Shellpoint Mortgage Servicing dated June 7, 2017;

Exhibit C: copy of Declaration of Chandler Thompson Supporting BONYM and Shellpoint's Motion for Summary Judgment filed in White-Lett v. The Bank of New York Mellon et al, Case No. 19-1-723-52 in the Superior Court of Cobb County;

Exhibit D: copy of email exchange between Plaintiff and Chandler Thompson in September 2020 regarding the original note;

Exhibit E: copies of documents filed in Paulding v. Bank of America, N.A., et al, Case No. 17-11340 (D. Mass);

Exhibit F: copy of portion of the settlement agreement in Paulding v. Bank of America, N.A., et al, Case No. 17-11340 (D. Mass);

8

Exhibit G: Transcript of Emergency Motion for T.R.O Proceedings in White-Lett v. The Bank of New York Mellon et al, Case No. Case No. 19-1-723-52 in the Superior Court of Cobb County;

Exhibit H: copy of the note;

Exhibit I: order granting motion to dismiss in Lett v. Bank of America, NA et al, Case No. 13-1-4212-34 in the Superior Court of Cobb County;

Exhibit J: copy of a deed to secure debt;

Exhibit K: copy of an assignment of security deed;

Exhibit L: list of payments Plaintiff made to BANA with date, amount, and check number and copies of the checks;

Exhibit M: copies of mortgage statements from BANA;

Exhibit N: copy of letter from BANA dated December 4, 2012 regarding April 2012 payment;

Exhibit O: copy of check by Plaintiff to BANA dated April 12, 2012 in the amount of $3,951.34;

Exhibit P: copy of check from BANA to Plaintiff dated December 4, 2012 in the amount of $24.55;

Exhibit Q: copy of check by Plaintiff to BANA dated May 15, 2012 in the amount of $3,951.34;

Exhibit R: copy of check from BANA to Plaintiff dated January 15, 2021 in the amount of $33.01;

Exhibit S: copy of letter from BANA dated January 15, 2013 regarding May 2012 payment; and

Exhibit T: copy of letter from Shuping, Morse & Ross, LLP dated May 1, 2013 advising Plaintiff that foreclosure proceedings are being instituted.

### III. Legal Analysis

#### a. Plaintiff did not assert a § 544 claim against BANA

In Plaintiff's Response she asserts that her claim under 11 U.S.C. § 544(a)(3)[5] is not subject to res judicata [Doc. 57]. The Court need not determine whether this is an accurate statement as the Amended Complaint asserts the § 544 claim against BONYM, and not against BANA. [AC ¶ 95, 104, 114]. Although the AC includes allegations regarding BANA's possession of Plaintiff's original note and security deed [AC ¶ 37-41, 101, 103, 105], those allegations in themselves do not assert a § 544 claim nor are they sufficient to give BANA fair notice that it is the subject of a § 544 claim. *See Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964 (citing Fed. R. Civ. P. 8(a)(2); *Conley v. Gibson*, 335 U.S. 41, 47, 78 S. Ct. 99, 103 (1986)). Rather, Plaintiff alleges that BONYM does not have an enforceable security interest in the Property and that she is entitled to a declaration of the same and an injunction prohibiting BONYM from seeking to enforce the BONYM Deed "along with all other defendants." The claim for declaratory judgment is not a § 544 claim. Accordingly, to the extent Plaintiff sought to plead a claim under § 544 against BANA the AC does not contain allegations sufficient to state such a claim.

#### b. Claim for Declaratory Judgment

Plaintiff seeks a declaration from this Court that "Bank of America, N.A., is not entitled to enforce the security deed having failed to establish a complete chain of title and that the note at issue herein is unsecured." [AC, ¶ 90]. While she seeks specific relief in a bankruptcy court, federal courts do not have the power to hear all cases that come before them. "Federal courts are

---

[5] Section 544(a)(3) authorizes the trustee to avoid any liens that a hypothetical bona fide purchaser of real property could avoid at the time of commencement of the case. 5 Collier on Bankruptcy ¶ 544.05 (16th ed. 2021).

10

courts of limited jurisdiction[,]" and may only hear those cases that the Constitution and statutes permit. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377, 114 S. Ct. 1673, 1675 (1994). As a federal court the bankruptcy court is subject to these limitations and further jurisdictional limitations set forth in 28 U.S.C. § 1334[6].

Article III of the Constitution extends federal court jurisdiction to those claims that present "cases" or "controversies[.]" *Hein v. Freedom from Religion Found., Inc.*, 551 U.S. 587, 597-98, 127 S. Ct. 2553, 2562 (2007) (citation omitted). The purpose of this limitation is to ensure that federal courts only hear those cases that are presented in an adversary context and have been historically viewed as capable of being resolved by federal courts. *United States v. Rivera*, 613 F.3d 1046, 1049-50 (11th Cir. 2010) (citing *Flast v. Cohen*, 392 U.S. 83, 95, 88 S. Ct. 1942, 1950 (1968)). Limiting federal court jurisdiction to these cases is fundamental to our system of government. *Hein*, 551 U.S. at 597-98, 127 S. Ct. at 2562 (quoting *Raines* v. *Byrd*, 521 U.S. 811, 818, 117 S. Ct. 2312 (1997)) ("'No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies.'"). When issues brought before the court meet the "cases" or "controversy" requirement, the matter is said to be justiciable, a term of art. *Rivera*, 613 F.3d at 1049-50 (quoting Erwin Chemerinsky, FEDERAL JURISDICTION § 2.1, at 45 (5th ed. 2007)) ("The justiciability doctrines define the judicial role[.]").

One requirement for claims to be justiciable, born out of Article III's "cases" or "controversies" requirement, is that claimants must present real, substantial, and ongoing controversies that touch legal relations of parties with adverse legal interests. *Rivera*, 613 F.3d at

---

[6] *See Bucchino v. Wells Fargo Bank, N.A. (In re Bucchino)*, 439 B.R. 761, 768 n. 10 (Bankr. D.N.M. 2010) (stating, that the "… Article III constitutional standing requirement applies in bankruptcy court, even though the bankruptcy court is an Article I court.") (citing, *Kilen v. U.S. (In re Kilen)*, 129 B.R. 538, 542-543 (Bankr. N.D. Ill. 1991) and *Smith v. Fairbanks Capital Corp. (In re Smith)*, 299 B.R. 687, 689 n.1 (Bankr. S.D. Ga. 2003)).

1049-50 (quoting *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 240-41, 57 S. Ct. 461, 464 (1937)); *see also Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477-78, 110 S. Ct. 1249, 1253-54 (1990) ("Under Article III of the Constitution, federal courts may adjudicate only actual, ongoing cases or controversies."). These controversies must be definite and concrete. *Id*. Courts may not issue advisory opinions based on hypothetical facts. *Preiser v. Newkirk*, 422 U.S. 395, 401, 95 S. Ct. 2330, 2334 (1975) (citation omitted); *see also Lewis,* 494 U.S. at 477, 110 S. Ct. at 1253 (Article III confines federal courts "to resolving real and substantial controversies admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.") (internal citations and quotations omitted). Courts may only settle disputes if their decisions would "affect[] the behavior of the defendant towards the plaintiff." *Rhodes v. Stewart,* 488 U.S. 1, 4, 109 S. Ct. 202, 203 (1988) (*quoting Hewitt v. Helms,* 482 U.S. 755, 761, 107 S. Ct. 2672, 2676 (1987)); *see also Lewis,* 494 U.S. at 477, 110 S. Ct at 1253 ("Article III denies federal courts the power to decide questions that cannot affect the rights of litigants in the case before them[.]") (internal citations and quotations omitted).

Another requirement for claims to be justiciable, also born out of Article III's "cases" or "controversies" requirement, is that plaintiffs must demonstrate that they have standing to seek relief from the court. *Hein*, 551 U.S. at 597-98, 127 S. Ct. at 2562. "Perhaps the most important of the Article III doctrines grounded in the case or controversy requirement is that of standing." *A&M Gerber Chiropractic LLC v. Geico Gen. Ins. Co.*, 925 F.3d 1205, 1210 (11th Cir. 2019) (quoting *Wooden v. Bd. of Regents of the Univ. Sys. of Ga.,* 247 F.3d 1262, 1273 (11th Cir. 2001). To establish standing, plaintiffs must allege, among other things, that they suffered an injury-in-fact. *Id.* at 1210-11.

When plaintiffs are seeking declaratory relief, to meet the injury-in-fact requirement, they must allege facts that show a substantial likelihood of future injury. *Id*. (quoting *Strickland v. Alexander*, 772 F.3d 876, 883 (11th Cir. 2014) ("Where the plaintiff seeks declaratory or injunctive relief. . . the injury-in-fact requirement insists that a plaintiff allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future."). Pointing to past injury is not sufficient to establish Article III standing for declaratory relief. *Id*. (quoting *Malowney v. Fed. Collection Deposit Grp.*, 193 F.3d 1342, 1348 (11th Cir. 1999)) ("Injury in the past . . . does not support a finding of an Article III case or controversy when the only relief sought is a declaratory judgment.").

Lastly, plaintiffs seeking declaratory relief must also allege facts sufficient to meet the requirements set forth in the Declaratory Judgment Act, 28 U.S.C. § 2201. *Emory v. Peeler,* 756 F.2d 1547, 1551-52 (11th Cir.1985). The Act, born out of the "cases" or "controversies" jurisdictional limitations of Article III, requires plaintiffs to present "actual controvers[ies.]" *Malowney*, 193 F.3d at 1347 (citing *Emory,* 756 F.2d at 1551-52). The "actual controversy" requirement refers to the types of "cases" and "controversies" justiciable under Article III. *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127, 127 S. Ct. 764, 771 (2007) ("the phrase 'case of actual controversy' in the Act refers to the type of 'Cases' and 'Controversies' that are justiciable under Article III.") (citation omitted); *see also Malowney.*, 193 F.3d at 1347 (quoting *Emory,* 756 F.2d at 1551-52) ("[T]he continuing controversy may not be conjectural, hypothetical, or contingent; it must be real and immediate, and create a definite, rather than speculative threat of future injury."); *Colonial Pipeline Co. v. AIG Specialty Ins. Co.*, No. 1:19-cv-00762, 2020 U.S. Dist. LEXIS 90137, at *8-9 (N.D. Ga. May 22, 2020) ("the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial

13

controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.") (quotation marks and citation omitted).

In support of her request for issuance of a declaration that BANA has not established an unbroken chain of title that would enable it to enforce the security deed, Plaintiff alleges that BANA did not receive possession of the original note and security deed from the originating lender, did not own the loan, and did not transfer possession of the original note and security deed to Fannie Mae, Freddie Mac, or the Bank of New York Mellon. BANA does not dispute this; however, at no point in the AC does Plaintiff allege any facts demonstrating that BANA is currently seeking to enforce the security deed or note, or argue that it has any current right to do so. Although Plaintiff alleges that in 2013 BANA sent her notice initiating foreclosure, the notice identified BANA as the servicer for the secured creditor Bank of New York Mellon. [Ex. T]. Additionally, Plaintiff does not allege that any foreclosure took place, that BANA took any additional action, or importantly, that BANA is currently seeking to take any action. [AC, ¶ 135]. Rather, Plaintiff alleges that a different servicer is currently trying to enforce the security deed on behalf of Bank of New York Mellon. [AC, ¶ 5, ¶ 24]. Thus, there may be a controversy regarding enforceability of the note or security deed associated with Plaintiff's residence between Plaintiff and Bank of New York Mellon, or between Plaintiff and Bank of New York Mellon's current servicer, but there is not one between Plaintiff and BANA. Therefore, Plaintiff has not alleged an "actual controversy" as required by Article III and the Declaratory Judgment Act. As a result, the Court will grant the Motion as to Plaintiff's request for declaratory relief against BANA.

### c. Claim for Damages for Violation of the Discharge Injunction

Plaintiff seeks damages from BANA for alleged violations of the discharge injunction of 11 U.S.C. § 524(a). BANA moves to dismiss this claim arguing that Plaintiff fails to

14

state a claim upon which relief can be granted and further, that she waited too long to bring the claim such that it should be barred by laches and dismissed.

### 1. Whether Plaintiff Has Stated a Claim Upon Which Relief Can Be Granted

The central purpose of the bankruptcy process is to provide honest but unfortunate debtors with a "fresh start." *Grogan v. Garner*, 498 U.S. 279, 286-87, 111 S. Ct. 654, 659 (1991). A key component of the "fresh start" is the discharge of prepetition debts. *Id.* The discharge "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any [discharged] debt as a personal liability of the debtor, whether or not discharge of such debt is waived[.]" 11 U.S.C. § 524(a)(2).

A discharge in bankruptcy only relieves debtors of personal liability for prepetition debts. It does not void or otherwise affect a lien against property of the debtor. *Mele v. Bank of America Home Loans (In re Mele)*, 486 B.R. 546, 555 (Bankr. N.D. Ga. 2013) (Ellis-Monro, J.) (citing *Long v. Bullard*, 117 U.S. 617, 620-21, 6 S. Ct. 917, 918 (1886)). Because creditors do not lose their security interests in property, they may still enforce their rights in collateral.

The test for whether a creditor's post-discharge conduct violates the discharge injunction is "'whether the objective effect of the creditor's action is to pressure a debtor to repay a discharged debt.'" *Roth v. Nationstar Mortg., LLC (In re Roth)*, 935 F.3d 1270, 1276 (11th Cir. 2019) (quoting *GreenPoint Credit, LLC v. McLean (In re McLean)*, 794 F.3d 1313, 1322, 11th Cir. 2015)). A creditor can be held in contempt for its violation of the discharge injunction if "there is no objectively reasonable basis for concluding that the creditor's conduct might be lawful under the discharge order." *Taggart v. Lorenzen*, 139 S. Ct. 1795, 1801 (2019); *Roth*, 935 F.3d at 1275. Therefore, to state a claim for sanctions, Plaintiff must allege facts that show BANA had "no fair

15

ground of doubt as to whether the [discharge] order barred" its conduct. *Taggart*, 139 S. Ct. at 1799.

Here, Plaintiff alleges that she received a discharge on February 25, 2011, and that Servicing was served with the discharge order. Plaintiff further alleges that after her discharge, Plaintiff had telephone conversations with Servicing, and BANA continued sending mortgage statements. Between November 2012 and March 2013, the mortgage statements included language stating that Plaintiff was past due on her mortgage and that BANA would "proceed with collection action until your account is brought fully current, and you will be responsible for all costs incurred in this process to the full extent permitted by law."

Plaintiff alleges that upon receipt of these letters, she made numerous payments to BANA out of fear of collection action against her. Plaintiff also alleges that BANA accused her of being in default on her April and May 2012 payments despite her timely mortgage payments for those months and all months between 2010 and March of 2013. Plaintiff alleges that she suffered substantial emotional distress upon learning that she was never required to make such payments and in relation to BANA claiming she defaulted under the loan and by threatening to initiate foreclosure on that basis. Plaintiff further alleges that she suffered worry and anger in her belief that her money was being stolen from her.

Taking the facts as true and in a light most favorable to Plaintiff, she has stated a facially plausible claim for relief for violations of the discharge injunction. Plaintiff alleges that BANA having notice of her discharge, sent mortgage statements to her post-discharge with language indicating she could be responsible for the debt. She claims to have understood these letters to be an attempt to collect a discharged debt. She continued making payments based on this

16

understanding. In her view, BANA's objective in sending the letters was to collect on a discharged debt. This is sufficient to adequately state a claim for relief for discharge injunction violations.

### 2. Is the Claim Barred by Laches?

BANA argues that Plaintiff's damages claim should be precluded under the doctrine of laches. Laches is an equitable defense "that serves to bar suit by a plaintiff 'whose unexcused delay, if the suit were allowed, would be prejudicial to the defendant.'" *Black Warrior Riverkeeper, Inc. v. U.S. Army Corp of Eng'rs*, 781 F.3d 1271, 1283 (11th Cir. 2015) (quoting *Russell v. Todd*, 309 U.S. 280, 287, 60 S. Ct. 527 (1940)). Under the doctrine, a defendant must prove: "(1) there was a delay in asserting a right or a claim, (2) the delay was not excusable, and (3) the delay caused [a defendant] undue prejudice." *Groucho's Franchise Sys., LLC v. Grouchy's Deli, Inc.,* No. 1:14-cv-1725, 2015 U.S. Dist. LEXIS 180373, at *5 (N.D. Ga. July 1, 2015) (citing *U.S. v. Barfield*, 396 F.3d 1144, 1150 (11th Cir. 2005)) (alteration in original); *Black Warrior Riverkeeper*, 781 F.3d at 1283.

To determine whether laches applies, courts must look to the specific facts of each case and decide whether a plaintiff's delay in bringing suit was reasonable. *See Groucho's Franchise Sys.*, 2015 U.S. Dist. LEXIS 180373, at *5 (citing *Studiengesellschaft Kohle mbH v. Eastman Kodak Co.*, 616 F.2d 1315, 1325 (5th Cir. 1980) ("Laches and estoppel are equitable defenses whose appropriateness must be determined in each case under its particular factual situation.")); *see also Holman v. Citimortgage, Inc. (In re Holman)*, No. 07-70272, AP 09-70031, 2010 Bankr. LEXIS 1518, *15-16 (Bankr. N.D. Ala. May 6, 2010). Because it is a fact intensive pursuit that looks to the reasonableness of plaintiffs' delays, it is generally not appropriate for courts to determine issues of laches on a motion to dismiss. *Holman*, 2010 Bankr. LEXIS 1518, at *15-16 (quoting *Tate v. Citimortgage, Inc. (In re Tate),* No. 99-13169, AP 9-1059, 2009 Bankr.

LEXIS 4591, at *7 (Bankr. S.D. Ala. Oct. 29, 2009)) ("Because a court asked to apply laches must determine the reasonableness of - and hence the reasons and excuses for - the plaintiff's delay in filing suit, as well as the resulting prejudice suffered by the defendant, laches generally cannot be decided on a motion for summary judgment let alone motion to dismiss."); *see Kling v. Hallmark Cards, Inc.*, 225 F.3d 1030, 1041 (9th Cir. 2000) ("because a claim of laches depends on a close evaluation of all the particular facts in a case, it is seldom susceptible of resolution by summary judgment") (internal quotation marks omitted); *see also Groucho's Franchise Sys.*, 2015 U.S. Dist. LEXIS 180373, at *6 (declining to apply laches at the motion to dismiss stage); *see also Valencia v. Universal City Studios LLC*, No. 1:14-cv-528, 2014 U.S. Dist. LEXIS 174644, at *12 (N.D. Ga. Dec. 18, 2014) (declining to apply laches at the motion to dismiss stage in a case based on the Lanham Act); *but see Herron v. Herron*, 255 F.2d 589, 593 (5th Cir. 1958) ("under Rule 9(f), … the defenses of limitations or laches may be asserted by motion to dismiss for failure to state a claim -- provided that the complaint shows affirmatively that the claim is barred."). Thus, deciding whether Plaintiff's delay in bringing a claim under 11 U.S.C. § 524 was unreasonable is a fact intensive pursuit and is outside the scope of a motion to dismiss.

Further, BANA argues that prejudice should be presumed if the time that has passed is beyond the analogous statute of limitations and cites *Vega v. The Malula*, 291 F.2d 415, 416 (5th Cir. 1961)[7]. In *Vega* the Fifth Circuit noted that the lower court held an evidentiary hearing on the issue of laches and that this procedure avoided problems that arose from not having a factual record. Specifically, with respect to reliance on the general proposition that prejudice can be presumed if a claim is brought outside the analogous statute of limitations, the court explained that that a "mechanical application of a statute of limitations" was not appropriate because "the equities

---

[7] In *Bonner v. Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981), the Eleventh Circuit Court of Appeals adopted as precedent decisions of the Fifth Circuit from September 30, 1981 and earlier.

of the parties must be considered as well." *Id.* 418. The court concluded that the analogous statute of limitations was relevant but not determinative because "the rule is that 'the delay which will defeat such a suit must in every case depend on the peculiar equitable circumstances of that case.'" *Id.* at 418-419 (citations omitted). Because the Court must make a facts and circumstances determination regarding prejudice to BANA, this prong of the laches analysis is no more susceptible to resolution on a motion to dismiss than that which considers whether Plaintiff's delay was excusable.

For the foregoing reasons, it is

ORDERED that the Motion is GRANTED in part and Plaintiff's claim for declaratory relief against BANA is hereby dismissed. It is further

ORDERED that the Motion is DENIED in part and Plaintiff's claim for damages for violation the discharge injunction against BANA may proceed.

**END OF ORDER**

**Distribution List**

Shirley White-Lett
956 North Saint Mary's Lane
Marietta, GA 30064

Christine S. Kapur
Jarrod S. Mendel
McGuire Woods LLP
1230 Peachtree St., NE, Ste 1200
Atlanta, GA 30309