**IT IS ORDERED as set forth below:**

**Date: November 29, 2021**

_____

**Barbara Ellis-Monro**
**U.S. Bankruptcy Court Judge**

_____

## UNITED STATES BANKRUPTCY COURT
### NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | |
|---|---|
| IN RE:<br><br>Shirley Lett,<br><br>     Debtor. | CASE NO. 10-61451-BEM<br><br>CHAPTER 7 |
| Shirley White-Lett,<br><br>     Plaintiff,<br><br>v.<br><br>The Bank of New York Mellon, Corp., BANK OF AMERICA, N.A., Federal National Mortgage Association a/k/a Fannie Mae, Federal Home Loan Mortgage Corp. a/k/a Freddie Mac, Mortgage Electronic Registration Systems Incorporated (MERS), RRA CP Opportunity Trust 1, Merscorp Holdings, Inc. d/b/a MERS, Shellpoint Mortgage Servicing, and The Bank of New York Mellon,<br><br>     Defendants. | ADVERSARY PROCEEDING NO. 20-6278-BEM |

## ORDER ON BANK OF NEW YORK MELLON'S MOTION TO DISMISS AND MOTION FOR JUDGMENT ON THE PLEADINGS AND PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

This matter is before the Court on Bank of New York Mellon's ("BONYM") Motion to Dismiss Shirley White-Lett's ("Plaintiff") Amended Complaint ("Complaint" or "AC") and Motion for Judgment on the Pleadings ("Motion") [Doc. 102][1]. Plaintiff filed a response ("Response"). [Doc. 103]. BONYM filed a reply. [Doc. 110]. Plaintiff has also filed a Motion for Partial Summary Judgment against BONYM. [Doc. 71]. Plaintiff's and BONYM's Motions are ripe for determination.

BONYM filed a proof of claim in Plaintiff's bankruptcy case asserting a secured claim based on a note (the "Note") and deed to secure debt on Plaintiff's residence[2] (the "Deed"). Plaintiff brought this adversary proceeding to object to BONYM's proof of claim, to avoid its lien, and for a declaration that "BONYM is not entitled to enforce the security deed having failed to establish a complete chain of title and that the note at issue herein is unsecure" and for an injunction to prohibit BONYM from foreclosing Plaintiff's property. [AC ¶ 87, ¶ 114]. Plaintiff is also seeking damages from BONYM for alleged discharge injunction violations by one of BONYM's former servicers.

BONYM moves to dismiss Plaintiff's objection to claim and Plaintiff's claims attacking BONYM's interest in the Note and Deed due to lack of subject matter jurisdiction and the doctrine of *res judicata*. BONYM contends the Court lacks subject matter jurisdiction because Plaintiff lacks standing to object to its proof of claim due to a lack of a pecuniary interest in the distributions that may be made by the chapter 7 Trustee (the "Trustee"). Additionally, BONYM argues that Plaintiff lacks standing to challenge the validity of the Note and Deed. Alternatively,

---

[1] Unless otherwise indicated, docket entries refer to this adversary proceeding, Adv. Pro. 20-6278.
[2] Claim No. 1 in bankruptcy case 10-61451.

2

BONYM argues that even if standing were not an issue, Plaintiff is precluded from relitigating issues related to the Note and Deed as she has raised these same issues in a prior state court action, which was not decided in her favor. Finally, BONYM seeks a judgment on the pleadings on Plaintiff's claim for violation of the discharge injunction for failure to state a claim arguing that her claim is barred by the doctrine of laches. Plaintiff seeks summary judgment on her claims against BONYM for determination of the validity of the lien and for declaratory relief.

For the reasons stated herein, the Court will grant BONYM's motion to dismiss and will dismiss Plaintiff's claims objecting to BONYM's proof of claim, seeking a determination of the validity of BONYM's lien, and for declaratory relief. As a result, the Court will deny Plaintiff's motion for summary judgment as moot. The Court will also deny BONYM's motion for judgment on the pleadings as to the claim for violation of the discharge injunction.

## I. Applicable Legal Standards

### a. Motion to Dismiss for Lack of Subject Matter Jurisdiction

Under Federal Rule of Civil Procedure ("Rule") 12(b)(1), made applicable to adversary proceedings under Federal Rule of Bankruptcy Procedure ("F.R.B.P.") 7012(b), a defendant may move to dismiss a plaintiff's complaint on the grounds that the court lacks subject matter jurisdiction. BONYM challenges Plaintiff's standing to bring certain of her claims. "Because standing is jurisdictional, a dismissal for lack of standing has the same effect as a dismissal for lack of subject matter jurisdiction." *Stalley ex rel. U.S. v. Orlando Reg. Healthcare Sys., Inc*., 524 F.3d 1229, 1232 (11th Cir. 2008) (quotation marks and citation omitted). The party invoking federal court jurisdiction has the burden to establish they have standing with the degree of evidence required for the stage of the litigation. *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2207 (2021). "[S]tanding is an essential and unchanging part of the case-or-controversy

requirement of Article III" of the U.S. Constitution and serves to identify those disputes that can be appropriately resolved in the courts. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130, 2136 (1992). To establish standing, Plaintiff must demonstrate: (1) an injury in fact; (2) a causal connection between the injury and the conduct complained of; and (3) a likelihood that the injury will be redressed by a favorable decision. *Id.*

**b. Motion for Judgment on the Pleadings**

Rule 12(c), made applicable to bankruptcy court proceedings under F.R.B.P. 7012(b), permits parties to move for a judgment on the pleadings after the pleadings are closed. Here, the pleadings are closed between Plaintiff and BONYM because BONYM filed its answer to the Complaint on February 12, 2021. [Doc. 43]. Granting a judgment on the pleadings is appropriate when "there are no material facts in dispute and the moving party is entitled to judgment as a matter of law." *Douglas Asphalt Co. v. Qore, Inc.*, 541 F.3d 1269, 1273 (11th Cir. 2008). Motions for judgment on the pleadings subject claims to the same pleading standards as Rule 12(b)(6) motions to dismiss. *Puissant v. Bank of Am. Home Loan Servicing*, No. 5:12-CV-388(MTT), 2013 U.S. Dist. LEXIS 171396, at *5 (M.D. Ga. Dec. 5, 2013) (citing *Provident Mut. Life Ins. Co. of Philadelphia v. City of Atlanta*, 864 F. Supp. 1274, 1278 (N.D. Ga. 1994)).

Rule 12(b)(6), made applicable to proceedings in bankruptcy court under F.R.B.P. 7012(b), permits courts to dismiss plaintiffs' claims when they fail to state a claim upon which relief can be granted. *Wells Fargo Bank, N.A. v. Farmery (In re Farmery)*, No. 13-71735, AP 13-5450, 2014 Bankr. LEXIS 2865, at *2 (Bankr. N.D. Ga. 2014) (Diehl, J.). To adequately state a claim for relief, plaintiffs must allege facts that, if taken as true, establish a facially plausible claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (citation omitted). Claims are facially plausible if they allow the court to reasonably infer that the defendant is liable. *Id.*

4

Speculative claims about the defendant's conduct or merely reciting the elements of the claim is not sufficient. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 127 S. Ct. 1955, 1965 (2007); *Claros v. Taylor Lee & Assocs. LLC*, No. 1:18-cv-2204, 2018 U.S. Dist. LEXIS 224591, at *4-5 (N.D. Ga. Sep. 18, 2018).

Although a plaintiff's *pro se* status entitles his or her complaint to be reviewed more liberally than an attorney's pleadings, a *pro se* party's pleadings must still satisfy the pleading requirements laid out in Rule 12(b)(6). *Beckwith v. Bellsouth Telecomms., Inc.*, 146 F. App'x 368, 371 (11th Cir. 2005) ("Although we construe them liberally, *pro se* complaints also must comply with the procedural rules that govern pleadings."). The Court may not serve as *de facto* counsel or rewrite deficient pleadings to carry them past the motion to dismiss stage. *See Smith v. Ocwen Fin.*, 488 F. App'x 426, 427 (11th Cir. 2012) (citation omitted).

When reviewing motions for judgment on the pleadings, similar to Rule 12(b)(6) motions, the court must accept the facts plaintiffs allege in their complaints as true and in a light most favorable to them. *Cannon v. City of W. Palm Beach*, 250 F.3d 1299, 1301 (11th Cir. 2001); *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1321-22 (11th Cir. 2012).

### c. *Res Judicata*

"Res judicata, or claim preclusion, bars relitigation of matters that were litigated or could have been litigated in an earlier suit." *Manning v. City of Auburn,* 953 F.2d 1355, 1358 (11th Cir. 1992) (citing *Nevada v. U.S.*, 463 U.S. 110, 130, 103 S. Ct. 2906, 2918 (1983)). Federal courts applying *res judicata* must give effect to applicable law of the court that rendered the prior decision. *Ebah v. St. Paul Travelers,* 459 F. App'x 860, 861 (11th Cir. 2012). Here, the prior decision was made by a Georgia Superior Court, such that the Georgia law of *res judicata* applies. "In Georgia, the doctrine of res judicata prevents the re-litigation of all claims which have already

been adjudicated, or which could have been adjudicated, between identical parties or their privies in identical causes of action." *Starship Enters. of Atlanta, Inc. v. Coweta Cty., Ga.,* 708 F.3d 1243, 1253 (11th Cir. 2013); *Karan, Inc. v. Auto-Owners Ins. Co.*, 280 Ga. 545, 546 (2006) ("Three prerequisites must be satisfied before res judicata applies—(1) identity of the cause of action, (2) identity of the parties or their privies, and (3) previous adjudication on the merits by a court of competent jurisdiction.").

In evaluating whether or not *res judicata* bars a claim based on identity of the causes of action, "Georgia courts look to see whether the claims arise from the same subject matter." *Starship Enters.*, 708 F.3d at 1254; *see also Morrison v. Morrison*, 284 Ga. 112, 116 (2008) ("A cause of action has been defined as being 'the *entire* set of facts which give rise to an enforceable claim.'"), disapproved on other grounds by *Gilliam v. State*, 860 S.E.2d 543 (2001). Additionally, "one must assert all claims for relief concerning the same subject matter in one lawsuit and any claims for relief concerning that same subject matter which are not raised will be res judicata pursuant to O.C.G.A. § 9-12-40."[3] *Starship Enters.*, 708 F.3d at 1254; *Highwood Towers, LLC v. Fayette County, Georgia*, No. 3:11-cv-172-TCB, 2013 WL 12470857 (N.D. Ga. Aug. 1, 2013).

## II.    Alleged Facts

Plaintiff brought the present adversary proceeding against BONYM seeking, (i) damages for alleged discharge injunction violations, (ii) to disallow BONYM's proof of claim, (iii) avoidance of BONYM's purported lien on Plaintiff's residence, (iv) a declaration that "BONYM is not entitled to enforce the security deed having failed to establish a complete chain

---

[3] "A judgment of a court of competent jurisdiction shall be conclusive between the same parties and their privies as to all matters put in issue or which under the rules of law might have been put in issue in the cause wherein the judgment was rendered until the judgment is reversed or set aside." O.C.G.A. § 9-12-40.

of title and that the note at issue herein is unsecured" [AC ¶ 87], and (v) an injunction prohibiting BONYM from foreclosing on the Deed. [AC ¶114].

### a. Allegations Relating to Discharge Injunction Violations

On January 19, 2010, Plaintiff filed for relief under Chapter 7 of the Bankruptcy Code. [Case No. 10-61451 ("Main Case"), Doc. 1]. In her schedules, she listed BAC Home Loans ("Servicing") as a secured creditor. [AC, ¶ 116]. Servicing was servicing Plaintiff's loan on behalf of BONYM and filed a Motion for Relief From Stay in the Main Case. [AC, ¶ 19, 124, 136]. Plaintiff also filed a statement of intention indicating an intent to reaffirm her mortgage debt. [AC, ¶ 117]. At the time of filing Plaintiff was not in default on her mortgage payments. [AC, ¶ 117]. After filing for bankruptcy, Plaintiff notified Servicing of her filing and her intent to reaffirm the loan. [AC, ¶ 118]. Plaintiff alleges that the person with whom she spoke could not confirm whether her loan would be reaffirmed but told her that she must continue to make payments otherwise Servicing would initiate a collection action. [AC, ¶ 118].

A month after filing bankruptcy, Plaintiff received a mortgage statement stating an amount due on her loan and a due date. [AC, ¶ 119]. She made the payment and asked Servicing if there were any updates on the reaffirmation of her loan. [AC, ¶ 119]. The person with whom Plaintiff spoke was not aware of any updates but told her to continue making payments. [AC, ¶ 120]. Plaintiff continued making postpetition monthly payments to Defendant Bank of America, N.A. ("BANA")[4] upon receipt of the monthly loan statements as she was instructed and based

---

[4] Plaintiff makes numerous references to Servicing in connection with her allegations against BANA, and she seems to conflate the two entities. [Compare ¶ 116, 118-120, 124-125 (referencing Servicing) with ¶ 122, 128-135 (referencing BANA) and ¶ 126, 136-137 (referencing BANA and Servicing)]. The AC does not allege any relationship between BANA and Servicing. However, in Adv. Pro. No. 20-6031 Plaintiff alleges that BANA and Servicing merged. [Compare AP No. 20-6031 Doc. 72 at 18 and Doc. 87-9 in which Plaintiff requested the Court take judicial notice of the merger and BANA filed a copy of the certificate of merger]. At a status conference on October 4, 2021, the Court asked whether the parties could stipulate that BANA and Servicing had merged at some point. Counsel for BANA said she would have to look into it. However, based upon BANA's brief BANA has acknowledged that Servicing was merged into BANA at some point. [Doc. 48 at 2 (stating that "BANA (and predecessor entities with which it merged)

upon the language in the statements. [AC, ¶ 122]. Plaintiff remained current on her mortgage payments throughout 2012 and into 2013. [AC, ¶ 123 and Ex. L].

On February 25, 2011, Plaintiff received her discharge. [AC, ¶ 125; Main Case, Doc. 23]. The discharge order was served on Servicing on February 27, 2011. [AC, ¶ 125; Main Case, Doc. 24].

After her discharge, Plaintiff continued receiving monthly mortgage statements from Servicing and had telephone calls with Servicing that convinced her she was going to remain personally liable for the loan. [AC, ¶ 126; Ex. M]. Plaintiff received the November 2012 mortgage statement from Servicing, warning her that her loan was past due and including the following language:

> If we do not hear from you immediately, we will have no alternative but to take appropriate action to protect the interest of the Noteholder in your property. This action may include returning payments that are less than the Total payments due to bring loan current.
>
> **Please give this matter your most urgent attention**. Please send the amount due with the coupon below immediately. Additional amounts may become past due. Bank of America, N.A. will proceed with collection action until your account is brought fully current, and you will be responsible for all costs incurred in this process to the full extent permitted by law.

[AC ¶ 126 and Ex. M (emphasis in exhibit)].

Mortgage statements with similar language followed through March of 2013. [AC, ¶ 127 and Ex. M]. Plaintiff made numerous payments to BANA due to fear of collection action from Servicing/BANA. [AC, ¶ 137]. From January 2010 through March 2013, the payments totaled $147,469.18. [AC, ¶ 137].

---

was . . . a former servicer of Plaintiff's mortgage loan")]. Therefore, the Court will assume the entities merged for purposes of this Order.

Although Plaintiff timely paid all her mortgage payments, Servicing sent her a letter dated December 12, 2012, stating that it had received only $24.55 for the April 2012 payment. [AC, ¶ 128 and Ex. N]. However, BANA received and cashed Plaintiff's check in the amount of $3,951.54 for the April 2012 payment. [AC, ¶ 129 and Ex. O]. BANA and its successor servicers have not explained what happened to the April 2012 payment or why BANA waited eight months to bring the matter to Plaintiff's attention. [AC, ¶ 130]. Plaintiff received a similar letter dated January 15, 2013, for the May 2012 mortgage payment. [AC, ¶ 132]. Plaintiff timely made the May 2012 mortgage payment by check in the amount of $3,953.34, the check was cashed by BANA, but the January 15 letter stated that BANA had only received $33.01. [AC, ¶ 132 and Ex. Q, R]. At this point, Plaintiff began to perceive that BANA was attempting to create the existence of a default so it could initiate a foreclosure. [AC, ¶ 134]. Plaintiff thereafter received a letter dated May 1, 2013, with a Notice of Sale Under Power. [AC, ¶ 134 and Ex. T].

Plaintiff suffered substantial emotional distress upon learning that she was never required to make the foregoing payments. [AC, ¶ 138a[5]]. Plaintiff further suffered emotional distress in relation to being told that she was in default and facing foreclosure based on the default. [AC, ¶ 138a]. Plaintiff suffered worry and anger in her belief that her money was being systematically stolen from her. [AC, ¶ 138b].

Plaintiff alleges further that Servicing, when violating the discharge injunction and causing harm, was acting on behalf of BONYM. [AC, ¶ 136].

**b. Allegations Relating to the Note and Deed**

Plaintiff's Main Case was originally categorized as a no-asset case. [AC ¶ 2]. The Trustee has since been investigating to determine the potential availability of assets for

---

[5] The Complaint contains two consecutive paragraphs numbered 138, which the Court herein will refer to as paragraphs 138a and 138b.

distribution. [*Id*.]. Following his investigation, the Trustee has since filed a document noting that there appear to be funds available for distribution in the Chapter 7 Case. [*Id*.].

A deadline for filing proofs of claim in the Chapter 7 Case was set for January 13, 2021. [AC ¶ 4]. On November 17, 2020, a proof of claim (the "BONYM Claim") was filed on behalf of a purported secured creditor, "THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWALT, INC. ALTERNATIVE LOAN TRUST 2005-27, MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2005-27" in the amount of $886,240.81. [AC ¶ 5]. The BONYM Claim states that it is secured by a lien on real property located at 456 North Saint Marys Lane, Marietta, GA 30064 (the "Property"). [Main case, Claim No. 1]. A copy of a Note is attached to the BONYM Claim. [AC ¶ 10]. The BONYM Claim also includes a copy of the Deed and an "Assignment of Security Deed" from Mortgage Electronic Registrations Systems Incorporated ("MERS"), as nominee for Aegis Wholesale Corporation ("AWC"), to BONYM dated April 1, 2013 and recorded in Cobb County, Georgia on April 8, 2013 (the "2013 Assignment"). [AC Ex. 1].

Plaintiff has maintained a copy of the Note. [AC ¶ 61 & Ex. H]. Plaintiff alleges that the signature on her copy is easily distinguishable from the signature on the copy of the Note attached to the BONYM Claim. [*Id*.]. BONYM is not in possession of the original Note executed by Plaintiff. [*Id*.; AC ¶ 37].

AWC filed for Chapter 11 bankruptcy in 2007 and was subsequently liquidated. [AC ¶ 58]. The 2013 Assignment is dated April 1, 2013. [AC ¶ 57]. At no point in AWC's bankruptcy did MERS seek stay relief or other permission to purchase, sell, transfer or manage any interest in Plaintiff's loan or property as an asset of the AWC estate, nor is there any record authorizing MERS or anyone else to act as an agent for AWC or its bankruptcy estate. [AC ¶ 59].

10

And there is no record that AWC transferred or assigned the Note to BONYM (or any other entity) prior to the filing of the AWC bankruptcy and the order confirming the liquidation plan in that case. [AC ¶ 60].

Servicing filed its motion for stay relief in the Main Case on October 27, 2010. [Main Case, Doc. 14]. Servicing filed the motion for stay relief as Servicing Agent for The Bank of New York Mellon FKA The Bank of New York as Trustee for the Certificateholders CWALT, Inc. Alternative Loan Trust 2005-27 Mortgage Pass-Through Certificates Series 2005-27, such that BONYM was asserting an interest in the Note and Deed that predated both Plaintiff's petition date and the 2013 Assignment. [Main Case, Doc. 14; AC ¶ 84, 85]. There is no recorded assignment of the Deed to BONYM prior to 2013. [AC ¶ 85, 86].

Plaintiff also alleges that the Note that Servicing presented with its motion for stay relief in 2010 was forged [AC ¶ 19]. This copy of the Note has shadow images of a hole punch at the top of each page of the copy. No allonge is included with the 2010 Note copy. [AC ¶ 20]. The 2010 Note copy bears no endorsements. [*Id.*]. The 2010 Note copy contained a "Loan Number" at the top of the first page and certain following pages. [AC ¶ 22]. The "Loan Number" had been redacted by blacking it out. [AC ¶ 22]. On the top right of at least one page, there appeared the notation "MIN", an abbreviation for MERS Identification Number, indicating the registration number used by MERS, and the number "1000530000750188". [*Id.*]. The current version of the Note bears no loan number or MIN. [*Id.*]. There is no black redaction bar, instead, the numbers are completely absent. [*Id.*].

Counsel for BONYM purports to be in possession of the loan documents and is keeping them in a safe for litigation purposes. [AC ¶ 24]. Counsel would not allow Plaintiff to inspect the original documents. [AC ¶ 24].

If anyone rightfully owns the Note and Deed, it would be Fannie Mae or Freddie Mac. [AC ¶ 28]. In or around August 2014, BANA as successor to Countrywide Home Loans, entered into a settlement agreement with the Department of Justice to resolve claims regarding the sale by Countrywide to Fannie Mae and Freddie Mac of certain mortgage-backed securitizations. [AC ¶ 29]. By executing the settlement agreement, BANA acknowledged that Countrywide sold the loans contained in the CWALT, INC. ALTERNATIVE LOAN TRUST 2005-27, MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2005-27 to Fannie Mae or Freddie Mac. [AC ¶ 33 ¶ 34]. Countrywide may have assigned the Note and Deed without any record of having received it from the originator AWC. [AC ¶ 81]. There is certainly no record connecting Countrywide to a transfer of the deed from AWC despite the fact that Countywide entities created the subject Trust. [*Id.*]. The Trust purportedly containing Plaintiff's loan, CWALT 2005-27, was among the trusts included in the settlement agreement. [AC ¶ 35]. BONYM, as Trustee for the subject CWALT 2005-27 Trust, was not the owner of the loans deposited in that Trust. [AC ¶ 45]. The Note copy attached to the BONYM Claim bears no evidence of any special endorsement to BONYM by any entity. [AC ¶ 46]. Countrywide/BANA did not transfer possession of Plaintiff's original loan Note and Deed to BONYM. [AC ¶ 35]. Furthermore, there were no documents of record in Cobb County other than the original Deed to AWC when Plaintiff's bankruptcy case was filed in 2010. [AC ¶ 106].

If the BONYM Claim were invalidated and no distribution to BONYM permitted, this would leave some portion of the funds, if any, recovered by Trustee for distribution to Plaintiff. [AC ¶ 6]. Plaintiff alleges, upon information and belief, that there are no other creditors who could file a valid and allowable claim against the bankruptcy estate that would encumber the funds to such degree that none remained for distribution to her. [*Id.*]

### c. Attachments to the Complaint

Plaintiff also attached a variety of documents to the Complaint including the following:

Exhibit A: copy of the BONYM Claim;

Exhibit B: copy of letter from Shellpoint Mortgage Servicing dated June 7, 2017;

Exhibit C: copy of Declaration of Chandler Thompson Supporting BONYM and Shellpoint's Motion for Summary Judgment filed in White-Lett v. The Bank of New York Mellon et al, Case No. 19-1-723-52 in the Superior Court of Cobb County;

Exhibit D: copy of email exchange between Plaintiff and Chandler Thompson in September 2020 regarding the original Note;

Exhibit E: copies of documents filed in Paulding v. Bank of America, N.A., et al, Case No. 17-11340 (D. Mass);

Exhibit F: copy of portion of the settlement agreement in Paulding v. Bank of America, N.A., et al, Case No. 17-11340 (D. Mass);

Exhibit G: Transcript of Emergency Motion for T.R.O Proceedings in White-Lett v. The Bank of New York Mellon et al, Case No. Case No. 19-1-723-52 in the Superior Court of Cobb County;

Exhibit H: copy of the Note;

Exhibit I: order granting motion to dismiss in Lett v. Bank of America, NA et al, Case No. 13-1-4212-34 in the Superior Court of Cobb County;

Exhibit J: copy of a deed to secure debt;

Exhibit K: copy of an assignment of security deed;

Exhibit L: list of payments Plaintiff made to BANA with date, amount, and check number and copies of the checks;

Exhibit M: copies of mortgage statements from Servicing;

Exhibit N: copy of letter from Servicing dated December 4, 2012 regarding April 2012 payment;

Exhibit O: copy of check by Plaintiff to BANA dated April 12, 2012 in the amount of $3,951.34;

Exhibit P: copy of check from BANA to Plaintiff dated December 4, 2012 in the amount of $24.55;

Exhibit Q: copy of check by Plaintiff to BANA dated May 15, 2012 in the amount of $3,951.34;

Exhibit R: copy of check from BANA to Plaintiff dated January 15, 2021 in the amount of $33.01;

Exhibit S: copy of letter from Servicing dated January 15, 2013 regarding May 2012 payment; and

Exhibit T: copy of letter from Shuping, Morse & Ross, LLP dated May 1, 2013 advising Plaintiff that foreclosure proceedings are being instituted.

### III.    Discussion

BONYM challenges Plaintiff's standing to object to its proof of claim and to obtain declaratory relief and avoidance of its lien. The Court will address Plaintiff's standing to object to the BONYM Claim and then address Plaintiff's standing in this proceeding to obtain a declaratory judgment, an injunction and avoidance under 11 U.S.C. § 544. The Court concludes that Plaintiff lacks a pecuniary interest in the distributions, if any, from the bankruptcy estate and therefore lacks

standing to object to the BONYM Claim. Plaintiff also lacks standing to obtain the declaratory and injunctive relief she seeks as well as standing to avoid BONYM's lien. Finally, even if Plaintiff did have standing to pursue an objection to the BONYM Claim, seek injunctive and declaratory relief, and avoid BONYM's lien, she would be precluded from doing so based on *res judicata*, as she has brought the same claims against BONYM in two prior actions, one in Cobb County Superior Court, *infra* pg. 23, and one in the District Court for the Northern District of Georgia, *infra* n. 11. With respect to Plaintiff's claim that BONYM through its servicer, BANA, violated the discharge injunction of § 524(a), the Court concludes that Plaintiff has stated a claim and will deny the motion for judgment on the pleadings as to that claim.

### a. Standing to Challenge Proof of Claim

Plaintiff has objected to the BONYM Claim on the grounds that the 2013 Assignment is invalid and BONYM does not have an enforceable interest in the Note or Deed. However, before addressing Plaintiff's ability to challenge the 2013 Assignment to BONYM Plaintiff must first establish that she has standing to object to the BONYM Claim. *See In re Mohr*, 538 B.R. 882, 885 (Bankr. S.D. Ga. 2015); *In re Matthews*, No. 10-96519-MGD, 2014 WL 1277874, *3 (Bankr. N.D. Ga. March 11, 2014) (Diehl, J.). In response to BONYM's argument that Plaintiff lacks standing to object to its proof of claim, Plaintiff argues that in the context of an objection to claim, she is in a defensive posture, such that she has the ability to challenge the assignment of the Deed to BONYM by MERS.

Any person or entity may file a proof of claim in a bankruptcy case. *In re McKeever*, 588 B.R. 649, 653 (Bankr. N.D. Ga. 2018) (Hagenau, J.) (citing 11 U.S.C. § 501). Claimants who meet F.R.B.P. 3001's filing requirements present *prima facie* evidence of the claim's validity and amount. *Id*. (citing Fed. R. Bankr. P. 3001(f)). Only parties in interest can object to claims. *Id*.

(citing 11 U.S.C. § 502(a)). Unless the court sustains an objection to such claims, they are deemed "allowed". *Id*. (citing 11 U.S.C. § 502(a)).

In the Chapter 7 context, the right to review and object to proofs of claim is typically reserved for the Trustee. *Id*. (citation omitted). Debtors often lack Article III standing to make such objections because they usually do not have a pecuniary interest in the distribution of estate assets. *Id*. (citing *Kieffer v. Riske (In re Kieffer-Mickes Inc.)*, 226 B.R. 204, 208-09 (B.A.P. 8th Cir. 1998)); *Caserta v. Tobin*, 175 B.R. 773, 775 (S.D. Fla. 1994) (citations omitted); *Baker v. Iles (In re Iles)*, No. 15-11786-WHD, 2017 Bankr. LEXIS 4360, at *9 (Bankr. N.D. Ga. Dec. 21, 2017) (Drake, J.). In other words, debtors generally cannot establish the first element of standing—an injury in fact.

Objections to claim usually only affect the amount each creditor will receive and not the debtor's rights. *In re McKeever*, 588 B.R. at 653. But if there is a reasonable possibility that a successful claim objection would result in a surplus returned to the debtor, the debtor may have a sufficient pecuniary interest to establish standing. *Id*. (citation omitted); *Caserta*, 175 B.R. at 775 (recognizing an exception to the general rule in a surplus case). At a minimum, for the debtor to have standing, the estate must be solvent. *See Baker*, 2017 Bankr. LEXIS 4360, at *9 ("A debtor suffers no injury, unless the estate is solvent and the excess will eventually go to the debtor.").

Although the Trustee is investigating a potential asset in the form of proceeds from "Debtor's alleged sale of United Credit Systems, Inc. and a breach of contract action related to the sale…. The claim issue needs to be resolved for continued action by the estate." [Main Case Doc. 89]. This statement is consistent with the Trustee's counsel's statements at a status conference held on March 4, 2021, during which the Trustee sought and obtained the Court's permission to await

the resolutions of Plaintiff's objection to the BONYM Claim and the proof of claim filed by RRA

CP Opportunity Trust 1 ("RRA"). Plaintiff has objected to the two claims filed in the Main Case.

If both claims are disallowed, leaving no claims to be paid from estate assets, the Trustee will have

no reason to pursue potential assets and has stated that he will not do so. Nevertheless, Plaintiff

alleges that there is a reasonable possibility that she has a pecuniary interest in the outcome of this

dispute because there is a possibility that the Trustee will recover additional assets for distribution.

Despite these allegations in the AC, Plaintiff maintains that there are no

unadministered assets to distribute. [Main Case, Docs. 43, 57]. In the Main Case, Plaintiff stated,

"[T]here is no room or reason to doubt that no unadministered assets of Debtor in fact exist[.]"

[Main Case, Doc. 43]. However, in the AC, Plaintiff attempts to create a dispute about whether

the Trustee can recover additional assets by surmising that if and when the estate recovers proceeds

from the settlement of the above-mentioned sale of stock and breach of contract claim, there are

no other creditors who would be entitled to distribution such that she would have a pecuniary

interest in a hypothetical recovery. [AC ¶ 6]. Plaintiff contends this hypothetical recovery supports

a determination that she has "a reasonable possibility of a pecuniary interest sufficient to authorize

her to file the claims and objections herein." [AC ¶ 7].  However, if there are no creditors' claims

to pay, the Trustee will not seek to recover the alleged proceeds as he would be recovering them

solely to pay administrative expenses and then to repay Plaintiff who is the subject of the potential

recovery. [Main Case, Doc. 76].

The estate is currently insolvent. Only two parties have filed proofs of claim,

BONYM and RRA. The BONYM Claim asserts a claim secured by the Property in the amount of

$886,240.81. RRA filed a proof of claim asserting a claim secured by the Property in the amount

of $83,226.17. The Complaint also seeks a determination that RRA's lien is invalid, but that claim

has been dismissed. [Docs. 67, 142]. Plaintiff has filed a separate adversary proceeding against RRA in which she objects to its proof of claim and seeks to invalidate its lien. [AP 21-5032].

The Trustee has stated his intention to pursue the estate's cause of action against Plaintiff only if there is an unsecured claim or claims against the estate. Thus, Plaintiff can only show a pecuniary interest if the Trustee were to recover funds sufficient to pay the BONYM Claim if it were to be allowed as an unsecured claim as Plaintiff claims it is [AC ¶ 87] or if the BONYM Claim is disallowed and the Trustee recovers funds in excess of RRA's claim in the amount of $83,226.17 plus administrative expenses of the estate. The Trustee estimates the value of the estate's claim against Plaintiff at $80,000. [Main Case, Doc. 89]. Thus, even if Plaintiff is successful in disallowing the BONYM Claim, the estimated recovery to the estate is less than the other claim against the estate. Furthermore, based upon the litigation in this proceeding, any claim by the Trustee will be expensive to pursue such that there is not a reasonable possibility of a surplus to Plaintiff. [*See* Main Case, Doc. 76]. Alternatively, if Plaintiff is successful in disallowing each of BONYM's and RRA's claims, the Trustee will not pursue recovery of potential estate assets, so there will be no funds to potentially distribute to Plaintiff. In either case, there is not a reasonable possibility of a surplus in the estate and Plaintiff does not have a pecuniary interest in the estate. Therefore, Plaintiff lacks standing to object to the BONYM Claim.

**b. Declaratory Relief and Lien Avoidance Claim**

BONYM also challenges Plaintiff's standing to avoid its asserted lien under § 544 of the Bankruptcy Code. Section 544 authorizes a trustee to avoid a lien that could be avoided by a bona fide purchaser of real property. 11 U.S.C. § 544(a)(3). Plaintiff argues that she stands in the Trustee's shoes as a bona fide purchaser under 11 U.S.C. § 522(h).[6] Plaintiff further argues that

---

[6] "The debtor may avoid a transfer of property of the debtor … to the extent that the debtor could have exempted such property under subsection (g)(1) of this section if the trustee had avoided such transfer, if-- (1) such transfer is

because she raises the avoidance claim in the context of an objection to a proof of claim she stands in a defensive posture so that she can challenge the 2013 Assignment of the Deed to BONYM. The Court has determined that Plaintiff lacks standing to object to the BONYM Claim, regardless of the basis of her objection. Thus, her avoidance claim can only survive if the Court has jurisdiction to decide the avoidance claim outside of the context of the claim objection. The Court notes that the AC seeks a declaratory judgment and an injunction based upon Plaintiff's alleged ability to avoid the BONYM lien. Thus, the Court concludes that Plaintiff seeks to raise her § 544 claim independently of her claim objection which would only affect whether the claimant would receive distribution as a secured or unsecured creditor and would not result in avoidance of a lien. *See Dewsnup v. Timm*, 502 U.S. 410, 417, 112 S. Ct. 773, 778 (1992). As a result, the Court now turns to the question whether Plaintiff has standing to bring claims under § 544, for a declaratory judgment and for an injunction.

Pursuant to 28 U.S.C. § 1334(b) "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." This provision creates jurisdiction in three categories of proceedings: those that "arise under title 11," those that "arise in cases under title 11," and those "related to cases under title 11." The jurisdiction of the bankruptcy court is derived from and dependent upon these three bases. *Celotex Corp. v. Edwards*, 514 U.S. 300, 307, 115 S. Ct. 1493, 1498 (1995).

Matters that "arise under" title 11 are matters which invoke a substantive right created by the Bankruptcy Code. *Toledo v. Sanchez (In re Toledo)*, 170 F.3d 1340, 1345 (11th Cir. 1999). Matters that "arise in a case under" title 11 generally are administrative type matters or

---

avoidable by the trustee under section 544 … of this title …; and (2) the trustee does not attempt to avoid such transfer." 11 U.S.C. § 522(h).

"matters that could arise only in bankruptcy." *Id.* (citing *Wood v. Wood (In re Wood)*, 825 F.2d 90, 97 (5th Cir. 1987)). Matters that are "related to cases under" title 11 are matters in which

> the outcome of the proceeding could conceivably have an effect on the estate being administered in bankruptcy. The proceeding need not necessarily be against the debtor or the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate.

*Id.* (quoting *Miller v. Kemira, Inc. (In re Lemco Gypsum, Inc.)*, 910 F.2d 784, 788 (11th Cir. 1990)).

Plaintiff seeks relief under §§ 522 and 544, which are matters that arise under Title 11. Therefore, the Court would appear to have jurisdiction. However, Plaintiff's lack of standing remains as an obstacle to jurisdiction. Plaintiff seeks an order of the Court declaring that the 2013 Assignment to BONYM of the Deed was not valid because the originating lender filed its own bankruptcy case in 2007. As the Court has previously explained, the AWC bankruptcy does not affect the validity of any assignment. [Doc. 67 at 12-14].

Additionally, § 544 gives the trustee the power of a bona fide purchaser of real property and allows the trustee to avoid any interests in the property that could be avoided by a bona fide purchaser without notice of such interests. Under Georgia law, to be a bona fide purchaser without notice, "a party must have neither actual nor constructive notice of the matter at issue. A purchaser of land is charged with constructive notice of the contents of a recorded instrument within its chain of title." *In re Adams*, 583 B.R. 541, 553 (Bankr. N.D. Ga. 2018) (Ellis-Monro, J.) (citation and quotation marks omitted). Plaintiff has alleged that at the time her bankruptcy case was filed, the only recorded interest in her Property was the original Deed to AWC. No further interests were recorded until the 2013 Assignment, which occurred after her case

was closed. Nevertheless, BONYM, as Trustee for the trust the purportedly holds the Note and Deed, asserted a secured interest in the Property as early as 2010, when Servicing filed a motion for stay relief on BONYM's behalf. The Court notes that in the motion for stay relief as in the BONYM Claim, BONYM is expressly identified as a trustee, and not the owner of the Note and Deed. Even if BONYM had an unrecorded interest in the Property on the petition date that was avoidable under § 544, any such avoidance would not affect the 2013 Assignment, which was executed and recorded post-petition and is therefore not subject to avoidance under § 544(a)(3). There are no applicable provisions of the Bankruptcy Code to bring Plaintiff's claims against BONYM into the bankruptcy estate and the Trustee lacks standing to bring an avoidance claim on these facts[7].

Given that the Trustee does not have standing to challenge the 2013 Assignment to BONYM under § 544, neither does Plaintiff. Because the assignment is not avoidable by the Trustee, it is not avoidable by Plaintiff standing in his shoes. Plaintiff's claims for declaratory and injunctive relief are reliant on her ability to avoid BONYM's lien, thus these claims fail because there is no viable § 544 avoidance claim. Any other challenge to the lien against property that is no longer property of the estate will not affect the estate and does not arise under Title 11.

---

[7] In addition to proving constitutional standing, "the Supreme Court has held that prudential requirements pose additional limitations on standing." *Wolff v. Cash 4 Titles*, 351 F.3d 1348, 1353 (11th Cir. 2003). One of those prudential limitations is the rule that a litigant "generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *U.S. v. Blake*, 868 F.3d 960, 969-70 (11th Cir. 2017). Previously if a plaintiff did not fall within the zone of interests protected by the statute it was said that the plaintiff lacked prudential standing; under more recent parlance, the question is "whether the plaintiffs fall within the class of plaintiffs whom Congress has authorized to sue." *Kurapati v. U. S. Bureau of Citizenship & Immigr. Servs*., 775 F.3d 1255, 1260 (11th Cir. 2016). Here, Plaintiff does not fall within the zone of interests protected by the Bankruptcy Code because the claim is not prepetition and is not property of the estate. Thus, while not jurisdictional, there remains a prudential limitation on the Trustee's and hence, Plaintiff's standing to assert the postpetition avoidance claim.

Even if this were not the case, as the Court has previously held with respect to RRA, Plaintiff lacks standing to challenge the assignment of her loan documents. [Doc. 67 at 15-18]. That is, even if Plaintiff did not need to establish Article III standing or otherwise had standing to challenge the proof of claim, she lacks the power under Georgia law to challenge the 2013 Assignment that forms the basis for the BONYM claim.[8]

Under Georgia law, borrowers typically lack the power to challenge the assignment of their security deeds. *Timbes v. Deutche Bank Nat'l Tr. Co*., 708 F. App'x 971, 974 (11th Cir. 2017) (citing *Ames v. JP Morgan Chase Bank, N.A.*, 298 Ga. 732, 783 S.E.2d 614, 620 (2016) and *Jurden v. HSBC Mortg. Corp.*, 330 Ga. App. 179, 765 S.E.2d 440, 442 (2014)). There are two notable exceptions to this principle. *In re Morgan*, 600 B.R. 725, 729 (Bankr. N.D. Ga. 2019) (Ritchey Craig, J.). One, borrowers may challenge an assignment if it breached a contractual or statutory duty owed to them. *Id.* (citing O.C.G.A. § 44-14-64(c)). Two, borrowers may challenge an assignment if they were a party to the assignment or otherwise a third-party beneficiary. *Id.* (citing O.C.G.A. § 9-2-20); *Jurden v. HSBC Mortg. Corp.*, 330 Ga. App. 179, 180, 765 S.E.2d 440, 442 (2014). Here, Plaintiff has not alleged any facts that would establish either exception. She has not pointed to any contractual or statutory duty owed to her that the 2013 Assignment violated, nor has she shown that she is a party to the 2013 Assignment.

Plaintiff argues that she does not need to prove standing because by objecting to the proof of claim, she is acting as a defendant rather than a plaintiff.[9] However, she does not have

---

[8] *See You v. JP Morgan Chase Bank, N.A.*, 293 Ga. 67, 74; 743 S.E.2d 428, 433 (2013) ("Under current Georgia law, the holder of a deed to secure debt is authorized to exercise the power of sale in accordance with the terms of the deed even if it does not also hold the note or otherwise have any beneficial interest in the debt obligation underlying the deed.").

[9] *See Miller v. New Penn Fin., LLC (In re Miller)*, AP No. 18-5198-WLH, 2019 Bankr. LEXIS 726, at *9 (Bankr. N.D. Ga. Mar. 8, 2019) (Hagenau, J.) ("The filing of a proof of claim itself, from a procedural standpoint, is tantamount to the filing of a complaint in a civil action…An objection to the claim is considered to be the answer to the claim.") (internal citation omitted).

standing to object to the BONYM Claim and must establish standing to challenge the 2013 Assignment under § 544. *Ames v. JP Morgan Chase Bank, N.A.*, 298 Ga. 732, 740, 783 S.E.2d 614, 621 (2016). The right to challenge an assignment is reserved for the assignor. *Id.* In other words, to the extent her claim objection is based on an invalid assignment, Plaintiff would have to show that MERS contests the validity of the assignment. Plaintiff cannot manufacture standing by asserting a claim that MERS, the party with standing, has not asserted. *Id.*

Because Plaintiff lacks standing to challenge the BONYM Claim and the 2013 Assignment, Plaintiff's objection to the BONYM Claim, Plaintiff's claim seeking a declaration that BONYM cannot enforce the security deed, and Plaintiff's claim seeking to avoid BONYM's lien will be dismissed.

### c. Application of *Res Judicata*

BONYM argues in its Motion that regardless of additional analysis and findings by the Court, Plaintiff is barred from relitigating issues related to the assignment of the Note and Deed due to *res judicata*. BONYM points to a prior suit filed by Plaintiff against BONYM, Civil Action No. 13-1-4212-34, Shirley D. Lett v. Bank of America, N.A., Mortgage Electronic Registration System Incorporated, The Bank of New York Mellon, fka The Bank of New York, As Trustee for the Certificateholders of CWALT, Inc., Alternative Loan Trust Certificates Series 2005-27 Mortgage Pass-Through Certificates Series 2005-27, *et al.* in the Superior Court of Cobb County in 2013 (the "Cobb County Action"). [Doc. 9, Ex. G, I; Doc. 102, Ex. A]. In the Cobb County Action, Plaintiff asserted claims for breach of contract, wrongful foreclosure, negligence, fraud, civil conspiracy, violation of the Georgia Residential Mortgage Act, violation of the Georgia Fair Business Practices Act, quiet title, slander of title, fraud/civil conspiracy, and declaratory

judgment. [Doc. 9, Ex. I at 3-4]. The Superior Court dismissed all claims.[10] [Doc. 9, Ex. A]. The dismissal order was affirmed by the Court of Appeals of Georgia on November 10, 2015. [Doc. 102, Ex. B].

As previously explained, the doctrine of *res judicata* bars the relitigation of issues and claims for which there is (1) a final judgment on the merits from a court of competent jurisdiction; (2) with identical parties in both suits; and (3) for the same cause of action. Taken out of turn, the second element is satisfied as there is no dispute the Parties in the instant case are the same parties from the Cobb County Action. The first element is satisfied as well, as the Cobb County Action ended in a final judgment that was appealed and affirmed on appeal. [Doc. 102, Ex. B]. Thus, elements 1 and 2 necessary for application of *res judicata* are satisfied. The only element that warrants a more detailed discussion is the last element, the identity of the claims in the actions, which is determined based on whether the claims arise from the same subject matter.

In the AC, Plaintiff pleads claims objecting to the BONYM Claim, seeking a determination of the validity of BONYM's lien, and for declaratory relief. The crux of each of these claims is that BONYM does not hold the Note and Deed to the Property, because the assignment of these documents to BONYM was invalid, such that there is no valid chain of title and BONYM does not have the right to enforce its lien on the Property. Specifically, Plaintiff alleges that the BONYM Claim includes a copy of the Deed and an "Assignment of Security Deed" from MERS as nominee for AWC to BONYM [AC Ex. 1], that the copy of the Note in her possession contains her true signature which is easily distinguishable from the signature on the copy of the Note attached to the BONYM Claim, and that this demonstrates BONYM is not in

---

[10] BONYM provided a copy of Plaintiff's Complaint and Demand for Jury Trial in the Cobb County Action. [Doc. 102 Ex. A]. However, the Superior Court's Order Granting Defendants' Motion to Dismiss states that it is a ruling on the claims in the Second Amended Complaint. [Doc. 9 Ex. I]. The Second Amended Complaint is not part of the record in this proceeding.

possession of the original Note executed by Plaintiff and BONYM's version is forged. [*Id*.; AC ¶ 19, 37, 61 & Ex. H].

Plaintiff extensively outlines how AWC did not seek authority in its bankruptcy case to purchase, sell, transfer or manage any interest in Plaintiff's loan or property as an asset of the AWC estate, nor is there any record authorizing MERS or anyone else to act as an agent for AWC or its bankruptcy estate. [AC ¶ 59]. Because there is no record that AWC transferred or assigned the Note to BONYM prior to the filing of the AWC bankruptcy and the entry of the order confirming the liquidation plan in that case, Plaintiff argues that the 2013 Assignment is invalid. [AC ¶ 60]. Plaintiff argues that, if anyone rightfully owns the Note and Deed, it would be Fannie Mae or Freddie Mac. [AC ¶ 28-29, 33-35, 45-46, 81]. Specifically, as to BONYM, Plaintiff asserts that the Note copy attached to the BONYM Claim bears no evidence of any special endorsement to BONYM by any entity, supporting her contention that Countrywide/BANA did not transfer possession of Plaintiff's original loan Note and Deed to BONYM. [AC ¶ 35, 46]. Plaintiff also argues that BONYM sought to enforce the Deed in 2010 via the Motion for Relief from Stay three years prior to assignment of the Deed to BONYM.

In the Cobb County Action, Plaintiff brought claims for breach of contract, wrongful foreclosure, and quiet title, among other things. [Doc. 9 Ex. I at 3-4]. In its dismissal order, the Superior Court set forth Plaintiff's allegations in the second amended complaint, including the following:

> On April 1, 2013, the Security Deed was assigned by MERS, as nominee for Aegis, to [BONYM]. Lett alleges that this assignment was invalid because: (1) Aegis never authorized MERS to execute an Assignment of the Security Deed; (2) MERS could not assign the Security Deed in 2013 because Aegis had filed for bankruptcy in 2007 and had allowed its contract with MERS to lapse; (3) there is no endorsement or assignment of the underlying promissory note which conforms to the requirements of the Pooling and Servicing Agreement, creating a break in the chain

25

of title; and (4) there is a second break in the chain of title because [BONYM] purported to own the loan three years before the April 2013 assignment.

[Doc. 9, Ex. I at 2-3]. This recitation shows that in this proceeding and in the Cobb County Action, Plaintiff sought the same relief—invalidation of BONYM's interest in the Note and Deed—based on the same nucleus of operative facts.

Ultimately, the Cobb County Court entered an order on July 24, 2014, dismissing all of Plaintiff's claims. Plaintiff attached this order (the "Cobb County Order") to the AC. [Doc. 9, Ex. I]. In the Cobb County Order, the court found that her attempt to challenge the validity of the subject debt was barred under *res judicata* because she had obtained a chapter 7 discharge. [Doc. 9, Ex. I at 5]. The Cobb County Order expressly stated that Plaintiff "lacked standing to challenge assignments of the [Deed]" under applicable Georgia law, citing *You v. JP Morgan Chase Bank*, 293 Ga. 67 (2013), and *Montgomery v. Bank of America*, 321 Ga. App. 343 (2013), for the proposition that "the party that holds the Security Deed may foreclose regardless of whether that party also holds the promissory note [and] a borrower does not have standing to challenge assignments of a security deed." [*Id.* at 5-6].

Plaintiff argues that she attacked the validity of BONYM's lien through a quiet title claim that was not litigated and does not have *res judicata* effect because it was dismissed due to her failure to tender the amount due under the Note. However, the failure to tender funds was an additional basis for dismissal. The Superior Court also ruled that "[Plaintiff's] claim to quiet title fails because the Property is subject to a Security Deed held by a Trustee and [Plaintiff] cannot establish superior title to Trustee." [Doc. 9, Ex. I at 6]. Thus, two courts of competent jurisdiction, the Cobb County Superior Court and the Georgia Court of Appeals, have already ruled that Plaintiff cannot challenge the assignment to BONYM based on Georgia law and *res judicata*. Under *res judicata*, she cannot attempt to do so again in this proceeding. It is irrelevant that she

26

has creatively re-titled the claims for purposes of her forum; she pleads the same facts arising out of the same situation and seeks the same relief: to invalidate an assignment she has no legal standing to challenge.

Plaintiff contends that she did not assert any "claims" in this proceeding but instead BONYM asserted the claim and she is objecting to it. Therefore, Plaintiff argues, BONYM is really asserting issue preclusion (collateral estoppel) rather than claim preclusion (*res judicata*).  Even if Plaintiff is correct about the applicable preclusion doctrine, collateral estoppel would likewise bar her from challenging BONYM's interest in the Note and Deed.

The doctrine of collateral estoppel can be used to bar the relitigation of *issues* previously determined in a state court, separate and apart from claims. *Grogan v. Garner*, 498 U.S. 279, 284, 111 S. Ct. 654, 658 (1991). The court applies the collateral estoppel law of the state in which the prior judgment was rendered. *Lusk v. Williams (In re Williams)*, 282 B.R. 267, 271-72 (Bankr. N.D. Ga. 2002). Georgia law requires identity of parties and an issue that was actually litigated and decided on the merits for issue preclusion to take effect. *Karan Inc. v. Auto-Owners Ins. Co.*, 629 S.E.2d 260, 262-63 (Ga. 2006). As stated, the parties here are the same, the relief requested is the same, and the matter was fully litigated and upheld on appeal.

Plaintiff argues in her Response that the issue now is endorsements occurring after the Cobb County Action was adjudicated are valid and enforceable, and whether through a different theory MERS had authority to execute any assignments. However, the endorsements of the Note are irrelevant to the assignment of the Deed and do not alter the issue previously decided– Plaintiff is still challenging the same 2013 Assignment, which a Georgia court has ruled she cannot do. The underlying issue is identical, such that collateral estoppel would bar Plaintiff from seeking to challenge the validity of the assignment based upon additional endorsements of the Note brought

as an objection to claim, and any request she makes under bankruptcy law to avoid the lien.[11] Thus, whether relying on doctrines of issue preclusion or claim preclusion, Plaintiff cannot now bring her current claims objecting to the BONYM Claim, seeking to avoid BONYM's lien under § 544, seeking a determination of the validity of BONYM's lien, and for declaratory relief. Therefore, preclusion provides an additional basis for dismissal.

### d.   Discharge Injunction Violations

Plaintiff seeks damages from BONYM for alleged violations of the discharge injunction of 11 U.S.C. § 524(a). BONYM moves for judgment on the pleadings for this claim and further argues that Plaintiff waited too long to bring the claim such that it should be barred by the doctrine of laches and dismissed.

### 1.   Plaintiff Stated a Claim Upon Which Relief Can Be Granted

The central purpose of the bankruptcy process is to provide honest but unfortunate debtors with a "fresh start". *Grogan v. Garner*, 498 U.S. 279, 286-87, 111 S. Ct. 654, 659 (1991). A key component of the "fresh start" is the discharge of prepetition debts. *Id.* A Chapter 7 discharge "discharges the debtor from all debts that arose before the date of the order for relief[.]" 11 U.S.C. § 727(b). The discharge "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any [discharged] debt as a personal liability of the debtor[.]" *Id.* § 524(a)(2). This section makes clear that personal liability is discharged when an individual receives a Chapter 7 discharge. But, it is equally clear that a Chapter 7 discharge does not avoid or otherwise affect a lien against property of the debtor. *Sellers v. Rushmore Loan Mgmt Servs*., LLC, 941 F.3d 1031, 1035 (11th Cir. 2019);

---

[11] Plaintiff has also brought a similar suit in the District Court for the Northern District of Georgia, case no. 17-03385. [Doc. 102, Ex. C]. In the Magistrate Court's Report Recommendation sent to the District Court, it noted that equitable doctrines would bar Plaintiff from relitigating the issues related to BONYM's possession of the Note and Deed and accompanying assignments. The District Court adopted the report and recommendation and dismissed the related claims with prejudice. [Doc. 102, Ex. D].

*Mele v. Bank of America Home Loans (In re Mele)*, 486 B.R. 546, 555 (Bankr. N.D. Ga. 2013) (Ellis-Monro, J.) (citing *Long v. Bullard*, 117 U.S. 617, 620-21, 6 S. Ct. 917, 918 (1886)). The test for violation of the discharge injunction is "'whether the objective effect of the creditor's action is to pressure a debtor to repay a discharged debt.'" *Roth v. Nationstar Mortg., LLC (In re Roth)*, 935 F.3d 1270, 1276 (11th Cir. 2019) (quoting *Green Point Credit, LLC v. McLean (In re McLean)*, 794 F.3d 1313, 1322, 11th Cir. 2015)). A creditor who violates the discharge injunction may be held in civil contempt under 11 U.S.C. § 105(a)[12] "if there is *no fair ground of doubt* as to whether the [discharge] order barred the creditor's conduct. In other words, civil contempt may be appropriate if there is no objectively reasonable basis for concluding that the creditor's conduct might be lawful." *Taggart v. Lorenzen*, 139 S. Ct. 1795, 1799 (2019) (emphasis in original); *Roth*, 935 F.3d at 1275; *compare McLean*, 794 F.3d at 1323 (requiring that the creditor "was aware of the discharge injunction and intended the action that violated it[.]" in order to impose sanctions). The debtor has the burden of establishing a violation of the discharge injunction by clear and convincing evidence. *Daniels v. Howe Law Firm, P.C. (In re Daniels)*, 591 B.R. 814, 822 (Bankr. N.D. Ga. 2018) (Ritchey Craig, J.) (citations omitted).

BONYM moved for judgment on the pleadings on Plaintiff's discharge injunction violation claim. Because motions for judgment on the pleadings subject claims to the same pleading standards as Rule 12(b)(6) motions, Plaintiff must allege facts that, if taken as true, establish a facially plausible claim. *Puissant*, 2013 U.S. Dist. LEXIS 171396, at *5; *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949. Claims are facially plausible if they allow the court to reasonably infer that the defendant is liable. *Id*.

---

[12] "The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

To state a facially plausible claim for a willful violation of the discharge injunction, plaintiffs must allege that the creditors had knowledge of the discharge injunction and intended the action which violated it. *Mele*, 486 B.R. at 555. Plaintiffs may also meet the pleading requirements by alleging that a creditor is liable because its agent violated the discharge while acting on behalf of the creditor. *See e.g. In re Crawford*, 388 B.R. 506, 522 (Bankr. S.D.N.Y. 2008), *vacated in part on other grounds*, 476 B.R. 83 (S.D.N.Y. 2012) (holding both the agent and the principal liable for the agent's willful stay violation); *In re Johnson*, 253 B.R. 857, 861 (Bankr. S.D. Ohio 2000) ("Courts have imposed joint and several liability against creditors and their counsel for willful stay violations."); *Pague v. Harshman (In re Pague)*, Nos. 3:01-bk-32061, 3:09-ap-00071, 2010 Bankr. LEXIS 912, at *16 (Bankr. N.D. W. Va. Apr. 5, 2010) (finding both the attorney and the client joint and severally liable); *In re Plummer*, 513 B.R. 135 (Bankr. M.D. Fla. 2014) (holding creditor and his attorney jointly and severally liable for violating discharge injunction by pursuing mortgage foreclosure action); *Vazquez v. Sears, Roebuck & Co. (In re Vazquez)*, 221 B.R. 222, 231 (Bankr. N.D. Ill. 1998) ("A creditor and its attorney are jointly and severally liable for their violations of the discharge injunction because under general principles of agency law, an agent whose tortious conduct renders the principal liable is also liable for his own tortious acts."); *see also Mocini v. Rental Serv. Corp., USA, Inc. (In re Mocini)*, Nos. 3:07-bk-02299-JAF, 3:08-ap-00410, 2010 Bankr. LEXIS 6593, at *20 (Bankr. M.D. Fla. Mar. 30, 2010) ("Both creditors and their attorneys may be held liable for violations of the discharge injunction").

Here, Plaintiff alleges that she received a discharge on February 25, 2011 and that Servicing was served with the discharge order. Plaintiff further alleges that after her discharge, Plaintiff had telephone conversations with Servicing regarding a loan modification, and during these conversations, Servicing told Plaintiff that if Plaintiff failed to continue to pay her mortgage,

Servicing would initiate a foreclosure action. Plaintiff also received monthly mortgage statements. Although Plaintiff alleges that BANA sent these statements, the attachments to the complaint demonstrate that they were sent by Servicing. Between November 2012 and March 2013, these mortgage statements included language stating that Plaintiff was past due on her mortgage and that Servicing would "proceed with collection action until your account is brought fully current, and you will be responsible for all costs incurred in this process to the full extent permitted by law."

Plaintiff alleges that upon receipt of these letters, she made numerous payments to BANA out of fear of collection action against her. Plaintiff also received a letter from Servicing accusing her of being in default on her April and May 2012 payments. Plaintiff alleges that she was not in default and made timely mortgage payments for those months and all months between 2010 and March of 2013. Plaintiff alleges that she suffered substantial emotional distress upon learning that she was never required to make such payments and that she was facing a foreclosure action because she defaulted on the loan. Plaintiff further alleges that she suffered worry and anger in her belief that her money was being stolen from her.

Plaintiff alleges that Servicing, by engaging in this conduct, violated the discharge injunction as an agent for BONYM.

Under the laws of agency, a "principal shall be bound by all the acts of his agent within the scope of his authority." O.C.G.A. § 10-6-51. The principle of vicarious liability applies to the principal-agent relationship, such that the principal may be liable for the acts or omissions of its agents within the scope of the agent's authority. *Duvall v. Chronic*, 347 Ga. App. 763, 772, 820 S.E.2d 780, 788-89 (2018) (citing O.C.G.A. § 51-2-2); *Carnegay v. WalMart Stores*, 353 Ga. App. 656, 665, 839 S.E.2d 176, 184 (2020) (citations omitted). And a principal may be liable for discharge injunction violations committed by its agent. *See Siharath v. Citifinancial Servs., Inc.*,

285 B.R. 299, 305 (Bankr. D. Minn. 2002) ("Since Citifinancial had knowledge of the commencement of Siharath's bankruptcy case yet continued, through its agent (the Peterson Firm), to attempt collection of its debt, it willfully violated the automatic stay."); *In re Crawford*, 388 B.R. at 522 (holding both the agent and the principal liable for the agent's willful stay violation).

Taking the facts as true and in a light most favorable to Plaintiff, she has stated a facially plausible claim for relief for violations of the discharge injunction against BONYM. Plaintiff alleges that Servicing had notice of her discharge yet told her to continue making mortgage payments or it would begin foreclosure. Plaintiff also alleges that she received mortgage statements post-discharge with language indicating she could be responsible for the debt. Although Plaintiff alleges that these statements were sent by BANA, the attachments to the Complaint demonstrate that Servicing sent these statements and the Court assumes for purposes of this Order that Servicing merged with BANA. [Supra n.3]. She claims to have understood these letters to be an attempt to collect a discharged debt. She continued making payments based on this understanding. In her view, the objective in sending the letters was to collect on a discharged debt. Plaintiff alleges that Servicing engaged in these violations as an agent of BONYM. Taking these allegations as true, this is sufficient to enable to the Court to infer that BANA violated the discharge injunction without any objectively reasonable basis to believe that its conduct was lawful and that BONYM is liable for discharge injunction violations. Plaintiff adequately states a claim for relief for discharge injunction violations against BONYM.

## 2.  Laches

BONYM argues that Plaintiff's damages claim should be precluded under the doctrine of laches particularly because it is entitled to a presumption that Plaintiff's delay in bringing its claim is prejudicial.

Laches is an equitable defense "that serves to bar suit by a plaintiff 'whose unexcused delay, if the suit were allowed, would be prejudicial to the defendant.'" *Black Warrior Riverkeeper, Inc. v. U.S. Army Corp of Eng'rs*, 781 F.3d 1271, 1283 (11th Cir. 2015) (quoting *Russell v. Todd*, 309 U.S. 280, 287, 60 S. Ct. 527, 531 (1940)). Under the doctrine, a defendant must prove: "(1) there was a delay in asserting a right or a claim, (2) the delay was not excusable, and (3) the delay caused [a defendant] undue prejudice." *Groucho's Franchise Sys., LLC v. Grouchy's Deli, Inc.*, No. 1:14-cv-1725, 2015 U.S. Dist. LEXIS 180373, at *5 (N.D. Ga. July 1, 2015) (citing *U.S. v. Barfield*, 396 F.3d 1144, 1150 (11th Cir. 2005)) (alteration in original); *Black Warrior Riverkeeper*, 781 F.3d at 1283.

To determine whether laches applies, courts must look to the specific facts of each case and decide whether a plaintiff's delay in bring suit was reasonable. *See Groucho's Franchise Sys.*, 2015 U.S. Dist. LEXIS 180373, at *5 (citing *Studiengesellschaft Kohle mbH v. Eastman Kodak Co.*, 616 F.2d 1315, 1325 (5th Cir. 1980) ("Laches and estoppel are equitable defenses whose appropriateness must be determined in each case under its particular factual situation.")); *see also Holman v. Citimortgage, Inc. (In re Holman)*, No. 07-70272, AP 09-70031, 2010 Bankr. LEXIS 1518, *15-16 (Bankr. N.D. Ala. May 6, 2010). Because it is a fact intensive pursuit that looks to the reasonableness of plaintiffs' delays, it is generally not appropriate for courts to determine issues of laches on a motion for summary judgment or motion to dismiss. *See Holman*, 2010 Bankr. LEXIS 1518, *15-16 (quoting *Tate v. Citimortgage, Inc. (In re Tate)*, No. 99-13169, AP 09-1059, 2009 Bankr. LEXIS 4591, at *7 (Bankr. S.D. Ala. Oct. 29, 2009)) ("Because a court asked to apply laches must determine the reasonableness of - and hence the reasons and excuses for - the plaintiff's delay in filing suit, as well as the resulting prejudice suffered by the defendant, laches generally cannot be decided on a motion for summary judgment let alone motion to

dismiss."); *see Kling v. Hallmark Cards, Inc.*, 225 F.3d 1030, 1041 (9th Cir. 2000) ("because a claim of laches depends on a close evaluation of all the particular facts in a case, it is seldom susceptible of resolution by summary judgment") (internal quotation marks omitted); *see also Groucho's Franchise Sys.*, 2015 U.S. Dist. LEXIS 180373, at *6 (declining to apply laches at the motion to dismiss stage); *Valencia v. Universal City Studios LLC*, No. 1:14-cv-528, 2014 U.S. Dist. LEXIS 174644, at *12 (N.D. Ga. Dec. 18, 2014) (declining to apply laches at the motion to dismiss stage in a case based on the Lanham Act); *but see Herron v. Herron*, 255 F.2d 589, 593 (5th Cir. 1958) ("under Rule 9(f), … the defenses of limitations or laches may be asserted by motion to dismiss for failure to state a claim -- provided that the complaint shows affirmatively that the claim is barred."). The Court reviews the motion for judgment on the pleadings on the same standard as a motion to dismiss under Rule 12(b)(6). *Anderson v. S. Home Care Servs.*, No. 1:13-CV-0840-LMM, 2016 U.S. Dist. LEXIS 195946, at *4 (N.D. Ga. June 7, 2016).

In *Vega v. The Malula*, 291 F.2d 415, 416 (5th Cir. 1961)[13], the Fifth Circuit noted that the lower court held an evidentiary hearing on the issue of laches and that this procedure avoided problems that arose from not having a factual record. Specifically, with respect to reliance on the general proposition that prejudice can be presumed if a claim is brought outside the analogous statute of limitations, the court explained that that a "mechanical application of a statute of limitations" was not appropriate because "the equities of the parties must be considered as well." *Id.* 418. The court concluded that the analogous statute of limitations was relevant but not determinative because "the rule is that 'the delay which will defeat such a suit must in every case depend on the peculiar equitable circumstances of that case.'" *Id.* at 418-419 (citations omitted). Because the Court must make a facts and circumstances determination regarding prejudice to

---

[13] In *Bonner v. Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981), the Eleventh Circuit Court of Appeals adopted as precedent decisions of the Fifth Circuit from September 30, 1981 and earlier.

BONYM, this prong of the laches analysis is no more susceptible to resolution on a motion to dismiss than that which considers whether Plaintiff's delay was excusable.

Thus, deciding whether Plaintiff's delay in bringing a claim under 11 U.S.C. § 524 was unreasonable is a fact intensive pursuit and is outside the scope of this Motion. So even if a rebuttable presumption were to be raised, as BONYM argues, the presumption would be rebuttable, and Plaintiff ought to have a chance to rebut.

For the foregoing reasons, it is

ORDERED that BONYM's motion to dismiss for lack of subject matter jurisdiction is GRANTED and Plaintiff's objection to the BONYM is DISMISSED. It is further

ORDERED that BONYM's motion to dismiss Plaintiff's claims for lien avoidance, declaratory and injunctive relief is GRANTED and those claims are DISMISSED. It is further

ORDERED that Plaintiff's Motion for Partial Summary Judgment is DENIED as MOOT because the claims for which she seeks judgment now stand dismissed. It is further

ORDERED that BONYM's motion for judgment on the pleadings on the discharge injunction claim is DENIED and Plaintiff's claim for damages for violation of the discharge injunction against BONYM may proceed.

**END OF ORDER**

## **Distribution List**

Shirley White-Lett
456 North Saint Marys Lane
Marietta, GA 30064

Chandler P. Thompson
Akerman LLP
Suite 725
170 South Main Street
Salt Lake City, UT 84101