

**IT IS ORDERED as set forth below:**

**Date: March 21, 2022**

_____

**Barbara Ellis-Monro**
**U.S. Bankruptcy Court Judge**

_____

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| IN RE: | |
| | CASE NO. 10-61451-BEM |
| Shirley Lett, | |
| Debtor. | CHAPTER 7 |
| Shirley White-Lett, | |
| Plaintiff, | |
| | ADVERSARY PROCEEDING NO. |
| v. | 20-6278-BEM |
| The Bank of New York Mellon, Corp., BANK OF AMERICA, N.A., Federal National Mortgage Association a/k/a Fannie Mae, Federal Home Loan Mortgage Corp. a/k/a Freddie Mac, Mortgage Electronic Registration Systems Incorporated (MERS), RRA CP Opportunity Trust 1, Merscorp Holdings, Inc. d/b/a MERS, Shellpoint Mortgage Servicing, and The Bank of New York Mellon, | |
| Defendants. | |

### ORDER DENYING PLAINTIFF'S MOTION TO RECONSIDER

This matter is before the Court on Shirley White-Lett's ("Plaintiff") *Motion for Reconsideration of Order [Doc. 148] Dismissing Objections to Claim* ("Motion"). [Doc. 154].[1] The Bank of New York Mellon ("BONYM") filed a response in opposition (the "Response"), and Plaintiff filed a reply to the Response. [Docs. 158 & 160]. In the Response, BONYM requested an order instructing it not to respond to Plaintiff's filings unless the Court directs it to provide a response.

## I.    Overview

BONYM filed a proof of claim in Plaintiff's bankruptcy case asserting a secured claim based on a note (respectively, the "BONYM Claim" and the "Note") and deed to secure debt on Plaintiff's residence[2] (respectively, the "Deed" and the "Property").

The BONYM Claim indicates that BONYM is the current creditor while NewRez LLC DBA Shellpoint Mortgage Servicing is the servicer. The amount of the claim is listed as $886,240.81, and the claim is fully secured based on a note and perfected deed to secure debt. The claim was filed by counsel for BONYM, Chandler P. Thompson, who indicates he is the creditor's attorney or authorized agent. The Mortgage Proof of Claim Attachment lists a principal balance of $642,807.92, with interest in the amount of $187,483.46, fees and costs of $6,368.30, and advanced escrow funds due to deficiency in the amount of $49,646.55. Attachments include an Adjustable Rate Note dated May 17, 2005, in the amount of $636,000 with an initial interest rate of 1%, an Allonge indicating the Note was transferred from Aegis Wholesale Corporation to Aegis Mortgage Corporation and then to Countrywide Document Custody Services and then to Countrywide Home Loans, Inc. and then endorsed in blank, a Security Deed dated May 17, 2005, recorded in Cobb County Deed Book 14159 pg. 3506, an Assignment of the Security Deed dated

---

[1] Unless otherwise indicated, docket entries refer to this adversary proceeding, Adv. Pro. 20-6278.
[2] Claim No. 1 in bankruptcy case 10-61451.

April 1, 2013, indicating the transfer of the Security Deed to BONYM, and a pooling and servicing agreement dated June 1, 2005. On the required proof of claim form, Chandler P. Thompson asserted (1) that he acknowledged that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt; and (2) that he had examined the information in the proof of claim and had a reasonable belief that the information is true and correct.

Plaintiff filed an Amended Complaint against BONYM and other defendants to (1) determine the validity and secured status of a lien; (2) obtain declaratory and injunctive relief as to the validity and enforceability of a debt and security; (3) avoid an unperfected lien under 11 U.S.C. § 544; (4) object to proof of claim; and (5) obtain sanctions for violation of the discharge injunction. [Doc. 9]. BONYM filed a Motion to Dismiss and Motion for Judgment on the Pleadings ("Motion to Dismiss") [Doc. 102]. Plaintiff filed a response and a Motion for Partial Summary Judgment against BONYM. [Doc. 71, 103]. BONYM filed a reply. [Doc. 110]. The Court entered an order partially granting BONYM's Motion to Dismiss and denying Plaintiff's Motion for Partial Summary Judgment on November 29, 2021, in which all claims against BONYM were dismissed except the claim for violation of the discharge injunction (the "Order"). [Doc. 148].

In its Motion to Dismiss, BONYM challenged Plaintiff's standing to object to its proof of claim and to obtain declaratory relief and avoidance of its lien. In the Order, the Court concluded that Plaintiff lacks a pecuniary interest in the distributions, if any, from the bankruptcy estate and therefore lacks standing to object to the BONYM Claim. Plaintiff also lacks standing to obtain the declaratory and injunctive relief she sought as well as standing to avoid BONYM's lien. Finally, even if Plaintiff has standing to pursue an objection to the BONYM Claim, seek injunctive and declaratory relief, and avoid BONYM's lien, she would be precluded from doing so based on

3

*res judicata*, as she has brought the same claims against BONYM in two prior actions. Plaintiff now asks the Court to reconsider the Order. For the following reasons, the Court will deny the Motion.

Federal Rule of Civil Procedure 59(e), made applicable by Federal Rule of Bankruptcy Procedure 9023, authorizes the Court to alter or amend a judgment "if there is newly-discovered evidence or manifest errors of law or fact." *Metlife Life and Annuity Co. of Conn. v. Akpele*, 886 F.3d 998, 1008 (11th Cir. 2018). It may not be used "to relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment." *Michael Linet, Inc. v. Village of Wellington, Fla*., 408 F.3d 757, 763 (11th Cir. 2005). Nor may it be used merely to request reexamination of an unfavorable ruling. *Id.*; *Jacobs v. Tempur-Pedic Intern., Inc*., 626 F.3d 1327, 1344 (11th Cir. 2010).

In the Motion, Plaintiff asserts a variety of arguments and theories as to why the Court's Order was erroneous, including (1) in analyzing Plaintiff's standing to object to the BONYM Claim, the Court failed to consider the fact that the trustee abandoned the Property that is the subject of the proof of claim to Plaintiff and that, as a debtor, Plaintiff is a party in interest; (2) in analyzing Plaintiff's standing to bring avoidance claims and the Court's jurisdiction over such claims, the Court erred by failing to recognize that the abandonment of the Property gives Plaintiff the necessary standing and erred in relying on a prior order in which it ruled that the original lender's bankruptcy did not affect any assignments, rather than recognizing that Plaintiff is a successor to the original lender's interests; (3) the Court erred in its *res judicata* analysis because it failed to analyze BONYM's standing to file a proof of claim as of the time the BONYM Claim was filed, Plaintiff has raised issues regarding an allonge that were not litigated in the prior proceeding, and she has presented newly discovered evidence not available in the prior proceeding;

and (4) the Court did not specifically address the declaratory relief sought by Plaintiff. Again, presenting novel arguments or recharacterizing prior arguments will not constitute the basis required to conclude manifest errors of law or fact affected the Order. However, the Court will address Plaintiff's arguments in turn.

## II.     Plaintiff's Standing to Object to the BONYM Claim

Plaintiff argues the Court erred in ruling that she lacks standing to challenge the BONYM Claim due to her lack of pecuniary interest in the outcome. Plaintiff argues that the Court applied outdated law in requiring her to demonstrate a pecuniary interest as she only needs to be a party in interest, but nonetheless she does have such a pecuniary interest because the estate's interest in the Property was abandoned to her, and the BONYM Claim affects the Property. Plaintiff argues that as a party in interest, she has standing to object to the BONYM Claim as being executed and sworn to by a person who lacked any personal knowledge of the claim, which is an objection independent of issues related to BONYM's right to enforce the Note and Deed. Plaintiff argues that the Court did not acknowledge this specific objection in any ruling.

To support her argument that a Chapter 7 debtor does not have to show a pecuniary interest for standing to challenge a proof of claim, Plaintiff cites *Mulligan v. Sobiech*, 131 B.R. 917 (S.D.N.Y. 1991). *Mulligan* involved a case initially filed under Chapter 11. The creditor provided postpetition financing secured by real property of the debtor. After the debtor converted to Chapter 7 and the property securing the postpetition debt had been sold by the trustee, the debtor objected to allowance of an administrative expense claim for the deficiency balance. *Id.* at 919. The court found the debtor had standing to object to the proof of claim because 11 U.S.C. § 502 allows "a party in interest" to object, and the debtor is a party in interest. *Id.* at 920. However, the validity of *Mulligan* is in doubt after *In re 60 East 80th St. Equities, Inc.*, 218 F.3d 109 (2d Cir.

2000), in which the Second Circuit said, "It is well-established that *a Chapter 7 debtor is a 'party in interest'* and has standing to object to a sale of the assets or otherwise participate in litigation surrounding the assets of the estate, *only if there could be a surplus after all creditors' claims are paid.*" *Id.* at 115 (emphasis added); *see also Pascazi v. Fiber Consultants, Inc.*, 445 B.R. 124, 127 & n.2 (S.D.N.Y. 2011) ("Pascazi only has standing to object to the Claim as a debtor if he can demonstrate a reasonable possibility of a surplus once all claims are paid") (internal quotation marks and citation omitted).

Even if *Mulligan* remains good law, it can be distinguished from this proceeding because the estate had assets available for administration, the trustee filed an affidavit stating that he supported the debtor's ability to object to the claim, and the court found that the debtor would benefit from the claim objection "by making funds available to pay the non-dischargeable IRS claims." 131 B.R. at 920. No such facts are present in Plaintiff's case. *Compare Drew v. Royal (In re Drew)*, 256 B.R. 799 (BAP 10th Cir. 2001) (Chapter 7 debtor's claim objections were sustained as to claims filed by the trustee after assets were discovered when the trustee had no information about the claims other than what was disclosed in the debtor's schedules and disallowance resulted in a surplus for the debtor).

Plaintiff also cites *In re East*, No. 3:12-bk-33145, 2016 WL 6952471 (Bankr. E.D. Tenn. Nov. 23, 2016), in support of her argument. In *East*, the debtor owned real property with his father as tenants in common. Shortly before filing for bankruptcy, the debtor transferred his interest in the property to his parents. After the trustee initiated an avoidance action against the parents, they quitclaimed a half interest in the property to the trustee. The trustee then obtained a default judgment to sell the property free of the parents' interest. The parents then sought to compel abandonment of the estate's interest in the property because it was landlocked and therefore was

burdensome and of inconsequential value to the estate and because the trustee had failed to market it for two years. *Id.* at *1-4. At issue was whether the non-debtor parents had standing to do so. *Id.* at *4. The court found that the parents were parties in interest and therefore did have standing because "they have a clear interest in the real property." *Id.* at 5 (quotation marks and citations omitted). The *East* case is distinguishable from Plaintiff's facts because it involved property jointly owned by the estate and non-debtor third parties, and the trustee was seeking to sell the entire property. Here, the Property is not property of the estate and no third-party interests are affected by the BONYM Claim.

The other cases cited by Plaintiff address the "person aggrieved" standard for standing to appeal a bankruptcy order. "Courts have widely agreed that the person aggrieved doctrine limits standing to appeal a bankruptcy court order to those individuals who have a financial stake in the order being appealed. … A person has a financial stake in the order when that order 'diminishes their property, increases their burdens or impairs their rights.'" *In re Westwood Cmty. Two Ass'n, Inc.*, 293 F.3d 1332, 1335 (11th Cir. 2002) (quoting *In re Troutman Enter., Inc.*, 286 F.3d 359, 364 (6th Cir. 2002)). Debtor argues that a party in interest is an analog to a person aggrieved. However, the Eleventh Circuit has expressly distinguished between the two. "[A]lthough the party in interest standard is pertinent to determine who may object to the allowance or disallowance of claims, the proper inquiry to determine who may appeal a bankruptcy court order is the person aggrieved standard." *Id.* at 1337. The court noted that "standing to appeal a bankruptcy order is not limited to a real party in interest." *Id.* at 1336 (11th Cir. 2002) (noting that the "person aggrieved" standard is broader than the "real party in interest" standard). However, that case did not address a Chapter 7 debtor's standing to object to a proof of claim, and none of

the cases cited by Plaintiff show that the Court erred in ruling that she does not have standing to object to a proof of claim when she lacks a pecuniary interest in the outcome.

Plaintiff also argues that because the bankruptcy estate's interest in the Property was abandoned back to her at the close of her bankruptcy case, she has standing to object to the BONYM Claim in order to protect her financial interests in the Property. However, allowance or disallowance of a claim has no effect on Plaintiff's financial interest in the Property. If the BONYM Claim is disallowed, the only consequence is that BONYM will not receive any distribution from the bankruptcy estate. Disallowance on its own will not void or invalidate BONYM's lien or the underlying debt. Therefore, Plaintiff cannot demonstrate standing based on her interest in the Property. Because she lacks standing, Plaintiff cannot raise an objection on any basis, including lack of personal knowledge by the person executing the claim.[3]

### III.    Plaintiff's Standing to Obtain Declaratory Relief

Plaintiff argues the Court erred in dismissing her claim for declaratory relief as she is entitled to such relief as a party in interest[4] because the pending litigation "may substantially improve her financial position." [Doc. 154 at 9]. Plaintiff argues that she named as defendants several entities that might have asserted an interest in the Property, but all denied a current interest and were dismissed from the proceeding. Because BONYM has the only remaining claim, if Plaintiff is successful in defeating BONYM's lien, then Plaintiff will retain the Property and its equity.

---

[3] In the Motion, Plaintiff states, "Because this Court has never acknowledged [sic] the assertion of this objection in any ruling, Plaintiff can only conclude that it has perhaps forgotten about it." [Doc. 154 at 6]. However, Plaintiff did not allege this objection in the Amended Complaint but raised it later in the litigation. Furthermore, in the Order, the Court said, "The Court has determined that Plaintiff lacks standing to object to the BONYM Claim, *regardless of the basis of her objection*." [Doc. 148 at 18]. Once the Court determined Plaintiff lacked standing, it did not need to evaluate the merits of her claim objections.

[4] It is unclear if Plaintiff is independently seeking declaratory relief, or if she believes declaratory relief is a remedy, she can seek through a proof of claim objection. However, this does not bear on the Court's analysis.

In the Amended Complaint, Plaintiff sought a declaratory judgment that BONYM is not entitled to enforce the Deed because it has failed to establish a complete chain of title. [Doc. 9 ¶ 87]. In the Order the Court characterized the declaratory relief claim as being "based upon Plaintiff's alleged ability to avoid the BONYM lien." [Doc. 148 at 19]. The Court then determined that Plaintiff does not have standing to avoid the lien under provisions of the Bankruptcy Code, and therefore cannot sustain a claim for declaratory relief. [Id. at 21]. The Court further concluded that Plaintiff also lacks standing under Georgia law to challenge the 2013 Assignment and that there is no basis upon which Plaintiff could avoid the 2013 Assignment. [Id.]. Neither of these rulings turns on whether Plaintiff has a financial interest in the Property or her dispute with BONYM.

Plaintiff cites *In re Wyatt*, 338 B.R. 76 (Bankr. W.D. Mo. 2006), in support of her argument that she has standing to seek declaratory relief regarding the status of liens on the Property and that the Court has jurisdiction over such claim even though the Property is not property of the estate. *Wyatt* involved a no-asset Chapter 7 case in which the debtor filed an adversary proceeding to determine the validity of a lien against her mobile home when no written security agreement had been executed. 339 B.R. at 77. The case was not filed under any of the trustee's avoidance powers in the Bankruptcy Code, the trustee had no interest in the mobile home because the debtor had exempted it in full, and the trustee had effectively abandoned the property by filing a report of no distribution. *Id.* at 79. The court stated that "[i]n order to have standing to bring a cause of action, a plaintiff must have a present, substantial interest in the outcome of the case." *Id.* at 78 (citations omitted). The court noted a lack of a precedent on a debtor's standing to seek declaratory relief on the validity of a lien, which at least one court has attributed to the fact that such standing is "so obvious and inherent in the bankruptcy system." *Id.* at 79; *Brae Asset*

9

*Fund, L.P. v. Kelly*, 223 B.R. 50, 56 (D. Mass. 1998). In *Wyatt*, the court found that the debtor had

standing to assert the claim at issue because

> Plaintiff needs to know whether the claimant has a valid lien on the property in
> order to determine whether it is necessary for her to deal with that lien and exercise
> one of the other options which might be available to her under the Bankruptcy
> Code, such as redemption of the property from the lien or reaffirmation of the debt.

*Id.* at 79-80. In other words, the debtor had standing to bring her claim in the bankruptcy case, and

the bankruptcy court had jurisdiction to hear it, because it affected the debtor's ability to exercise

her rights under the Bankruptcy Code. Such rights are not at issue here because redemption does

not apply to real property, 11 U.S.C. § 722, and the time for making a reaffirmation agreement

under § 524(c) expired upon the entry of a discharge in Plaintiff's bankruptcy case.

In *Brae Asset Fund*, cited by *Wyatt*, the issue before the court was the effect of a

foreclosure of the debtor's residence and a foreclosure deed, unrecorded at the time of the debtor's

chapter 7 filing, undertaken in reliance on a dragnet clause in the mortgage and the debtor's

guaranty of a corporate debt. The court held that the debtor had standing to seek a declaration of

the effect of the foreclosure because that declaration was necessary to determine what interest

became property of the bankruptcy estate. As is the case with *Wyatt,* such rights are not at issue

here because the Property is no longer property of the bankruptcy estate and any determination of

Plaintiff's interests therein do not impact the estate in this reopened case. Therefore, Plaintiff has

failed to show the Court erred in finding she lacked standing to seek declaratory relief and that the

Court lacked jurisdiction to the extent such relief is based on nonbankruptcy law.[5]

---

[5] In her reply brief, Plaintiff argues that she has a claim under Rule 7001 to determine the validity of a secured interest
that does not require or involve the Trustee's standing. However, Rule 7001 does not create a cause of action; it merely
sets forth the type of claims that are adversary proceedings. Fed. R. Bankr. P. 7001(2) ("The following are adversary
proceedings: … (2) a proceeding to determine the validity, priority, or extent of a lien or other interest in property[.]").
The causes of action listed in Rule 7001 are created by other provisions of law.

### IV.    Plaintiff's Standing to Avoid BONYM's Lien

Next, Plaintiff asserts in her Motion that because the Property was abandoned to her, she has standing to avoid BONYM's lien, and the Court erred in ruling otherwise. Plaintiff cites *In re Dewsnup*, 87 B.R. 676, 677 (Bankr. D. Utah 1988), *subsequently aff'd*, 908 F.2d 588 (10th Cir. 1990), *aff'd sub nom. Dewsnup v. Timm*, 502 U.S. 410, 112 S. Ct. 773 (1992), for the proposition that debtors have standing to avoid a lien if the property at issue has been abandoned by the trustee. However, the issue in *Dewsnup* was whether the debtor-plaintiff could redeem abandoned real property in a chapter 7 case. *Id.* The court in *Dewsnup* was charged with determining whether "a Chapter 7 debtor may utilize § 506(d) to avoid the undersecured portion of a lien on real property which has or will be abandoned to it and whether such a debtor may pay a secured creditor the fair market value of such real property in full satisfaction of the lien." *Id.* at 678. The fact that the property at issue was abandoned was meaningful only to the extent that abandonment allowed the debtor to pursue redemption. With respect to standing, the court said, "[T]his adversary proceeding only states a cause of action if the property is abandoned. Otherwise, the debtors would have no standing to assert their claim to avoidance *and redemption* and the property would be liquidated by the Chapter 7 trustee, making these matters moot." 87 B.R. at 677 n.1 (emphasis added). The court ultimately held that the avoiding power of § 506(d) "is limited to property which is property of the estate and is administered by the trustee" and cannot be used by the debtor to avoid a lien on non-estate property. *Id.* at 683. Thus, Plaintiff's reliance on *Dewsnup* as support for her argument that abandonment confers standing is misplaced.

Next, Plaintiff argues the Court erred in concluding that the Aegis Wholesale Corporation ("AWC") "bankruptcy does not affect the validity of any assignment" and therefore does not have an impact on her standing to avoid the lien. [Doc. 154 at 11]. Plaintiff argues that

the Court conflated two sets of transactions—one of which was with BONYM and the other with the junior lienholder on the Property, RRA CP Opportunity Trust 1 ("RRA"), and that doing so was an error because the transactions occurred at different times and between different parties.

AWC was the originating lender for both loans, and both loans were secured by liens on the Property. Both notes and deeds to secure debt were executed in 2005. AWC filed for bankruptcy in 2007, and its liquidating plan was confirmed in 2010. BONYM obtained its interest in the Property by assignment executed in 2013. RRA obtained its junior interest in the Property by assignment executed in 2017. In granting RRA's motion to dismiss Plaintiff's claims against RRA in this case (the "RRA Dismissal Order"),[6] the Court determined that the AWC bankruptcy did not affect RRA's 2017 assignment because nothing in AWC's plan or bankruptcy case rendered that security deed or assignment of it invalid. [Doc. 67 at 14].

Although the date of BONYM's assignment is different than that of RRA, the timeline of events is the same: starting with the original loan, followed by the AWC bankruptcy and plan confirmation, and then the assignment. The specific date of the assignment does not change the order of events.

In addition, the Court rejected Plaintiff's argument that the AWC bankruptcy rendered the RRA assignment ineffective because AWC's agency agreement with Mortgage Electronic Registration Systems, Inc. ("MERS") was rejected. The Court ruled that regardless of the effect of the AWC bankruptcy proceedings on the agency agreement, Plaintiff lacked standing to challenge the assignment because Plaintiff was not a party to the assignment. [Doc. 67 at 13 n.10]. Plaintiff makes the same argument regarding the avoidance of BONYM's lien—that is that

---

[6] After RRA was dismissed from this case, Plaintiff filed a new action against RRA as the sole defendant, adversary proceeding no. 21-05031. RRA filed a motion to dismiss in that case, which is currently pending.

MERS did not have the agency or authority to assign any interest in her Property to BONYM. MERS was the agent for the 2013 Assignment and the assignment at issue in the RRA Order.

Plaintiff has not shown any material difference in the facts between the RRA lien and the BONYM lien vis a vis the AWC bankruptcy or any reason why the reasoning applied in the RRA Dismissal Order does not apply equally to BONYM. Plaintiff contends that in its motion to dismiss, RRA claimed it obtained its assignment while AWC still existed and that the "Court accepted that narrative in dismissing RRA from this case" such that the existence of a valid agency agreement between AWC and MERS at the time of the RRA assignment was never determined. [Doc. 154 at 12]. Plaintiff contends that "this Court has failed to understand or refuses to acknowledge … the issue of whether the AWC bankruptcy **affects the validity of the agency agreement** relied upon by MERS *to execute assignments in behalf of [AWC] despite that [AWC] had long since closed and ceased to exist*." [Doc. 154 at 12 (emphasis in original)]. However, the Court's analysis recognized that the RRA assignment "occurred May 17, 2017, after confirmation of [AWC's] Plan." [Doc. 67 at 12]. The Court did not determine whether the agency agreement between AWC and MERS was valid at the time of the assignment because, regardless of the validity of the agency agreement, Plaintiff lacked standing to challenge the assignment because she was not a party to the assignment. [Id.]. Likewise, the validity of an agency agreement between AWC and MERS is not relevant to Plaintiff's standing to challenge the assignment to BONYM. Even if the agency agreement was invalid at the time of the assignment, Plaintiff is not a party to the assignment and cannot challenge it. Plaintiff has offered no authority for a contrary conclusion, and therefore has not shown the Court erred in this determination or in its reliance on the analysis in the RRA Dismissal Order.

Next, Plaintiff asserts that because AWC ceased operations without transferring its assets to a successor in interest, and because the Property was abandoned to her by the Chapter 7 Trustee, she has legal and equitable title to the Security Deed as of 2010.[7] Plaintiff offers no legal authority for this argument, nor does she point to any provision in the AWC plan that authorized her to take any interest of AWC in property that was not otherwise disposed of in accordance with the plan.[8] Based on her conclusion that she has legal and equitable title to the Property, she argues she does not need to avoid the 2013 assignment pursuant to 11 U.S.C. § 544(a)(3), instead, her position as holder of all interests in the Property prior to the 2013 assignment confers upon her standing to seek a declaratory judgment and/or "Rule 7001 claim" to determine the validity of the 2013 assignment. As stated in footnote 5 above, Rule 7001 does not create a cause of action. However, under the Declaratory Judgment Act, "[i]n a case of actual controversy within its jurisdiction … any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).

The Court did not specifically address the Declaratory Judgment Act in the Order. However, it does not provide a basis for granting the relief Plaintiff requests. While there may be an actual controversy with BONYM if it is attempting to enforce its lien against Plaintiff's Property, that controversy is not within this Court's jurisdiction. Bankruptcy courts have jurisdiction over "civil proceedings arising under title 11, or arising in or related to cases under

---

[7] The Court notes that the bankruptcy court in the AWC bankruptcy case authorized AWC to sell any loans it owned in the ordinary course of business. [Case No. 07-11119, Doc. 35 (Bankr. D. Del. Aug 15, 2007)]. And AWC's final post-confirmation quarterly report showed its only remaining assets were cash, and nominal amounts of prepaid expenses and furniture, fixtures, and office equipment. [*Id*. Doc 5870 (October 10, 2012)]. AWC's application for final decree asserted that it had "liquidated and/or otherwise disposed of mortgage loans that the Debtors had owned and/or serviced for themselves." [*Id*. Doc. 5872 ¶ 4 (October 11, 2012)].

[8] The plan provided that "[t]he Plan Assets shall be held by the Liquidating Debtors in trust for Creditors and shall be distributed or used exclusively in accordance with this Plan." [Case No. 07-11119, Doc. 5431 (Aug. 13, 2010)].

title 11." 28 U.S.C. § 1334(b). Matters that "arise under" title 11 are matters which invoke a substantive right created by the Bankruptcy Code. *Toledo v. Sanchez (In re Toledo)*, 170 F.3d 1340, 1345 (11th Cir. 1999). Matters that "arise in a case under" title 11 generally are administrative type matters or "matters that could arise only in bankruptcy." *Id.* (citing *Wood v. Wood (In re Wood)*, 825 F.2d 90, 97 (5th Cir. 1987)). Matters that are "related to cases under" title 11 are matters in which "the outcome of the proceeding could conceivably have an effect on the estate being administered in bankruptcy." *Id.* (quoting *Miller v. Kemira, Inc. (In re Lemco Gypsum, Inc.*), 910 F.2d 784, 788 (11th Cir. 1990)).

BONYM has not sought to enforce any lien rights in the Property. And to the extent BONYM does seek to enforce its lien rights, the property subject to the lien is not property of the bankruptcy estate. Therefore, to the extent Plaintiff's declaratory judgment claim seeks to invalidate BONYM's lien, the claim is not one that invokes a substantive right created by the Bankruptcy Code and is not one that could only arise in bankruptcy. Although, avoidance of the lien could affect administration of the bankruptcy estate by changing the pool of general unsecured claims, there is no present case or controversy to provide Plaintiff with standing. Furthermore, Plaintiff's request for declaratory relief is premised on the invalidity of the BONYM assignment. As the Court explained in the Order, under Georgia law, borrowers typically lack the power to challenge the assignment of their security deeds, which provides the Court with an independent basis to dismiss her claim for declaratory relief. *Timbes v. Deutche Bank Nat'l Tr. Co*., 708 F. App'x 971, 974 (11th Cir. 2017) (citing *Ames v. JP Morgan Chase Bank, N.A.*, 298 Ga. 732, 783 S.E.2d 614, 620 (2016) and *Jurden v. HSBC Mortg. Corp.*, 330 Ga. App. 179, 765 S.E.2d 440, 442 (2014)). Plaintiff has not shown the Court erred in this conclusion.

V.    **Application of *Res Judicata***

Next, Plaintiff asserts that the Court erred in its application of *res judicata*, which bars relitigation of matters that were or could have been litigated in a prior suit. *Manning v. City of Auburn*, 953 F.2d 1355, 1358 (11th Cir. 1992) (citing *Nevada v. U.S.*, 463 U.S. 110, 130, 103 S. Ct. 2906, 2918 (1983)). In the Order, the Court found that Plaintiff's claims against BONYM were barred by *res judicata* due to a ruling in a 2013 Cobb County Superior Court action (the "Cobb County Action"). [Doc. 148 at 28]. Plaintiff contends the Court erred in this determination because it relied on the facts as of the Cobb County Action rather than the facts as of 2020, when BONYM filed its proof of claim. In the Cobb County Action, the Superior Court ruled that Plaintiff lacked standing to challenge the assignment of her security deed under Georgia law, that her Property was subject to BONYM's security deed and she could not establish superior title, and that her attempt to challenge the validity of the debt was barred by *res judicata* because of her bankruptcy discharge. Debtor contends the Court could not apply *res judicata* based on the Cobb County Action without first inquiring whether BONYM was still the holder of the loan. In other words, Plaintiff argues that BONYM must establish standing to file a proof of claim.

To support her position, Plaintiff cites *Collier v. SP Plus Corp.*, 889 F.3d 894 (7th Cir. 2018), and specifically quotes the court's reasoning that any party invoking federal jurisdiction must prove that they have Article III standing at the time they seek to remove an action to federal court. *Id. Collier* did not involve application of *res judicata* or a creditor's standing to file a proof of claim and otherwise bears no resemblance to the case at hand.

Plaintiff also cites *House v. Mitra QSR KNE LLC,* 796 F. App'x 783 (4th Cir. 2019), for the proposition that "jurisdiction is a threshold issue, determined at the time of filing." *Id*. at 789 (citing *Martineau v. Wier*, 934 F.3d 385, 392 (4th Cir. 2019). Again, the facts in *House* and in

*Martineau* are in no way analogous to the instant case: In *House*, the plaintiff's claims were dismissed because they were brought in the name of a deceased plaintiff, and "[a]bsent a plaintiff with legal existence, there can be no Article III case or controversy." 796 F. App'x at 787. Here, there is no argument that BONYM or Plaintiff lacks a legal existence. The plaintiff in *Martineau* was an assault victim who filed a complaint against her perpetrator and the perpetrator's landlords after these claims were abandoned by the chapter 7 trustee in the victim's bankruptcy case. 934 F.3d at 388-89. On appeal, the 4th Circuit found that the prior court's finding that the plaintiff lacked standing was erroneous because the lower court had conflated Article III standing with whether the plaintiff-debtor or the chapter 7 trustee was the proper party in interest. *Id.*

Under the Bankruptcy Code, a "creditor … may file a proof of claim." 11 U.S.C. § 501(a). A creditor is an entity that has a prepetition claim against the debtor. *Id.* § 101(10)(A). A claim is "a right to payment" whether or not it is disputed, among other things. *Id.* § 101(5)(A). A claim for which a proof of claim has been filed is "deemed allowed, unless a party in interest … objects." *Id.* § 502(a). One basis for disallowance is that the "claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law[.]" *Id.* 502(b)(1). A proof of claim that has been executed and filed in accordance with the Bankruptcy Rules constitutes "prima facie evidence of the validity and amount of the claim." Fed. R. Bankr. P. 3001(f). When a claim is based on a writing, a copy of the writing must be filed with the proof of claim. *Id.* 3001(c)(1). If the creditor is secured by the debtor's residence, the proof of claim must include a mortgage proof of claim attachment and an escrow account statement, if applicable. *Id.* 3001(c)(2)(C). If an objection is filed, the objecting party must produce evidence "to refute at least one of the allegations essential to the claim's legal sufficiency" at which point "the burden of

persuasion shifts back to the claimant." *In re Foster*, 500 B.R. 197 (Bankr. N.D. Ga. 2013) (Diehl, J.) (citing *In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173-74 (3d Cir. 1992)).

The BONYM Claim was filed with the following documents: (1) Mortgage Proof of Claim Attachment; (2) Adjustable Rate Note dated May 17, 2005, between Plaintiff and AWC; (3) Allonge to Note with a chain of four endorsements, the last of which is an endorsement in blank; (4) a Security Deed dated May 17, 2005, between Plaintiff and AWC, with MERS as AWC's nominee, and recorded in Cobb County, Georgia, on May 26, 2005; (5) an Assignment of Security Deed between MERS as AWC's nominee and BONYM, dated April 1, 2013; and (6) a Pooling and Servicing Agreement between CWALT, Inc. as depositor, four entities as sellers, a master servicer, and BONYM as trustee, dated June 1, 2005. Based on these attachments, the BONYM Claim meets the requirements of the Bankruptcy Rules and is prima facie evidence of the amount and validity of the claim.

Plaintiff cites to *In re Hughes*, No. 17-52260, Doc. 150 (Bankr. N.D. Ga. Aug. 12, 2020) (Ritchey Craig, J.), for the proposition that "[t]he real party in interest with respect to a mortgage proof of claim is the party entitled to enforce the note and its accompanying mortgage." *Id.* at 11-12 (quotation marks and citations omitted). The court then stated that nonbankrutpcy law determines who is entitled to enforce the note. *Id.* at 12. In *Hughes*, the creditor was entitled to enforce the note because the note had been endorsed in blank and the creditor was the current holder of the note. *Id.* However, the court also pointed out that under Georgia law, the holder of the deed to secure debt is entitled to enforce the note through foreclosure even if it does not hold the note. *Id.* at 12-13. Here, the proof of claim shows BONYM's right to enforce both the note and the deed to secure debt in that it includes the Note with an allonge endorsed in blank and an assignment of the Deed.

18

As already explained, Plaintiff does not have standing to raise an objection to the claim, but even if she did or if the Court were required to independently scrutinize all deemed-allowed claims for standing, nothing in the proof of claim indicates any lack of standing by BONYM or that it is not the current holder of a note executed prepetition and, thus, a creditor holding a prepetition debt.[9] Plaintiff's assertion of some change in facts since the 2013 Cobb County Action is not sufficient to overcome the prima facie validity of the claim, which demonstrates on its face, BONYM's standing to file a claim.[10]

Plaintiff's standing argument dovetails with her *res judicata* argument because she argues that factual changes between the Cobb County Action and the filing of the BONYM Claim render *res judicata* inapplicable. Specifically, Plaintiff contends that the BONYM Claim includes an allonge that was never produced in the Cobb County Action and therefore she did not have a full and fair opportunity to litigate the issue in the Cobb County Action. *QOS Networks Ltd. v. Warburg, Pincus & Co*., 294 Ga. App. 528, 531, 669 S.E.2d 536, 540 (2008) ("the party against whom the doctrine [of res judicata] is raised must have had a full and fair opportunity to litigate the issues in the first action."). Plaintiff also argues that the allonge is newly discovered evidence that prevents application of *res judicata*. Finally, Plaintiff argues that because she is in a defensive posture for her claim objection, *res judicata* does not apply.

---

[9] Debtor scheduled BAC Home Loans Countrywide as holding an undisputed secured claim on her residence. [Case No. 10-61451, Doc. 1 at 19].

[10] Plaintiff expresses concerns about this Court's "fairness and impartiality" because it has "seemingly turned a blind eye" to misconduct by BONYM's attorney and "refused" to determine BONYM's standing as of the time its proof of claim was filed. [Doc. 154 at 17]. She further states that she is "becoming concerned as to whether she will receive a fair trial or any trial at all." [*Id*. at 18]. First, with respect to Plaintiff's allegations about misconduct by counsel for BONYM, the only time Plaintiff has sought specific relief regarding same was in her *Objections to Doc. 28 Denoted: "Certificate of Consent to Withdrawal and Notice of Substitution of Counsel" and Motion to Disqualify Counsel* [Doc. 32], which was heard on March 4, 2021, and overruled without prejudice to further briefing by Plaintiff if she seeks to elicit testimony from BONYM's counsel after the motion to dismiss is resolved. [Doc. 64]. Second, as set forth above, BONYM's standing to file a proof of claim as of the date the claim was filed is evident from the face of the proof of claim, which shows BONYM holds a prepetition debt. Further, the Court notes that Plaintiff's claims are those raised in the Amended Complaint not additional complaints raised in later argument. Finally, the Court notes that to the extent Plaintiff believes the Court has ruled incorrectly she may appeal.

First the Court will address what Plaintiff describes as offensive *res judicata* or offensive collateral estoppel. Plaintiff has asserted that by filing a proof of claim BONYM takes the position of a plaintiff and her objection is equivalent to an answer filed by a defendant. *See In re Miller*, No. 15-70981-WLH, 2019 WL 1112335, at *3 (Bankr. N.D. Ga. Mar. 8, 2019) ("Filing a proof of claim in a bankruptcy case invokes the claims-allowance process and *a trustee's objection* to a proof of claim is, in essence, an answer to the proof of claim.") (emphasis added). That analogy may be apt when, as in *Miller*, the party filing the claim objection has standing to do so. Here, the Court has ruled Plaintiff does not have standing to object to the BONYM Claim, and as explained above, BONYM's standing to file a claim is evident on the face of the BONYM Claim. With respect to her declaratory relief and avoidance claims, Plaintiff is the plaintiff, such that any arguments about improper offensive use of preclusion fail.

Turning to Plaintiff's argument in support of her position that the Court otherwise misapplied *res judicata*, Plaintiff cites to *Bayview Loan Servicing, LLC v. Kelly,* 166 A.D.3d 843, 845, 87 N.Y.S.3d 569 (2018), stating that the facts in *Bayview* are "identical in every aspect to those facts and circumstances" here. However, Plaintiff is incorrect. The facts of *Bayview* are not the facts of the case before this Court and are distinguishable: Most notably, *Bayview* did not involve the application of *res judicata*. Instead, it involved two foreclosure actions brought by two different successors to the original lender and a question of fact about the chain of assignments. Tribeca Lending originated the note and mortgage. Wells Fargo initiated the first foreclosure proceeding, but the note attached to its complaint did not contain any endorsements or allonges. Therefore, the court granted summary judgment to the borrowers because Wells Fargo failed to establish its standing to foreclose. 166 A.D.3d at 844-45. Wells Fargo subsequently assigned its interest in the note and mortgage to Bayview, and Bayview filed a foreclosure action. Bayview's

complaint included a copy of the note, an endorsement in blank from Tribeca Lending, and an endorsement from Wells Fargo to Bayview. Bayview then transferred the note to a third party, who sought summary judgment. *Id.* at 845. The court found summary judgment was not appropriate due to issues of fact raised by the fact that no allonge was produced in the Wells Fargo case, in the Bayview case the allonge from Tribeca Lending came after the allonge from Wells Fargo, and there were inconsistencies between the allonge and the note. *Id.*

Here, there is no active foreclosure proceeding against Plaintiff, and this Court is not being asked to determine whether any party has the ability to foreclose; instead, Plaintiff initiated the Cobb County Action.[11] Plaintiff argues that she was prevented from knowing about the existence of the allonge in the Cobb County Action due to BONYM's refusal to disclose it and, therefore, she did not have an opportunity to litigate its validity.[12] For this same reason, Plaintiff argues that BONYM is estopped from relying upon the allonge filed with its proof of claim. [Doc. 154 fn. 8]. Plaintiff has not shown that BONYM ever produced a note without an allonge in the Cobb County Action. The only note this Court is aware of having been produced in the Cobb County Action were copies produced by Plaintiff, one of which she asserted had been filed by BONYM's then-servicer with a motion for relief from stay in her bankruptcy case. That motion for relief was withdrawn prior to the initiation of the Cobb County Action. [Case No. 10-61451, Docs. 14, 22]. The second copy was Plaintiff's personal copy of the Note. [Doc. 158-1 at 15, ¶ 31]. Additionally, Plaintiff raised the lack of any endorsement on the face of the Note in her complaint and her second amended complaint in the Cobb County Action, such that she did have

---

[11] While the pleadings indicated that previous attempts to foreclose have been initiated but not completed, the Court is unaware of any present proceedings and this case does not address any party's right to foreclose.

[12] Plaintiff also acknowledges that the Cobb County Action was dismissed prior to discovery, which undermines her assertion that BONYM effectively denied that the allonge existed. [Doc. 154 at 21]. The Superior Court assumed as true the facts asserted by Plaintiff in the Cobb Country Action which does not equate to the Superior Court determining any facts (such as that the Note was never endorsed or assigned) or to BONYM asserting any such facts.

an opportunity to litigate that issue.[13] [Doc. 154 at 19; Doc. 102-1 at 14; Doc. 158-1 at 9 ¶¶ 18-

19]. The Superior Court ruled that Plaintiff was barred by *res judicata* from challenging the validity

of the debt because she obtained a discharge of the debt in her bankruptcy case. [Doc. 9 at 190].

The Superior Court also ruled that she had no standing to challenge the assignment of the deed and

*that the holder of the deed can foreclose regardless of who owns the note*, and that she could not

establish superior title to BONYM. [*Id.* at 190-91]. Additionally, in a hearing held on October 4,

2021, in this proceeding and related adversary proceeding no. 20-6031, Plaintiff admitted the

existence of the debt and admitted that she has not satisfied the debt. [Doc. 155 at 37-38].

Therefore, even if the allonge is newly discovered evidence, it has no effect on the Court's ruling[14]

and Plaintiff has not presented any reason why *res judicata* does not apply to the claims here that

she raised in her prior actions. Furthermore, Plaintiff has not shown that Georgia law provides a

basis for her to bring any of the allonge-related issues she complains about in this proceeding.

      Next, in her reply, Plaintiff raises collateral estoppel, arguing that it does not apply

unless the issue in dispute was actually and necessarily litigated in the prior proceeding. *Res*

---

[13] The Court's record includes Plaintiff's complaint in the Cobb County Action filed on May 17, 2013 [Doc. 102-1],
BONYM's answers and affirmative defenses filed on March 31, 2014, Plaintiff's second amended complaint in the
Cobb County Action filed on May 6, 2014 [Doc. 158-1], and a copy of the superior court's order dismissing the second
amended complaint on July 24, 2014 [Doc. 9 at 186]. In Plaintiff's complaint in the Cobb County Action and in her
second amended complaint, she alleged that BAC filed a motion for relief from stay in her bankruptcy case and that a
purported copy of the note was attached to the motion. [Doc. 102-1 at 14 ¶ 30; Doc. 158-1 at 15 ¶ 30]. BONYM denied
this allegation due to lack of information. [Doc. 133 at 80 ¶ 30]. In the original complaint, Plaintiff also alleged that
the copy of the note attached to the motion "contains no endorsement/assignment on its face, demonstrating that AWC
had transferred or assigned the Note" and that a copy of that attachment was included as exhibit I to her complaint.
[Doc. 102-1 at 14 ¶ 31]. BONYM responded that the document speaks for itself, but denied that exhibit I was a copy
of its note. [Doc. 133 at 80 ¶ 31]. The Court notes that exhibit H is a copy of the note and exhibit I is a plat. [Doc.
102-1 at 70-77]. Plaintiff further alleged in both the complaint and the second amended complaint that the lack of
endorsement on the face of the note made any assignment of the note invalid. [Doc. 102-1 at 14-15 ¶ 32; Doc. 158-1
at 15-16 ¶ 32]. BONYM responded that these allegations were legal conclusions not requiring a response. [Doc. 133
at 80 ¶ 32].
[14] The Chapter 7 Trustee, as the appropriate party in interest to object to proof of claims, may object to the BONYM
Claim based upon allonge-related issues. If the claim were disallowed, distribution would be affected, and the second
lien holder would receive the distributions. However, even if this were to occur there would be no surplus that could
be paid to Plaintiff as is discussed in the Order. Issues related to the lien and the right to foreclose would have no
effect on the status of the Property or the lien Plaintiff seeks to avoid; rather the sole effect if the lien were avoidable
would be in the distributions made by the Trustee.

*judicata* is claim preclusion, and collateral estoppel is issue preclusion. The Georgia Supreme

Court has explained the difference between the two doctrines as follows:

> The doctrine of res judicata prevents the re-litigation of all claims which have
> already been adjudicated, or which could have been adjudicated, between identical
> parties or their privies in identical causes of action. Res judicata prevents a plaintiff
> from instituting a second complaint against a defendant on a claim that has already
> been brought, after having previously been adjudged not to be entitled to the
> recovery sought on that claim. Three prerequisites must be satisfied before res
> judicata applies—(1) identity of the cause of action, (2) identity of the parties or
> their privies, and (3) previous adjudication on the merits by a court of competent
> jurisdiction.
>
> …
>
> The related doctrine of collateral estoppel precludes the re-adjudication of an issue
> that has previously been litigated and adjudicated on the merits in another action
> between the same parties or their privies. Like res judicata, collateral estoppel
> requires the identity of the parties or their privies in both actions. However, unlike
> res judicata, collateral estoppel does not require identity of the claim—so long as
> the issue was determined in the previous action and there is identity of the parties,
> that issue may not be re-litigated, even as part of a different claim. Furthermore,
> collateral estoppel only precludes those issues that actually were litigated and
> decided in the previous action, or that necessarily had to be decided in order for the
> previous judgment to have been rendered. Therefore, *collateral estoppel does not
> necessarily bar an action merely because the judgment in the prior action was on
> the merits. Before collateral estoppel will bar consideration of an issue, that issue
> must actually have been decided.*

*Karan, Inc. v. Auto-Owners Ins. Co.*, 280 Ga. 545, 546, 629 S.E.2d 260, 262–63 (2006) (emphasis

added) (citations omitted).

Previously, Plaintiff argued that because she has not asserted any claims in this

proceeding, rather BONYM asserted the claim, that BONYM was really asserting collateral

estoppel against her rather than *res judicata*.[15] The Court considered this argument and concluded

that "[e]ven if Plaintiff is correct about the applicable preclusion doctrine, collateral estoppel

---

[15] As stated above, the "BONYM as plaintiff" argument only applies to Plaintiff's claim objection, which she does
not have standing to bring. As to all her other claims against BONYM, she is the plaintiff.

would likewise bar her from challenging BONYM's interest in the Note and Deed." [Doc. 148 at 27]. Plaintiff argues that the issue of validity of the allonge was not actually litigated. However, as explained above, Plaintiff raised the absence of an endorsement affixed to the Note in the Cobb County Action, and the Superior Court ruled that the holder of the deed can foreclose regardless of who owns the note. Whether or not BONYM can establish that it rightfully holds the Note was irrelevant to the claims in the Cobb County Action and is irrelevant in this proceeding. This is so because even if Plaintiff succeeded in disallowing the BONYM Claim and avoiding the lien, the Property is not property of the bankruptcy estate so any benefit of avoidance would not affect the assets available in the bankruptcy estate. Rather the potential effect is limited in each instance to altering the number of claims that could receive distributions from any assets liquidated by the chapter 7 Trustee or the secured versus unsecured amount of the BONYM Claim. Therefore, Plaintiff's collateral estoppel argument does not justify the relief Plaintiff seeks.

       Finally, Plaintiff mischaracterizes the Order by stating that "Because the Court Derivatively Concluded That Plaintiff Lacked Standing to Challenge the Assignments Based Upon Its Finding That Plaintiff Lacked Standing To Object to the Proof of Claim, this Conclusion is No Longer Tenable[.]" [Doc. 154 at 22]. However, the Court did *not* conclude that; the Court explained independent bases to find Plaintiff did not have standing to object to the BONYM Claim or to challenge the assignments. Nothing in the Order indicates that standing for one claim is reliant upon standing for the other. As discussed herein and in the Order, Plaintiff does not have standing to object to a proof of claim in her case due to a lack of pecuniary interest, and she does not have standing to challenge the assignment based on *res judicata* and governing state law. Accordingly, Plaintiff has not met her burden of demonstrating any reasons why the Court should reconsider the findings in the Order. Therefore, it is hereby

ORDERED that Plaintiff's Motion is DENIED; it is further

ORDERED that BONYM shall not be required to respond to any papers filed by

Plaintiff after entry of this Order unless directed to do so by the Court.

**END OF ORDER**

## **<u>Distribution List</u>**

Shirley White-Lett
456 North Saint Marys Lane
Marietta, GA 30064

Chandler P. Thompson
Akerman LLP
Suite 725
170 South Main Street
Salt Lake City, UT 84101