

**IT IS ORDERED as set forth below:**

**Date: September 30, 2022**

_____

**Barbara Ellis-Monro**
**U.S. Bankruptcy Court Judge**

_____

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| IN RE: | |
| SHIRLEY LETT, | CASE NO. 10-61451-BEM |
| Debtor. | CHAPTER 7 |
| SHIRLEY WHITE-LETT, | |
| Plaintiff, | |
| v. | ADVERSARY PROCEEDING NO. 20-6278-BEM |
| THE BANK OF NEW YORK MELLON, CORP., et al., | |
| Defendants. | |

## **O R D E R**

This matter is before the Court on Defendant Bank of America, N.A.'s ("BANA")

*Motion for Summary Judgment* (the "BANA Motion") [Doc. 199] and Plaintiff Shirley White-

Lett's *Cross-Motion for Summary Judgment Against Bank of America, N.A. and The Bank of New*

*York Mellon and Opposition to Motion for Summary Judgment of Bank of America, N.A* (the "Plaintiff's Motion" and with the BANA Motion the "Cross Motions"). [Doc. 208]. Defendant The Bank of New York Mellon ("BONYM") filed a *Joinder to Bank of America N.A.'s Filings Opposing Summary Judgment*. [Doc. 218]. At issue in the Cross Motions is whether BANA violated the discharge injunction and is liable for such violations. Additionally, at issue in Plaintiff's Motion is whether BONYM is also liable for any violations by BANA under principles of agency. BANA also requests that if the Court finds summary judgment for BANA is not proper, the Court enter partial summary judgment to limit the issues for trial. For the reasons set forth below, none of the parties have shown they are entitled to summary judgment, and the Court will deny the Cross Motions.

## I. Summary Judgment Standard

Motions for summary judgment are governed by Federal Rule of Civil Procedure 56, made applicable in adversary proceedings by Federal Rule of Bankruptcy Procedure 7056. Rule 56 requires the Court to grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The movant is required to file a separate statement of facts, numbered separately, as to which it contends there are no genuine issues to be tried. BLR 7056-1(a)(1). Facts set forth in the statement of facts must be supported by "citing to particular parts of materials in the record, including … affidavits[.]" Rule 56(c)(1). Affidavits "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Rule 56(c)(4).

The respondent is required to file a statement of facts, numbered separately, "to which the respondent contends a genuine issue exists to be tried." BLR 7056-1(a)(2). The

respondent "may not rest upon the mere allegations or denials in its pleadings" but "must set forth specific facts showing that there is a genuine issue for trial. A mere 'scintilla' of evidence supporting the opposing party's position will not suffice[.]" *Walker v. Darby*, 911 F.2d 1573, 1576-77 (11th Cir. 1990) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106. S. Ct. 2505, 2512 (1986)). Any material facts not specifically controverted by the respondent are deemed admitted. BLR 7056-1(a)(2).

The Court will only grant summary judgment when the evidence, viewed in the light most favorable to the nonmoving party, shows no genuine dispute of material fact. *Tippens v. Celotex Corp.*, 805 F.2d 949, 953 (11th Cir. 1986). A fact is material if it "might affect the outcome of the suit under the governing law …." *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510. A dispute of material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* At the summary judgment stage the Court "'must not resolve factual disputes by weighing conflicting evidence[.]'" *Tippens*, 805 F.2d at 953 (*quoting Lane v. Celotex Corp.*, 782 F.2d 1526, 1528 (11th Cir. 1986)). Further, "the court may consider any admissible facts and disregard any inadmissible statements occurring in the same affidavit." *Devan v. Zamoiski Southeast, Inc. (In re Merry-Go-Round Enter., Inc.)*, 272 B.R. 140, 145 (Bankr. D. Md. 2000); *see also Peterson v. Board of Trustees of the Univ. of Ala.*, 644 F. App'x 951, 954 (11th Cir. 2016).

The standard for granting summary judgment is not affected by the filing of cross-motions for summary judgment. "The court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard." 10A C. Wright, A. Miller & M. Kane, Fed. Prac. & Proc., § 2720 at 335-36 (4th ed. Apr. 2019 update).

## II. Undisputed Material Facts

### A. Overview

The BANA Motion included a *Statement of Undisputed Facts in Support of Motion for Summary Judgment* ("BANA's Statement"). [Doc. 199-2]. Plaintiff did not file a separate statement responding to those facts Plaintiff contends are in dispute. Plaintiff's Motion included a *Statement of Undisputed Facts in Support of Plaintiff's Motion for Summary Judgment Against Bank of America, N.A., and The Bank of New York Mellon and in Opposition to Motion for Summary Judgment of Bank of America, N.A.* ("Pl's Statement"). [Doc. 208 at 32]. BANA filed a *Response to Plaintiff's Separate Statement of Undisputed Facts* ("BANA's Response"). [Doc. 213]. Because Plaintiff did not file a separate statement identifying disputed facts in BANA's Statement, all facts in BANA's Statement are deemed admitted for purposes of the BANA Motion.[1]

Additionally, BANA filed *Objections to Plaintiff's Evidence in Support of Cross-Motion for Summary Judgment and Opposition to Bank of America, N.A.'s Motion for Summary Judgment* (the "Objection") [Doc. 214] and Plaintiff filed a response thereto in which she contends the Objections are not properly presented to the Court and that she should be excused from responding to them because the Objections are vague, boilerplate, and unsupported. [Doc. 219]. Plaintiff did not expressly object to any of BANA's exhibits, other than to argue that the Bernal Declaration, as defined *infra* in Part II.C, makes an unsupported assertion that Plaintiff was in default on her mortgage loan at the time BANA initiated foreclosure proceedings against her residence. [Doc. 208 at 21 and n.9]. She argues further that BANA provided no evidence that it

---

[1] Notwithstanding Plaintiff's argument to the contrary [see Doc. 220 at 14], the Local Rules require a respondent to a motion for summary judgment to provide a "separate and concise statement of material facts … as to which the respondent contends a genuine issue exists to be tried." BLR 7056-1(a)(2). Plaintiff has merely set forth her own list of facts, without specifically identifying which, if any, of BANA's facts she disputes.

sent and that Plaintiff received the two mortgage statements BANA relies upon and that the two

statements are irrelevant and insufficient as a matter of law.[2] [Id. at 22].

### B. BANA's Evidentiary Objections

Plaintiff's Motion includes two declarations and a number of exhibits.[3] A list of

the materials to which BANA objects (objections in italics) are as follows:

- (A) Declaration of Shirley White-Lett in Support of Plaintiff's Motion
  ("Plaintiff's Declaration") [Doc. 208 at 66]; *BANA objects to statements of
  Ms. Brite in ¶ 1, 4, 5 as hearsay, to statements from websites in ¶ 17, 18 as
  hearsay, to Plaintiff's statements about the cause of her medical condition
  in ¶ 11-15, 29, 38-47 as improper expert opinion, and to statements about
  actions after November 2013 in ¶ 10-15, 19-22, 24-27, 30-37 as irrelevant*.
  The following exhibits are referenced in Plaintiff's Declaration:
  - (1) Declaration of Shirley White-Lett In Support of Her Motion for
    Sanctions, originally filed on March 22, 2021 ("Plaintiff's Prior
    Declaration") [Doc. 208 at 88]; *BANA objects to the statements in
    Plaintiff's Prior Declaration as hearsay*. Plaintiff's Prior Declaration
    references the following exhibits:
    - (c) Log of mortgage payments and associated checks from
      January 10, 2010 to March 2013 [Doc. 208 at 105]; *BANA
      objects as irrelevant and inadmissible hearsay with reference
      to its brief for further explanation*
    - (e) BANA mortgage statements from November 2012
      through March 2013 [Doc. 208 at 342]; *BANA objects
      because the documents are not complete*; Plaintiff filed a
      *Motion to Supplement the Record to Supply Missing Pages*
      [Doc. 221] as to these documents in which she explains that
      the missing pages were payment coupons that she returned
      with her payments and therefore, except for the March 2013
      statement, she does not have the missing pages. The Court
      granted the motion to supplement. [Doc. 229].
    - (f) December 4, 2012 letter from BANA, with check for
      $24.55 [Doc. 208 at 365]; *BANA objects because the exhibit
      contains handwritten notes that are hearsay*

---

[2] Plaintiff describes these documents as "two random letters" and does not identify them by exhibit number or other
citation to record. Despite this lack of specificity by Plaintiff, the Court assumes she is referring to mortgage statements
dated February 28, 2012 and September 27, 2012 because no other exhibits submitted by BANA, other than an October
25, 2013 letter about transfer of loan servicing, could be so described. *See infra* Part II.C.

[3] To the extent Plaintiff attempts to incorporate the entire record in this proceeding by reference [Doc. 208 at 33], the
Court need only consider those materials she provides citation to. Fed. R. Civ. P. 56(c)(1); BLR 7056-1(a)(3) ("All
documents and other record materials relied upon by a party moving for or opposing a motion for summary judgment
must be clearly identified for the Bankruptcy Court. Where appropriate, dates and specific page numbers must be
given.").

- (h) December 4, 2012 letter from BANA, with check for $24.55 [Doc. 208 at 370]; *BANA objects because the exhibit contains handwritten notes that are hearsay*
- (n) Document from Broker Solutions, Inc. [Doc. 208 at 385]; *BANA objects as irrelevant because it relates to actions taken after BANA transferred servicing of the Loan*

- (2) July 10, 2012 letter from BANA denying loan modification [Doc. 208 at 394] and January 14, 2010 letter from BANA with notice of intent to accelerate [Doc. 208 at 397]; *BANA objects due to lack of authentication and it includes handwritten notes that are hearsay*
- (3) Loan modification applications [Doc. 208 at 400]; *BANA objects due to lack of authentication and because the materials include a letter from Plaintiff to BANA that is hearsay*
- (4) Schedule J [Doc. 208 at 413]; *BANA objects because it includes Plaintiff's purported expenses, which are hearsay and because Plaintiff is not qualified to testify regarding the causation or amount of her damages*
- (5) 33 mortgage statements from SPS [Doc. 208 at 422]; *BANA objects due to lack of authentication and they are irrelevant because they are related to actions taken after BANA transferred the loan*
- (6) medical records regarding thoracic aortic aneurysm diagnosis [Doc. 208 at 186]; *BANA objects because medical records written by third parties are hearsay, they violate the rule of completeness because Plaintiff does not verify they are all the relevant medical records, and Plaintiff is not qualified to testify regarding the causation and amount of her damages*
- (7) July 21, 2017 letter from Shellpoint [Doc. 208 at 208]; *BANA objects due to lack of authentication and it is irrelevant because it is related to actions taken after BANA transferred the loan*
- (8) July 26, 2017 letter from Shellpoint [Doc. 208 at 212]; *BANA objects due to lack of authentication and it is irrelevant because it is related to actions taken after BANA transferred the loan*
- (9) Plaintiff's 1099s for 2014-2018 and other tax documents [Doc. 208 at 215]; *BANA objects because they include Plaintiff's purported wages which is hearsay and because Plaintiff is not qualified to testify regarding causation or amount of her damages*
- (10) Spreadsheet of medical costs [Doc. 208 at 270]; *BANA objects because the amounts listed are hearsay and because Plaintiff is not qualified to testify regarding causation or amount of her damages*
- (11) Motion filed in district court case [Doc. 208 at 272]; *BANA objects because the statements in the motion are hearsay and allegations are not evidence*

- (B) Declaration of Gregory Daniels [Doc. 208 at 296]; *BANA objects to statements by Plaintiff (¶ 4, 5, 7) as hearsay and to statements about the cause of Plaintiff's medical condition (¶ 10-12) as improper expert opinion*

6

BANA asks the Court to strike the material it has objected to. Plaintiff, relying on *The Courtland Company, Inc. v. Union Carbide Corp*., No. 2:18-cv-1230, 2021 WL 2110876, (S.D.W.V. May 25, 2021), argues that the objections are not properly presented because separate objections and motions to strike are not allowed under Rule 56. Plaintiff further argues that the objections are not well founded because they fail to explain why such facts cannot be presented in a form that would be admissible in evidence as opposed to being stated in a conclusory boilerplate fashion. Plaintiff asks the Court to strike BANA's objections and to relieve Plaintiff from responding to them.

Rule 56(c)(2) provides that "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). The advisory committee notes to the 2010 amendments to Rule 56 explain that "[t]he objection functions much as an objection at trial, adjusted for the pretrial setting. *The burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated*. There is no need to make a separate motion to strike." Fed. R. Civ. P. 56 (2010 advisory committee notes) (emphasis added). "The plain meaning of these provisions show that objecting to the admissibility of evidence supporting a summary judgment motion is now a part of summary judgment procedure, rather than a separate motion to be handled preliminarily." *Campbell v. Shinseki*, 546 F. App'x 874, 879 (11th Cir. 2013).

As an initial matter, Plaintiff objects to the method BANA used to raise its Objection, which she characterizes as an improper motion to strike and an attempt to circumvent page limits. As the court in *Courtland Company* explained, Rule 56 does "not specify any procedural method for raising such objections." 2021 WL 2110876 at *3. The court noted further that its local rules "page limitation applies expressly to memoranda filed in conjunction with

7

motions, not to objections." *Id.* at *4. The court went on to direct the parties to "separately file"

their Rule 56(c)(2) objections. *Id.* at *4. Here, BANA filed a response to Plaintiff's statement of

material facts, in which it noted evidentiary objections to certain facts asserted by Plaintiff. [Doc.

213]. BANA also filed a brief in response to Plaintiff's Motion. [Doc. 212]. The Objection was a

separate 8-page filing that provided more detail about the specific materials to which BANA

objected and the basis for those objections. The Court finds this procedure to be consistent with

Rule 56(c) and it is not a basis to strike the Objection. The fact that the Objection included a request

to strike the objectionable materials does not change the result. Furthermore, by filing the

Objection as a separate document rather than incorporating it within the response brief, BANA did

not circumvent any page limits. Under BLR 7007-1(e) response briefs are limited to 25 pages, and

the substance of BANA's response brief and Objections were a combined 23 pages.[4] Additionally,

similar to the local rules in *Courtland Company*, the page limits in this Court's local rules apply

to "briefs." *See* BLR 7007-1(a), (e).

> Plaintiff also argues the Objection
>
> assert[s] numerous vaguely stated objections to a number of exhibits
> and then proceeded to assert, in addition thereto and in chart form,
> another 25 or more boilerplate, one-word and otherwise
> unsupported objections to nearly every exhibit Plaintiff attached in
> support of her motion and her opposition. … Such practices amount
> to an attempt to circumvent page limitations, confound and confuse
> Plaintiff as to what specifically she is expected to respond to
> regarding such objections, and in fact makes it impossible to
> effectively respond being forced into a guessing game.

[Doc. 219 at 2]. Plaintiff contends the *Courtland Company* case precludes such objections. The

Court disagrees with Plaintiff's characterization of the Objection.

---

[4] Reply briefs are limited to 15 pages. BLR 7007-1(e). BANA's brief was titled as both a response to Plaintiff's Motion and a reply in support of BANA's Motion. Because it included the response, BANA was entitled to use the full 25 pages, which is more economical than requiring BANA to file a separate reply.

The Objection identifies specific exhibits, specific portions of exhibits, and identifies specific objections to those exhibits. The objections are limited and targeted. For example, where exhibits include handwritten notes, only the notes are objected to as hearsay, and then the objection is limited to the extent that the notes are offered for the truth of the matter asserted therein. [See, e.g., Doc. 214 at 2]. The chart at the end of the Objection is not a list of additional objections but is largely a summary of the objections already asserted. The Objection is neither vague nor boilerplate, and the chart at the end of the Objection eliminates any guessing game about the objections asserted and their grounds. Therefore, the Court finds no basis to strike the Objection.

Plaintiff also argues that the Objection is deficient because it fails to show that her materials cannot be presented in an admissible form.[5] BANA is not required to do so. Rather, once BANA has raised an objection it is Plaintiff's burden, as the proponent of the evidence, "'to show that the material is admissible as presented or to explain the admissible form that is anticipated.'" *Campbell*, 546 F. App'x at 879 (quoting Fed. R. Civ. P. 56, 2010 advisory committee's note). Nevertheless, the Court will not require Plaintiff to respond to the Objection because as explained herein, even if the Court overrules the Objection and considers all facts and documents offered by Plaintiff that are material to her claims, she cannot show she is entitled to summary judgment.

### C. Plaintiff's Evidentiary Objections

BANA presented six documents in support of BANA's Motion: Declaration of Amy Bernal (the "Bernal Declaration") [Doc. 199-3]; security deed for the Property, as defined *infra* in Part II. D, executed on May 17, 2005 [Doc. 199-4, BANA Ex. 1]; assignment of security deed executed on April 1, 2013 [Doc. 199-5, BANA Ex. 2]; notice to Plaintiff dated October 25,

---

[5] The Court notes that Plaintiff did not follow this standard when presenting her objections to BANA's evidence.

2013 about the transfer of servicing of the Loan to Select Portfolio Servicing, Inc. ("SPS") [Doc. 199-6; BANA Ex. 3]; mortgage statement dated February 28, 2012 (the "February 2012 Statement") [Doc. 199-7, BANA Ex. 4]; and mortgage statement dated September 27, 2012 (the "September 2012 Statement") [Doc. 199-8, BANA Ex. 5]. Additionally, in response to Plaintiff's Motion, BANA presented the following documents with a request that the Court take judicial notice of them: Second Amended Complaint filed in Case No. 13-1-4212-34 in the Superior Court of Cobb County, Georgia (the "Cobb County Case") [Doc. 216-1, BANA Ex. A]; Order Granting Defendants' Motion to Dismiss in the Cobb County Case [Doc. 216-2, BANA Ex. B]; Remittitur filed in Case No. A15A0815 in the Georgia Court of Appeals [Doc. 216-3, BANA Ex. C]; Certificate of Merger filed with the Texas Secretary of State, dated June 28, 2011 [Doc. 216-4, BANA Ex. D]; and a letter from the Comptroller of Currency, dated July 5, 2011 [Doc. 216-5; BANA Ex. E].

With respect to the February 2012 Statement and the September 2012 Statement, Plaintiff argues they are irrelevant because her case is based on later mortgage statements that she contends independently violated the discharge injunction. [Doc. 208 at 22]. This objection presumes that each communication is always considered in isolation from the others. However, the law does not require such an approach. *See In re Zine*, 521 B.R. 31, 38 (Bankr. D. Mass. 2014) ("alleged violative acts need not be viewed in isolation, but also should be considered under the totality of the circumstances to discern whether they evidence a pattern of coercive behavior"); *see also In re Cantrell*, 605 B.R. 841, 856-57 (Bankr. W.D. Mich. 2019) ("After analyzing the BOA statements in light of all the facts and circumstances" the court concluded that the first post-discharge statement violated the discharge injunction but subsequent statements did not); *Mele v. Bank of Am. Home Loans (In re Mele)*, 486 B.R. 546, 556 (Bankr. N.D. Ga. 2013) (Ellis-Monro,

J.) ("[T]his Court will review each of the forms and letters individually and then assess the overall effect of the documents to determine if Defendant was seeking to collect a debt from Plaintiff personally."). Therefore, the Court cannot conclude that the February 2012 and September 2012 Statements are irrelevant.

Plaintiff also argues that the statements are insufficient and that BANA has not proven that it sent or she received the statements. [Doc. 208 at 22]. Plaintiff does not cite any Rule of Evidence in support of this objection, and it is unclear whether this is an extension of her relevance objection—i.e., that the statements are not relevant if she never received them. However, in the Bernal Declaration, Bernal states that she knows BANA's "internal processes and procedures" and that she is "familiar with BANA's record keeping processes." [Doc. 199-3 ¶ 4]. Bernal further states that "BANA informed Plaintiff, in multiple communications, that BANA was not seeking any personal liability against Plaintiff" and cited to the two statements. [Doc. 199-3 ¶ 10]. This statement is sufficient to show that BANA asserts that it sent the statements to Plaintiff. It is BANA's conduct and the objective effect of that conduct that is relevant to whether the discharge injunction was violated, *see infra* note 17, even if Plaintiff never received the two statements.[6]

Plaintiff has also argued, without citing to any supporting authority, that BANA must prove a default at the time of its attempted foreclosure and that the Bernal Declaration is insufficient to do so. [Doc. 208 at 21 & n.9]. On summary judgment, the Court does not weigh evidence but merely determines whether any disputes as to material fact exist. *Anderson*, 477 U.S. at 249-50, 106 S. Ct. at 2511. In the Bernal Declaration, Bernal states that she has "personally reviewed the BANA Business Records relating to the statements I make herein." [Doc. 199-3 ¶ 5].

---

[6] Plaintiff has not denied receiving the February 2012 and September 2012 Statements.

This is sufficient to show that BANA's business records reflect a default, which is deemed undisputed for purposes of the BANA Motion. Based on the foregoing, Plaintiff's objections are not well-founded and the Court will not exclude the February 2012 and September 2012 Statements or any portion of the Bernal Declaration for purposes of summary judgment.

### D. Undisputed Material Facts

The Court finds the following facts to be undisputed based on BANA's Statement, Pl's Statement, BANA's Response, exhibits filed by the parties, other materials in the record, and matters of which the Court may take judicial notice. Because the claims at issue are limited to whether BANA violated the discharge injunction and whether BONYM is vicariously liable for such violations, any facts regarding the conduct of third parties, including SPS and Shellpoint Mortgage Servicing ("Shellpoint") are not undisputed *material* facts and are not included in these findings. *See Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510 ("[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted."). Furthermore, speculation, characterizations, argument, and opinions, which are abundant in Pl's Statement, are not considered as facts. Conclusions asserted as fact are also disregarded. BLR 7056-1(a)(1). Certain of the facts are not material, as discussed later, but are included here to provide context for arguments made by the parties.

In May 2005, Plaintiff executed a $636,000 adjustable rate note (the "Loan") and a security deed (the "Deed"), which pledged property located at 456 North Saint Mary's Lane, Marietta, Georgia (the "Property") as collateral for the Loan. [BANA's Statement ¶ 1; Pl's Statement ¶ 1; BANA's Response ¶ 1]. On April 1, 2013, Mortgage Electronic Registration

Systems Inc., as grantee under the Deed, assigned the Deed to BONYM, which acted as trustee for a securitized mortgage trust. [BANA's Statement ¶ 5].

On January 19, 2010, Plaintiff filed a Chapter 7 bankruptcy petition, commencing case No. 10-61451 in the Bankruptcy Court for the Northern District of Georgia (the "Main Case"). [BANA's Statement ¶ 2; Pl's Statement ¶ 1; BANA's Response ¶ 1]. Plaintiff listed the Property as her principal residence. [BANA's Statement ¶ 4]. Also as part of the filing, Plaintiff submitted Schedule D in which she listed BAC Homes Loans ("BAC") as the "secured creditor" as she then supposed the meaning of the term to be. [Pl's Statement ¶ 1; BANA's Response ¶ 1]. BAC was actually a subservicer of BANA, who served as the master servicer for Mortgage-backed CWALT, Inc. Alternative Loan Trust 2005-27, Mortgage Pass-Through Certificates Series 2005-27 (the "Loan Trust") that purports to own the Loan. [Pl's Statement ¶ 2; BANA's Response ¶ 2[7]].

BANA was the master servicer of the Loan Trust from 2008 to present, while BONYM served as the Trustee for the Loan Trust. [Pl's Statement ¶ 2; BANA's Response ¶ 2]. Subservicers were servicing the Loan as an agent for BANA. [Pl's Statement ¶ 2; BANA's Response ¶ 2]. Subservicers and the master servicer also operate as agents of the Trustee, BONYM, and are given powers of attorney by BONYM authorizing them to act as its agent and attorney-in-fact in carrying out servicing of loans. [Pl's Statement ¶ 3; BANA's Response ¶ 3]. From February 25, 2012 through November 16, 2013, BANA was the servicer on the Loan. [BANA's Statement ¶ 6]. During this time BANA records reflect that the Property was Plaintiff's principal residence. [Id.].

---

[7] BANA does not contest this fact but asserts that BAC merged into BANA on July 1, 2011, and asks the Court to take judicial notice of the Certificate of Merger filed with the Texas Secretary of State and a letter from the Office of the Comptroller of the Currency certifying the merger. [BANA's Response ¶ 2; Doc 216 BANA Exs. D, E].

Upon filing her bankruptcy papers, Plaintiff submitted a Statement of Intention seeking to have the Loan reaffirmed. [Pl's Statement ¶ 4; BANA's Response ¶ 4]. Within a week after filing the Statement of Intention, Plaintiff contacted servicer BAC by phone to inform it of the bankruptcy filing and of Plaintiff's wish to reaffirm the Loan if possible but only if a reduced monthly payment was possible by modifying the Loan. [Pl's Statement ¶ 4, 30; BANA's Response ¶ 4, 30]. The representative Plaintiff spoke to, Valerie Brite,[8] remained Plaintiff's "relationship manager" for nearly two years which spanned most of the time her bankruptcy case was pending. [Pl's Statement ¶ 30; BANA's Response ¶ 30].

The next month after filing bankruptcy, in February 2010, Plaintiff received a mortgage statement stating the amount due and a due date, and she made the February payment and subsequent payments to avoid collection action. [Pl's Statement ¶ 5, 31; BANA's Response ¶ 5, 31]. During such time, Plaintiff kept attempting to determine any developments regarding the reaffirmation and modification. [Pl's Statement ¶ 5, 31; BANA's Response ¶ 5, 31]. The BAC representative responded that she had not received any word on modification but that Plaintiff should continue making payments [Pl's Statement ¶ 6; BANA's Response ¶ 6]. With respect to the reaffirmation, Plaintiff was told to apply for a loan modification, which she did in 2010. [Pl's Statement ¶ 31; BANA's Response ¶ 31].[9]

---

[8] Plaintiff asserts that Ms. Brite made it clear to her that she must continue making payments on the Loan until a decision on modification and reaffirmation was reached and that BAC would initiate a collection action against Plaintiff if she failed to make payments and would also initiate foreclosure. [Pl's Statement ¶ 4, 30]. But that is not a fact; it is Plaintiff's characterization of the conversation and the conclusions she drew from it.

[9] In paragraph 5 of Plaintiff's Statement, Plaintiff states that after making the February 2010 payment, she "attempted to discern from the servicer … any development regarding the requested modification of her loan." In paragraph 31, Plaintiff states that during the time she made the February 2010 payment and subsequent payments she "kept attempting to determine any developments regarding the reaffirmation" and that she applied for a loan modification in 2012. In paragraph 36, Plaintiff says the 2012 application for loan modification was "the last of several she had submitted."

Plaintiff's plan at the time she filed bankruptcy was to obtain another more affordable home loan, but she needed to know and be first assured that she would not be held personally liable for the current Loan. [Pl's Statement ¶ 7, 32; BANA's Response ¶ 7, 32]. The Loan was more than Plaintiff could afford at nearly $4,000 per month. [Pl's Statement ¶ 32; BANA's Response ¶ 32]. Plaintiff wanted and needed to know before she continued making payments on the Loan what the status of her loan would be in this regard. [Pl's Statement ¶ 7; BANA's Response ¶ 7]. Plaintiff continued to make her monthly mortgage payments to BANA each month after filing bankruptcy. [Pl's Statement ¶ 8, 34; BANA's Response ¶ 8, 34]. Plaintiff wanted to be sure that she did not do anything that might result in her becoming the subject of a collection action for the mortgage debt or that might have a negative impact on any future ability to obtain a mortgage loan. [Id.].

On October 27, 2010, BAC, on behalf of BONYM, filed a motion for relief from stay in the bankruptcy case. [Pl's Statement ¶ 9; BANA's Response ¶ 9]. The motion was later withdrawn on January 21, 2011. [Id.].

On February 25, 2011, the Bankruptcy Court entered an order granting a discharge, which was served on February 28, 2011 and indicates service on BAC. [BANA's Statement ¶ 3; Pl's Statement ¶ 10; BANA's Response ¶ 10]. BAC merged into BANA on July 1, 2011. [Doc. 216-4, BANA Ex. D]. During the period of February 25, 2011 to November 16, 2013, BANA informed Plaintiff in multiple communications that BANA was not seeking any personal liability against Plaintiff, including the February 2012 Statement, the September 2012 Statement, and a letter notifying Plaintiff of the initiation of foreclosure proceedings. [BANA's Statement ¶ 8, 10].

The loan modification process continued for the entire pendency of Plaintiff's bankruptcy case. [Pl's Statement ¶ 35; BANA's Response ¶ 35]. Plaintiff received a letter dated

July 10, 2012, which was 10 days before the bankruptcy case closed on July 20, 2012. [Id.]. The

letter stated that Plaintiff did not qualify for any loan modification under consideration but that

other options might be available. [Id.] The letter also stated:

> Important Information about foreclosure proceedings
>
> Please call us as soon as possible to determine if you qualify for one of the options listed above. We are now returning your loan to normal collection activity, which could include referral to foreclosure and a foreclosure sale. Do not ignore any legal notices about your home. We may be able to postpone foreclosure proceedings; however, foreclosure postponement is not guaranteed and you will need to respond to all notices to protect your legal rights.
>
> If you have any questions about the collection or foreclosure process, please call us. If you do not understand the legal consequences of foreclosure, we encourage you to contact an attorney or housing counselor for assistance.

[Id.].

After the discharge and the bankruptcy case had closed on July 20, 2012, BANA

sent Plaintiff a monthly mortgage statement for November 2012 with the following language:

> If we do not hear from you immediately, we will have no alternative but to take appropriate action to protect the interest of the Noteholder in your property. This action may include returning payments that are less than the total payments due to bring loan current.
>
> Please give this matter your most urgent attention. Please send the amount due with the coupon below immediately. Additional amounts may become past due.
>
> Bank of America, N.A. will proceed with collection action until your account is brought fully current, and you will be responsible for all costs incurred in this process to the full extent permitted by law.

[Pl's Statement ¶ 11; BANA's Response ¶ 11; Doc. 208 at 360, Pl. Ex. A.1.E]. Similar statements

with identical language would follow consecutively for the months of December 2012 through

March 2013. [Pl's Statement ¶ 12; BANA's Response ¶ 12]. After receiving consecutive mortgage statements that contained no communication that Plaintiff was not personally responsible for payment due to her discharge, Plaintiff saw no need to examine every mortgage statement she received as the habit of payment had already been formed. [Pl's Statement ¶ 37; BANA's Response ¶ 37].

Plaintiff made a payment in April 2012 in the amount of $3,951.54. [Pl's Statement ¶ 13; BANA's Response ¶ 13]. BANA sent Plaintiff a letter dated December 12, 2012 that stated as follows: "Your monthly payment due 04/01/2012 for your loan is $3591.34. We received a total of $24.55 to be applied to your loan; however, this amount does not represent a full monthly payment. We are unable to accept partial payments on your account." [Id.]. In the next paragraph, the letter stated: "Since we have not received the remining amount of $3926.79 needed to complete your total monthly payment, we are returning these funds to you in the enclosed check." [Pl's Statement ¶ 14; BANA's Response ¶ 14]. Plaintiff's banking records show, by way of a copy of the canceled check, that BANA received Plaintiff's check in the amount of $3,951.34. [Pl's Statement ¶ 14; BANA's Response ¶ 14]. The following month, Plaintiff made a payment by check in the amount of $3,951.34. [Pl's Statement ¶ 16; BANA's Response ¶ 16.] This check was cashed by BANA. [Id.]. BANA sent Plaintiff a letter dated January 15, 2013 that stated:

> Your monthly payment due 05/01/2012 for your loan is $3951.34. We received a total of $33.01 to be applied to your loan; however, this amount does not represent a full monthly payment. We are unable to accept partial payments on your account.
>
> Since we have not received the remaining amount of $3926.79 needed to complete your total monthly payment, we are returning these funds to you in the enclosed check.

[Id.]. The enclosed check issued by BANA was for $33.01. [Pl's Statement ¶ 17; BANA's Response ¶ 17].

At this point, Plaintiff began to perceive that BANA was engaging in an attempt to create the existence of a default so as to initiate foreclosure. [Id.]. Nevertheless, Plaintiff continued to make numerous mortgage payments to BANA. [Pl's Statement ¶ 19; BANA's Response ¶ 19]. Plaintiff became very nervous and anxious to the point she could not sleep. [Pl's Statement ¶ 25; BANA's Response ¶ 25]. She was worried about not having a place to stay and she had no more savings to make another home purchase or even to move to a rental. [Id.]. Plaintiff felt she had no choice but to pay the monthly payments. [Id.]. In order to make the monthly mortgage payments, Plaintiff had to drastically reduce expenditures including basic needs, like eating cheaper and less healthy foods and eliminating entertainment. [Pl's Statement ¶ 26, 37; BANA's Response ¶ 26, 37]. Plaintiff was very unhappy, worried, and angry during this time and by early 2013 was beginning to suffer regular headaches. [Id.]. While she was undergoing significant emotional distress and anxiety during this time, which continued the following year, Plaintiff continued having headaches and also began to feel tired over the period of 2013 to 2014. [Pl's Statement ¶ 38; BANA's Response ¶ 38]. Plaintiff had not yet been diagnosed with any sickness and had no medical history of any sort up until this time. [Id.].

The total number of mortgage payments made on the Loan since January 10, 2010 through and including March 2013 is $147,469.18. [Pl's Statement ¶ 20; BANA's Response ¶ 20]. Because Plaintiff was in default on the Loan[10], BANA sought to enforce in rem rights in the property through foreclosure and retained the firm of Shuping, Morse & Ross, LLP to conduct the foreclosure proceedings. [BANA's Statement ¶ 9]. Plaintiff received a letter dated May 1, 2013 from attorneys Shuping, Morse & Ross, LLP representing BANA as servicer for BONYM initiating a foreclosure. [Pl's Statement ¶ 18; BANA's Response ¶ 18; BANA's Statement ¶ 10].

---

[10] This fact is undisputed with respect to the BANA Motion.

In November 2013, Plaintiff received notice from SPS that it would be the new servicer. [Pl's Statement ¶ 22; BANA's Response ¶ 22; BANA's Statement ¶ 7]. After SPS began servicing the Loan, SPS sent Plaintiff monthly mortgage statements over a three-year period that the Court determined violated the discharge injunction. [Pl's Statement ¶ 39; BANA's Response ¶ 39]. This caused Plaintiff's stress and anxiety to continue and took a toll on Plaintiff's health. [Pl's Statement ¶ 40; BANA's Response ¶ 40]. By early 2015, Plaintiff's headaches and ability to breathe worsened, and she began experiencing chest pains and dizziness for the first time. [Pl's Statement ¶ 43; BANA's Response ¶ 43].

Plaintiff remains financially unable to purchase alternative housing to this day because her credit history reflects the foreclosure initiation and responsibility for the unpaid mortgage. [Pl's Statement ¶ 27; BANA's Response ¶ 27]. BONYM has continued to file foreclosures with the latest initiation being in late 2018. [Pl's Statement ¶ 28; BANA's Response ¶ 28]. When Plaintiff applied for a loan she was turned down because the lender identified the multiple foreclosures initiated by Defendants and noted that there were pending and unresolved foreclosures showing up in its credit investigation. [Id.]. For nearly 10 years, as a result of the foreclosures that appeared of record, Plaintiff could not finance another home. [Pl's Statement ¶ 29; BANA's Response ¶ 29]. As a result, Plaintiff has been in a constant state of worry and unhappiness and struggles sometimes to see a reason to keep going. [Pl's Statement ¶ 29; BANA's Response ¶ 29].

Plaintiff earned income by operating a subcontracting/outsourcing customer service and call center for various business and conducted sales and marketing for some of these clients. [Pl's Statement ¶ 53; BANA's Response ¶ 53]. There was no limit as to the number of hours Plaintiff could work for any such business, and she hired employees periodically to make calls and

would earn a percentage of service fees generated from their work. [Id.]. Through 2011, Plaintiff

had been working an average of 40 hours a week, and often more, as vice president of a debt

collection firm. [Pl's Statement ¶ 44; BANA's Response ¶ 44]. There were no medical issues

affecting Plaintiff's life or ability to work prior to the above experiences; Plaintiff enjoyed life and

the ability to engage in exercise and other physical activities without limitation. [Id.].

   In a related adversary proceeding commenced by Plaintiff [AP 20-6031, the "SPS

AP"], Plaintiff stated the following with regard to the timing of the onset of damages:

> 18. *By late 2014 and early 2015, Plaintiff had begun having bouts
> of dizziness, shortness of breath and chest pains*. Feeling alarmed
> and afraid regarding these physical events, Plaintiff immediately
> sought to be evaluated by her physician. Plaintiff's physician
> discovered that she had developed a thoracic aortic aneurysm which
> was causing the symptoms she had been experiencing.
>
> 19. *Plaintiff had never been sick prior to that time* and had no family
> history of any heart disease or hypertension. As a result of this
> diagnosis, which was based in part upon a transthoracic
> echocardiograph report, Plaintiff had been prescribed several
> medications.

[BANA's Statement ¶ 12 & AP 20-6031 Doc 1 ¶ 18, 19 (emphasis added)].

   Plaintiff decided to seek medical attention in or around March 2015, at which time

she was diagnosed with a thoracic-aortic-aneurysm. [Pl's Statement ¶ 45; BANA's Response ¶

45]. As a result of that diagnosis and per instructions from her treating physician and the

medication he prescribed, Plaintiff felt physically unable to work and did not attempt to work in

2015 but instead planned to rest and recover. [Id.]. Plaintiff had been informed by her treating

physician that the medication prescribed will likely be necessary for the rest of her life. [Pl's

Statement ¶ 46; BANA's Response ¶ 46].

   Since her diagnosis, Plaintiff began to do some research as to the management of

her condition, reading articles on medical websites. [Pl's Statement ¶ 47-48; BANA's Response ¶

47-48]. This information placed Plaintiff in a state of fear that her quality of life may never be the same and that she could lose her life. [Pl's Statement ¶ 49; BANA's Response ¶ 49]. Plaintiff suffered and continues to suffer despair, depression, and fear for these reasons. [Pl's Statement ¶ 49; BANA's Response ¶ 49].

During the months that followed her March 2015 diagnosis, Plaintiff attempted to follow all the instructions and to heed all the warnings from her physician and the information she learned from her own research. [Pl's Statement ¶ 50; BANA's Response ¶ 50]. Plaintiff reduced the hours she had been working or intended to work during 2015 and 2016 and took her medication as directed. [Id.].

After servicing of the Loan was transferred to Shellpoint in December 2016, Plaintiff's emotional stress was reduced, and having continually taken the medication as prescribed, the adverse symptoms of her condition stabilized, and Plaintiff was able to return to working more hours. [Pl's Statement ¶ 51-52; BANA's Response ¶ 51-52]. Plaintiff made arrangements to adjust the level of customer service calls her business would handle based on the expectation that she would be returning to work as her condition improved or stabilized over 2016 and early 2017. [Pl's Statement ¶ 54; BANA's Response ¶ 54]. Plaintiff began to work 28-30 hours per week and increased her service call volume and was on track to earn $1,330 per month. [Pl's Statement ¶ 54, 61; BANA's Response ¶ 54, 61]. Plaintiff became angry and frustrated again about the circumstances of her mortgage and perceived collection efforts in 2017 and experienced a relapse that caused her to stop working completely. [Pl's Statement ¶ 59; BANA's Response ¶ 59]. After a few months of rest, Plaintiff began working sporadically during 2018 and only earned $4,500 plus $1,500 in commissions and fees. [Pl's Statement ¶ 60; BANA's Response ¶ 60]. From 2019 to present, due to an increase in hourly pay, Plaintiff's 15-hour work week now generates

approximately $1,020 per month or $12,240 annually, not including bonuses. [Pl's Statement ¶ 62; BANA's Response ¶ 62]. Plaintiff's medical-related expenditures average $5,000 per year. [Pl's Statement ¶ 68; BANA Response ¶ 68]. Plaintiff will incur these costs for the remainder of her life according to her physician. [Id.]. From January 10, 2010 through March 2013, Plaintiff made a total of $147,469.18 in mortgage payments. [Pl's Statement ¶ 20, 24; BANA's Response ¶ 20, 24].

Plaintiff commenced this proceeding in December 2020. [BANA's Statement ¶ 11]. BANA cannot verify as to whether all records that BANA originally maintained regarding the Loan still exist with BANA because the servicing transferred to SPS on November 16, 2013. [BANA's Statement ¶ 13].

## III. Legal Analysis

### A. New Claims by Plaintiff

The first half of Plaintiff's Motion seeks summary judgment against BANA and BONYM for violations of the automatic stay under 11 U.S.C. § 362(a), which prohibits collection of a prepetition debt, among other things. At no time has Plaintiff asserted a claim for violation of the automatic stay in this proceeding. Such a claim was not included in Plaintiff's original complaint [Doc. 1], in her amended complaint [Doc. 9], or any subsequent proposed amendments, [Docs. 133, 136, 137, 153, 200, 224], although her most recent proposed amendments seem to assume that she has asserted such a claim. [Doc. 224]. Plaintiff contends that she alleged facts that support a claim for violation of the automatic stay and that she is not required to do more than that.

Federal Rule of Civil Procedure 8(a), made applicable in adversary proceedings by Federal Rule of Bankruptcy Procedure 7008, provides that to state a claim for relief, a pleading must contain: "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). The Court must construe pleadings "so as to do justice." *Id.* 8(e).

While the pleadings of pro se plaintiffs are liberally construed, they must comply with the Rules

of Procedure. *Albra v. Advan, Inc.*, 490 F.3d 826, 829 (11th Cir. 2007). The purpose of Rule 8 is

to "give the defendant fair notice of what the … claim is and the grounds upon which it rests." *Bell*

*Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964 (2007) (internal quotation

marks and citations omitted).

      Here, Plaintiff identified five claims in the title to her Amended Complaint, none

of which included violation of the automatic stay: "Plaintiff's Amended Rule 7001 and 3007(b)

Adversary Proceeding for the Following Purposes: (1) To Determine Validity and Secured Status

of a Lien[,] (2) Obtain Declaratory and Injunctive Relief as to Validity and Enforceability of a

Debt and Security[,] (3) Avoidance of Unperfected Lien Under Section 544[,] (4) Objections to

Proof of Claim[, and] (5) Contempt Sanctions for Violations of Discharge Injunction." [Doc. 9].

Headings in the Amended Complaint include "Declaratory Judgment as to BONYM,"

"Declaratory Judgment as to Bank of America, N.A.," and "Sanctions Against Bank of America

and BONYM for Violations of Discharge Injunction." [Doc. 9 at 35, 43]. The prayer for relief in

the Amended Complaint is cut off mid-sentence, providing in its entirety, "WHEREFORE Plaintiff

seeks that the Court determine as follows: 1. That no Defendant validly holds the Note at issue

herein and has no right". [Doc. 9 at 51].

      Plaintiff contends headings in a complaint are not determinative of the claims

asserted therein and that she pleaded an automatic stay violation because her Amended Complaint

alleged that she listed BANA's predecessor as a secured creditor and, within a week of filing a

statement of intention, she contacted her mortgage servicer to inform it of her bankruptcy filing

and her intent to reaffirm the mortgage loan. Plaintiff alleged that "[t]he representative with whom

Plaintiff spoke could not confirm whether or when her loan would be reaffirmed but made clear

that she must continue making her mortgage payments in any case until a decision on reaffirmation is reached and that BAC would initiate a collection action against her if she failed to make [her] payments." [Amended Complaint, Doc. 9 ¶ 118]. Plaintiff also alleged that she received a mortgage statement the month after she filed her bankruptcy case with an amount due and a due date and that she made the payment. Plaintiff further alleged that she made the payments out of fear of a collection action and that she suffered emotional distress upon learning that she was never required to make the payments.[11] [Doc. 220 at 3-4 (citing Amended Complaint, Doc. 9 ¶ 116, 118-120, 122-123, 137)].

Plaintiff cites to *Phillips v. Girdich*, 408 F.3d 124, 130 (2d Cir. 2005), in support of her argument that she need not identify a claim for stay violation so long as she alleges facts regarding a stay violation. The case does not stand for the proposition that pro se plaintiffs are excused from identifying the claims they are asserting or that pro se plaintiffs may identify some claims while leaving others to be deduced by the opposing party and the court.[12] Instead, after determining that the pro se plaintiff's complaint "contained three clearly enumerated claims," the court in *Phillips* found that the factual allegations supported at least some of those claims and explained that a pro se plaintiff did not have to "plead the legal theory, facts, or elements underlying his claim." *Id.* at 129, 130.

Here, Plaintiff's pleadings do not clearly enumerate a claim for violation of the automatic stay and are not adequate to provide notice of such a claim to BANA or BONYM. This is evident from the prior motions and orders in this proceeding. BANA filed a motion to dismiss Plaintiff's claims against it [Doc. 48], and BONYM filed a motion to dismiss and motion for

---

[11] All these allegations were presented under the heading "SANCTIONS AGAINST BANK OF AMERICA AND BONYM FOR VIOLATIONS OF THE DISCHARGE INJUNCTION." [Doc. 9 at 43].
[12] The plaintiff in *Phillips* was incarcerated and used a form complaint made available to all prisoners for alleging civil rights violations under 42 U.S.C. § 1983. 408 F.3d at 126.

judgment on the pleadings as to the claims against it [Doc. 102]. In litigating and deciding those motions, none of BANA, BONYM, Plaintiff, or the Court raised or recognized a claim for violation of the automatic stay[13]. Plaintiff cannot use a summary judgment motion to seek relief outside the scope of the pleadings or to raise new claims. There is no basis for such relief and Plaintiff's Motion will be denied to the extent she seeks a judgment for violation of the automatic stay. *See Gilmour v. Gates, McDonald and Co*., 382 F.3d 1312, 1314-15 (11th Cir. 2004) ("Liberal pleading does not require that, at the summary judgment stage, defendants must infer all possible claims that could arise out of facts set forth in the complaint.").

In Plaintiff's Motion, she argues that BANA's "foreclosure efforts also negatively impacted her credit and ability to obtain another loan …." [Doc. 208 at 19]. It appears that she is arguing this as a component of her damages rather than as an independent claim, and the Court does not construe Plaintiff's filings as asserting a separate claim for injury to her credit.

**B. Violation of the Discharge Injunction**

**1. Applicable Law and Contentions of the Parties**

A Chapter 7 discharge "discharges the debtor from all debts that arose before the date of the order for relief[.]" 11 U.S.C. § 727(b). The discharge "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any [discharged] debt as a personal liability of the debtor[.]" 11 U.S.C. § 524(a)(2). This section makes clear that personal liability is discharged when an individual receives a Chapter 7 discharge. But, it is equally clear that a Chapter 7 discharge does not avoid

---

[13] The Court notes one reference to violation of the automatic stay in Plaintiff's Response to BANA's Motion to Dismiss. [Doc. 57 at 23]. There Plaintiff argues that BANA is not prejudiced by having to defend multiple suits and states that even assuming Plaintiff should have known about a violation of the automatic stay immediately BANA is not prejudiced. This is the only reference to the automatic stay and in continuing the argument Plaintiff refers to the discharge injunction not the automatic stay such that it is not clear that she intended to reference the automatic stay rather than the discharge injunction and does not provide notice of a claim.

or otherwise affect a lien against property of the debtor. *Sellers v. Rushmore Loan Mgmt Servs.,* *LLC*, 941 F.3d 1031, 1035 (11th Cir. 2019); *Mele v. Bank of Am. Home Loans (In re Mele)*, 486 B.R. 546, 555 (Bankr. N.D. Ga. 2013) (Ellis-Monro, J.) (citing *Long v. Bullard*, 117 U.S. 617, 620-21, 6 S. Ct. 917, 918 (1886)). Additionally, the discharge injunction does not apply to "an act by a creditor that is the holder of a secured claim, if—(1) such creditor retains a security interest in real property that is the principal residence of the debtor; (2) such act is in the ordinary course of business between the creditor and the debtor; and (3) such act is limited to seeking or obtaining periodic payments associated with a valid security interest in lieu of pursuit of in rem relief to enforce the lien." 11 U.S.C. § 524(j).

The test for violation of the discharge injunction is "'whether the objective effect of the creditor's action is to pressure a debtor to repay a discharged debt.'" *Roth v. Nationstar Mortg., LLC (In re Roth)*, 935 F.3d 1270, 1276 (11th Cir. 2019) (quoting *GreenPoint Credit, LLC v. McLean (In re McLean)*, 794 F.3d 1313, 1322, (11th Cir. 2015)). A creditor who violates the discharge injunction may be held in civil contempt under 11 U.S.C. § 105(a)[14] "if there is *no fair ground of doubt* as to whether the [discharge] order barred the creditor's conduct. In other words, civil contempt may be appropriate if there is no objectively reasonable basis for concluding that the creditor's conduct might be lawful." *Taggart v. Lorenzen*, 139 S. Ct. 1795, 1799, 1801 (2019) (emphasis in original); *Roth*, 935 F.3d at 1275; *compare McLean*, 794 F.3d at 1323 (requiring that the creditor "was aware of the discharge injunction and intended the action that violated it" in order to impose sanctions). The debtor has the burden of establishing a violation of the discharge injunction by clear and convincing evidence. *Daniels v. Howe Law Firm, P.C. (In re Daniels)*, 591 B.R. 814, 822 (Bankr. N.D. Ga. 2018) (Ritchey Craig, J.) (citations omitted).

---

[14] "The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

Plaintiff argues BANA violated the discharge injunction by sending mortgage statements for November 2012 through March 2013 that contained language Plaintiff contends warned her of personal liability. Plaintiff also contends BANA waited eight months to warn Plaintiff that she had missed mortgage payments for April and May 2012, and commenced foreclosure based on the two missed payments despite Plaintiff having proof of making the payments, thus inducing foreclosure by fraud. Despite these allegations of fraudulent inducement of default, Plaintiff states in her Motion that she "has not based her violation of the discharge injunction on a letter from the Shuping Law Firm [providing notice of the initiation of foreclosure proceedings] but rather the mortgage statements that expressly warned of a collection action against Plaintiff personally." [Doc. 208 at 22]. BANA contends that it did not violate the discharge injunction because it only sought to enforce rights against the Property and its communications with Plaintiff were authorized by § 524(a) and (j). But even if it did violate the discharge injunction, Plaintiff cannot recover damages because there is a fair ground of doubt whether the discharge injunction barred BANA's conduct, Plaintiff does not have any damages arising from BANA's conduct, and Plaintiff is barred from recovering damages based on the doctrines of laches and unclean hands. BANA also argues that any claims that BANA improperly applied payments are subject to res judicata.

### 2. Manufactured Default and Misapplication of Payments

As an initial matter, Plaintiff argues that BANA must establish that she was in default on the Loan at the time foreclosure was attempted, which Plaintiff denies. Plaintiff further argues that BANA cannot establish a default without first presenting the note, authenticating it, establishing BANA's right to enforce it, and establishing Plaintiff's failure to pay. The discharge injunction only affects Plaintiff's *personal liability,* and any post-discharge attempt to foreclose

on the *lien* does not run afoul of the discharge injunction. *See Sellers*, 941 F.3d at 1035; *Mele*, 486 B.R. at 555. Thus, Plaintiff's argument regarding the necessity of proving a default fails.

### 3. Communications From BANA to Plaintiff

On February 25, 2011, Debtor received a discharge. At that time BAC, which merged into BANA on July 1, 2011, was the servicer of the Loan. There is no dispute that BAC received actual notice of the discharge at or near the time of its entry or that BANA has at all relevant times been aware of the discharge. Neither party has provided any written communications between BAC/BANA and Plaintiff during the one-year period after entry of the discharge.[15]

On February 28, 2012, BANA issued a mortgage statement with the following language on the first page: "**Important Bankruptcy Notice – Your Payment Options**: This is not an attempt to collect a debt that is stayed or that has been discharged. This is not a demand for payment. The information below is provided as a courtesy to you." [Doc. 199-7, BANA Ex. 4 (emphasis in original)].

On July 10, 2012, BANA issued a letter to Debtor stating that her Loan was not eligible for a principal forgiveness modification program. [Doc. 208 at 394, Pl. Ex. A.2]. The letter includes the following language:

> *We want to work with you to help you avoid foreclosure*. Depending on your situation, we may have other modification options for you. … If a modification is not an option, these other alternatives to foreclosure may also be available to you:
>
> **Short Sale** – the property is listed for sale at fair market value, even if that value is lower than what you owe on the mortgage. If a buyer is identified and the property is sold, the

---

[15] In its briefing, BANA asserted that the February 2012 Statement was "issued right after entry of the Discharge Order" [Doc. 199-1 at 13] and described the February 2012 and September 2012 Statements as "monthly statements from February and September 2011[.]" [Doc. 212 at 11]. However, both statements provided by BANA are dated in 2012.

proceeds from the sale are applied towards the mortgage debt, even if the proceeds are less than the amount owned on the mortgage. *You may be responsible for any balance remaining after the sale*.

**Deed in Lieu of Foreclosure** – you agree to transfer the title or ownership of your property to the owner or servicer of your loan in order to avoid foreclosure sale and satisfy all or a portion of the mortgage debt. The amount of debt satisfied by this transfer of ownership is based on the approved value of your home. In some cases, *you may be responsible for a remaining balance of the mortgage debt over and above the approved value*.

…

Although *our records show that you are currently in bankruptcy*, we want to explore your available options. Your bankruptcy attorney or other advisor can assist you in evaluating these options.

**Important Information about foreclosure proceedings**

Please call us as soon as possible to determine if you qualify for one of the options listed above. *We are now returning your loan to normal collection activity, which could include referral to foreclosure and a foreclosure sale*. …

*If you have any questions about the collection* or foreclosure process, please call us.

…

Bank of America, N.A. is required by law to inform you that this communication is from a debt collector. However, *the purpose of this communication is to let you know about the status of modification request and your potential eligibility for programs to help you avoid foreclosure sale*.

[Id. (bold in original; italics added)].

On September 27, 2012, BANA issued a mortgage statement with the following language on the first page:

**FOR INFORMATION PURPOSES**

…

**The Impact of the Bankruptcy**: Our records indicate that in the past you received a discharge of this debt in a bankruptcy case. Section 524 of the Bankruptcy Code tells us the discharge of this debt means you have no personal obligation to repay it. The discharge also protects you from any efforts by anyone to collect

this discharged debt as a personal liability of the debtor. You cannot be pressured to repay this debt. On the other hand, the security agreement allows foreclosure if the requirements under the loan documents are not met.

[Doc. 199-8, BANA Ex. 5 (emphasis in original)].

On October 30, 2012, BANA issued a mortgage statement with the following language on the first page:

> **IMPORTANT NOTICE**
>
> **Bank of America, N.A. services your home loan on behalf of the holder of your note (Noteholder). This is to advise you that your account remains seriously delinquent.**
>
> If we do not hear from you immediately, we will have no alternative but to take appropriate action to protect the interest of the Noteholder in your property. …
>
> **Please give this matter your most urgent attention.** Please send the amount due with the coupon below immediately. Additional amounts may become past due. Bank of America, N.A. will proceed with collection action until your account is brought fully current, and you will be responsible for all costs incurred in this process *to the full extent permitted by law*.

[Doc. 208 at 360, Pl. Ex. A.1.E (bold in original, italics added)]. BANA issued mortgage statements with the same language on November 28, 2012 [Doc. 208 at 356, Pl. Ex. A.1.E], on December 31, 2012 [Doc. 208 at 352, Pl. Ex. A.1.E], on January 30, 2013 [Doc. 208 at 348, Pl. Ex. A.1.E], and on March 28, 2013[16] [Doc. 208 at 342, Pl. Ex. A.1.E].

On May 1, 2013, Shuping, Morse & Ross, L.L.P., issued a Notice of Sale Under Power advising Plaintiff that foreclosure proceedings had been initiated. [Doc. 208 at 379, Pl. Ex. A.1.M]. The first paragraph of the Notice states:

> In the event that you are presently in a bankruptcy case or have received a discharge in bankruptcy with respect to the indebtedness that is the subject of this letter, anything herein or in any

---

[16] The record does not include a mortgage statement issued in February 2013.

> correspondence from this office to the contrary notwithstanding, no
> personal liability is sought to be imposed upon you and our actions
> would be limited to foreclosure of any deed to secure debt securing
> the indebtedness described herein.

[Id.].

The Court now turns to whether these communications with Plaintiff violated the discharge injunction. In the SPS AP, the Court found that two letters sent by SPS were informational in nature and did not violate the discharge injunction. However, 33 mortgage statements sent by SPS violated the discharge injunction because they did not include any express acknowledgment of Plaintiff's bankruptcy, any bankruptcy disclaimers, or any indication that payment is voluntary; they did include a due date, amount due, and amount of late fee charged for a late payment on the statement and on the payment coupon; they included language that the statement was an attempt to collect a debt, and some of the statements included a delinquency notice with the total amount due and statement that failure to bring the loan current could result in fees and foreclosure.

Here, unlike in the SPS AP, the parties have provided the Court with only a portion of the mortgage statements sent by BANA. Also, unlike in the SPS AP, two of those statements—the February 2012 Statement and the September 2012 Statement—include prominent bankruptcy disclaimer language. Plaintiff does not argue that these statements violated the discharge injunction, and the Court finds that they do not.

The later statements present a closer question. They are more like the SPS statements in that they do not include any express acknowledgment of Plaintiff's bankruptcy, any bankruptcy disclaimers, or any indication that payment is voluntary; they do include a payment due date, minimum payment amount, amount due to bring loan current, a request to "Please send the amount due with the coupon below immediately," a statement that BANA "will proceed with

31

collection action until your account is brought fully current," and a payment coupon. However, these statements differ from the SPS statements in three important respects: (1) they do not include language that the statement is an attempt to collect a debt, (2) they include language that if BANA does not hear from the customer immediately, it will "take appropriate action to protect the interest of the Noteholder *in your property*"; and (3) they include language limiting collection action to the "*full extent permitted by law*." These facts mitigate against a conclusion that the statements violate the discharge injunction because they indicate that BANA is seeking payment to avoid foreclosure rather than to collect on any personal liability. Additionally, they must be considered in light of the earlier mortgage statements by BANA, which expressly disclaimed any effort to collect on personal liability and may thereby alter the objective effect[17] of the later statements, and in light of Plaintiff's stated intention to reaffirm the Loan. Considering the totality of the evidence, the Court concludes that the failure to include disclaimer language outweighs the other facts, and the later statements violated the discharge injunction.

BANA, unlike SPS, has argued that its mortgage statements fall within the safe harbor of § 524(j), which "provides an exception to the discharge injunction for creditors who hold claims secured by the debtor's principal residence as long as the creditor's acts are in the ordinary course of business between the debtor and the creditor, and limited to seeking payments in lieu of in rem relief." *Best v. Nationstar Mortg. LLC*, 540 B.R. 1, 9 (B.A.P. 1st Cir. 2015). Plaintiff did not address the safe harbor defense in her response to BANA's Motion. To establish a defense under § 524(j), BANA must demonstrate (1) that the creditor "retains a security interest in real property that is the principal residence of the debtor"; (2) that the "act is in the ordinary course of business between the creditor and the debtor"; and (3) that the "act is limited to seeking or

---

[17] Plaintiff's positions rely in large part on the subjective effect of BANA's conduct, but the test for violation of the discharge injunction is an objective one. *Roth*, 935 F.3d at 1276.

obtaining periodic payments associated with a valid security interest in lieu of pursuit of in rem relief to enforce the lien." 11 U.S.C. § 524(j).

As to the first element, BANA asserts that the Property is subject to a security deed that has been assigned to BONYM [BANA's Statement ¶ 1, 5], and BANA provided a copy of the security deed executed by Plaintiff in favor of Aegis Wholesale Corporation ("AWC") on May 17, 2005 [Doc. 199-4, BANA Ex. 1] and a copy of the assignment of the security deed from Mortgage Electronic Registration Systems, Inc. as nominee for AWC to BONYM executed on April 1, 2013 [Doc. 199-5, BANA Ex. 2]. BANA also asserts that Plaintiff scheduled the Property as her principal residence in the bankruptcy case and that BANA's records reflect that it was Plaintiff's residence during the time BANA serviced the Loan. [BANA's Statement ¶ 4, 6]. Although Plaintiff has previously challenged various aspects of the security deed and BONYM's interest therein, she did not controvert these facts or object to these exhibits in response to BANA's Motion.[18] Therefore, the Court finds the first element of the safe harbor defense is satisfied.

The second element requires that the acts at issue were in the ordinary course of business between BANA and Plaintiff. "The focus in section 524(j)(2) is on the normal or usual practices between the creditor and the debtor occurring after the entry of the discharge order. The salient factors include the timing of contacts, the purpose of the contacts, and variations in the overall pattern of contacts[.]" *Giles v. James B. Nutter & Co. (In re Giles)*, 502 B.R. 892, 902 (Bankr. N.D. Ga. 2013) (Massey, J.). BANA offered no evidence as to this element. The record currently before the Court does not even reflect that BANA sent statements to Plaintiff every month after entry of the discharge. At best, it shows that BANA sent mortgage statements that were clearly labeled as informational only during some months in 2012 then later in 2012 and 2013

---

[18] Even if Plaintiff had contested these facts, it would not change the Court's determination.

sent mortgage statements without such labeling. Therefore, the Court cannot conclude that BANA has established the second element of the safe harbor defense.

The third element requires the Court to consider whether the statements were appropriately limited to seeking periodic payments in lieu of foreclosure. Courts are split as to the application of this element. Some courts hold that "secured creditors must inform discharged debtors, by way of clear and prominent disclaimers, that they are solely seeking payment as a substitute for pursuing their in rem rights." *In re Biery*, 543 B.R. 267, 285 (Bankr. E.D. Ky. 2015) (collecting cases). Other courts "require only that secured creditors seek payment to the exclusion of pursing in rem relief and the content of the statement is irrelevant to the inquiry of whether the creditor's actions comply with § 524(j)." *Id.* (collecting cases); *see also In re Cantrell*, 605 B.R. 841, 856 (Bankr. W.D. Mich. 2019) (a post-discharge mortgage statement that did not differ from pre-discharge statements and included no disclaimer language did not satisfy § 524(j)(3); later statements with disclaimers satisfied § 524(j)). As noted above, October 2012 through March 2013 Statements request payment but include no specific bankruptcy disclaimers. In addition, any language indicating that such payment is solely in lieu of foreclosure is not prominent and is somewhat vague—i.e., making reference to protecting the creditor's interest in the Property, and limiting collection action to the extent provided by law. Therefore, the Court cannot conclude that BANA has satisfied the third element of the safe harbor defense. As a result, BANA is not entitled to judgment as a matter of law under § 524(j).

BANA contends that even if its conduct violated the discharge injunction, it is not subject to sanctions because there is a fair ground of doubt about whether the discharge injunction barred its conduct. Under the fair ground of doubt standard, "civil contempt may be appropriate if there is no objectively reasonable basis for concluding that the creditor's conduct might be lawful."

34

*Taggart*, 139 S. Ct. at 1799. The Supreme Court made clear that this is an objective standard and that "neither a standard akin to strict liability nor a purely subjective standard is appropriate" although "subjective intent is not always irrelevant[.]" *Id.* at 1799, 1802. "Under the fair ground of doubt standard, civil contempt may be appropriate when the creditor violates a discharge order based on an *objectively unreasonable* understanding of the discharge order or the statutes that govern its scope." *Id.* at 1802 (emphasis added).

As Plaintiff points out, BANA initially presented its fair ground of doubt argument in a conclusory manner and did not identify any specific facts it contends supports a finding of fair ground of doubt until its *Reply in Support of Its Motion for Summary Judgment and Opposition to Plaintiff's Cross-Motion for Summary Judgment*. Nevertheless, the fact that Plaintiff expressed her intention to reaffirm the Loan, that Plaintiff sought a loan modification, and that BANA sent Plaintiff statements with appropriate disclaimers in February and September 2012 could create a fair ground of doubt that the statements sent in October 2012 through March 2013 violated the discharge injunction, which precludes summary judgment for Plaintiff. However, on the record currently before the Court, because of the fact-sensitive nature of this inquiry, and because BANA did not fully develop its position until its reply brief, the Court cannot conclude that BANA has shown it is entitled to summary judgment based on fair ground of doubt.

### 4. Damages

BANA contends that even if it is liable for violation of the discharge injunction, Plaintiff suffered no damages and therefore cannot recover for any such violation. BANA contends that it stopped servicing the Loan in November 2013 and by Plaintiff's own admission in the SPS AP, she did not begin suffering health problems until approximately a year later in late 2014 and early 2015. Plaintiff contends that in stating she was never sick prior to 2014, she was referring to

35

her aneurism diagnosis, and that the sickness that developed was the result of sustained emotional distress that she began suffering due to BANA's conduct. [Doc. 208 at 24-25; Pl's Statement ¶ 38]. Even taking the admissions in the SPS AP as true, Plaintiff is not precluded from potentially proving causation and damages such that the Court cannot grant summary judgment to BANA based on lack of damages.

### C. Laches and Unclean Hands

Laches is an equitable defense "that serves to bar suit by a plaintiff 'whose unexcused delay, if the suit were allowed, would be prejudicial to the defendant.'" *Black Warrior Riverkeeper, Inc. v. U.S. Army Corps of Eng'rs*, 781 F.3d 1271, 1283 (11th Cir. 2015) (quoting *Russell v. Todd*, 309 U.S. 280, 287, 60 S. Ct. 527, 531 (1940)). Under the doctrine, a defendant must prove: "(1) there was a delay in asserting a right or a claim, (2) the delay was not excusable, and (3) the delay caused [a defendant] undue prejudice." *Groucho's Franchise Sys., LLC v. Grouchy's Deli, Inc.*, No. 1:14-cv-1725, 2015 U.S. Dist. LEXIS 180373, at *5 (N.D. Ga. July 1, 2015) (citing *U.S. v. Barfield*, 396 F.3d 1144, 1150 (11th Cir. 2005)) (alteration in original); *Black Warrior Riverkeeper*, 781 F.3d at 1283.

To determine whether laches applies, courts must look to the specific facts of each case and decide whether a plaintiff's delay in bringing suit was reasonable. *See Groucho's Franchise Sys.*, 2015 U.S. Dist. LEXIS 180373, at *5 (citing *Studiengesellschaft Kohle mbH v. Eastman Kodak Co.*, 616 F.2d 1315, 1325 (5th Cir. 1980) ("Laches and estoppel are equitable defenses whose appropriateness must be determined in each case under its particular factual situation.")); *see also Holman v. Citimortgage, Inc. (In re Holman)*, No. 07-70272, AP 09-70031, 2010 Bankr. LEXIS 1518, at *15-16 (Bankr. N.D. Ala. May 6, 2010). Because it is a fact intensive pursuit that looks to the reasonableness of plaintiffs' delays, it is generally not appropriate for

36

courts to determine issues of laches on a motion for summary judgment. *See Holman*, 2010 Bankr. LEXIS 1518, at *15-16 (quoting *Tate v. Citimortgage, Inc. (In re Tate)*, No. 99-13169, AP 09-1059, 2009 Bankr. LEXIS 4591, at *7 (Bankr. S.D. Ala. Oct. 29, 2009)) ("Because a court asked to apply laches must determine the reasonableness of—and hence the reasons and excuses for—the plaintiff's delay in filing suit, as well as the resulting prejudice suffered by the defendant, laches generally cannot be decided on a motion for summary judgment let alone motion to dismiss."); *see Kling v. Hallmark Cards, Inc.*, 225 F.3d 1030, 1041 (9th Cir. 2000) ("because a claim of laches depends on a close evaluation of all the particular facts in a case, it is seldom susceptible to resolution by summary judgment") (internal quotation marks omitted).

First, as to delay and the reason therefor, Plaintiff received a discharge on February 25, 2011, BANA stopped servicing the Loan in November 2013, and Plaintiff filed this proceeding on December 14, 2020. There is no dispute that Plaintiff filed this proceeding seven years after BANA stopped servicing the Loan, which is a delay.[19] Second, as to the reason for delay, Plaintiff argues that any delay is excusable because she did not learn that BANA and its subservicers had no right to pursue her for personal liability until 2017.[20] [Doc. 220 at 11; Pl's Statement ¶ 58]. However, this assertion by Plaintiff is disputed by the discharge order, which was mailed to Plaintiff on February 27, 2011 and which states "SEE THE BACK OF THIS ORDER FOR IMPORTANT INFORMATION REGARDING THE BANKRUPTCY DISCHARGE IN A CHAPTER 7 CASE." [Case No. 10-61451, Doc. 23, 24]. The second page of the discharge order states

### Collection of Discharged Debts Prohibited

---

[19] To the extent BANA remained the master servicer on the Loan after November 2013, the Court has previously ruled that Plaintiff cannot seek to hold BANA liable for the conduct of the subservicers in this proceeding as doing so would constitute impermissible claim splitting. [Doc. 222].

[20] In her summary judgment papers, Plaintiff does not explain how she learned of the effect of the discharge injunction in 2017 and why she was unaware of it sooner.

> The discharge prohibits any attempt to collect from the debtor a debt that has been discharged. …
>
> …
>
> However, a creditor may have the right to enforce a valid lien, such as a mortgage or security interest, against the debtor's property after the bankruptcy, if that lien was not avoided or eliminated in the bankruptcy case. Also, a debtor may voluntarily pay any debt that has been discharged.
>
> …
>
> **<u>Debts That are Discharged</u>**
>
> The chapter 7 discharge eliminates a debtor's legal obligation to pay a debt that is discharged. Most, but not all, types of debts are discharged if the debt existed on the date the bankruptcy case was filed. …

[Id. (emphasis in original)].

With respect to the third element of laches, undue prejudice to BANA, Plaintiff argues that the prejudice BANA offers—inability to verify whether the records it maintained regarding the Loan still exist with BANA since the transfer of servicing—is legally unavailable because BANA is required by federal law and contract to be in possession or have access to the records. Assuming without deciding that Plaintiff is correct, BANA's asserted prejudice is not limited to availability of documents, but also to the availability of employees familiar with the facts. [Doc. 199-1 at 19]. "Forcing BANA to defend against allegations from ten years ago clearly results in prejudice against BANA, a large organization, *due to employee turnover* and document retention issues." [Id. (emphasis added)]. Because there are factual questions regarding the reason for Plaintiff's delay in seeking relief against BANA and the prejudice to BANA, BANA is not entitled to summary judgment based on laches.

BANA also argues that Plaintiff is barred from recovery because she has unclean hands. "To assert an unclean hands defense, a defendant must show that (1) the plaintiff's wrongdoing is directly related to the claim, and (2) the defendant was personally injured by the wrongdoing." *Bailey v. TitleMax of Georgia, Inc.*, 776 F.3d 797, 801 (11th Cir. 2015). The only

mention of unclean hands in BANA's *Memorandum of Points and Authorities in Support of Motion for Summary Judgment* is in footnote 2, which states in full: "BANA further submits that Plaintiff's admissions that she has no damages prior to 2014 and commencing this Adversary Proceeding against BANA constitutes unclean hands further barring Plaintiff from any recovery." [Doc. 199-1 at 18 n.2 (citation omitted)]. Plaintiff did not expressly address the unclean hands defense in her response, but as explained above, she contends that her illness in 2014 was caused by emotional distress that began when BANA was servicing the Loan and that she suffered additional emotional distress upon learning in 2017 that her personal liability had been discharged, giving rise to a dispute of fact that precludes summary judgment.

In BANA's *Reply in Support of Its Motion for Summary Judgment and Opposition to Plaintiff's Cross-Motion for Summary Judgment*, BANA expanded its unclean hands defense to include assertions that Plaintiff filed "her bankruptcy case in bad faith in an attempt to force a modification through a **chapter 7 case** for a mortgage that she could not afford" in addition to making arguments in this proceeding that have already failed in cases filed by Plaintiff against BANA in other courts [Doc. 212 at 13 (emphasis in original)]. BANA contends it has been injured because Plaintiff's conduct has caused it to incur legal fees. Because these arguments were made for the first time in BANA's reply, the Court will not consider them for purposes of summary judgment, while also noting that the undisputed facts do not address Plaintiff's reasons for filing bankruptcy and she has not previously asserted claims for violation of the discharge injunction against BANA.

**IV. Conclusion**

Plaintiff seeks to hold BANA and BONYM liable for violation of the discharge injunction based on mortgage statements BANA sent to her between October 2012 and March

2013. The Court finds these statements violated the discharge injunction. However, questions of fact preclude a determination about whether there is no fair ground of doubt that BANA's conduct violated the discharge order. Additionally, BANA has failed to provide sufficient evidence for the Court to determine whether the statements fall within the safe harbor of § 524(j) or to establish an equitable defense of laches or unclean hands, and factual issues preclude a determination about the existence and extent of Plaintiff's damages. For these reasons, the Court cannot grant summary judgment to Plaintiff, BANA, or BONYM in full or in part. Accordingly, it is

ORDERED that BANA's evidentiary objections [Doc. 214] and Plaintiff's evidentiary objections are OVERRULED for purposes of the Cross Motions and without prejudice to such objections being renewed at trial; it is further

ORDERED that Plaintiff's Motion for Summary Judgment is DENIED; it is further

ORDERED that BANA's Motion for Summary Judgment, which was joined by BONYM, is DENIED.

**END OF ORDER**

**<u>Distribution List</u>**

Shirley White-Lett
456 North Saint Marys Lane
Marietta, GA 30064

Chandler P. Thompson
Akerman LLP
Suite 725
170 South Main Street
Salt Lake City, UT 84101

Jennifer R Burbine
McGuireWoods LLP
1230 Peachtree Street NE
Suite 2100
Atlanta, GA 30309

Alan Michael Hurst
Akerman LLP
Suite 725
170 South Main Street
Salt Lake City, UT 84101